**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(*MIAMI DIVISION*)**

IN RE:                                                                                    CASE NO. 11-22948-AJC
                                                                                                    Chapter 11

3900 BISCAYNE, LLC.,

        Debtor(s).
_____/

**CREDITOR BRANCH BANKING AND TRUST COMPANY'S
MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASE**

      Creditor, BRANCH BANKING AND TRUST COMPANY ("BB&T"), through undersigned counsel and pursuant to 11 U.S.C. §1112 files its Motion to Dismiss this Chapter 11 Bankruptcy Case ("Motion to Dismiss") and in support thereof states as follows:

### I. OVERVIEW

      1.    This case commenced on May 12, 2011 (the "Petition Date") with the filing of a voluntary Chapter 11 bankruptcy petition by the Debtor, 3900 Biscayne, LLC ("Debtor" or "3900").

      2.    The bankruptcy petition was filed to avoid the inevitable order anticipated to be entered at the May 13, 2011, specially set hearing on BB&T's Motion for Turnover of Rents and Profits derived from the Real Property, as defined below, and pledged to BB&T as security for the amounts advanced pursuant to the terms of a Note and Loan Agreement as secured by a Mortgage on the Real Property (all capitalized terms are defined below) at issue in the District Court case proceeding *BB&T v. 3900 Biscayne LLC, et al*, case No. 10-CV-23279-MGC, currently pending in the U.S. District Court for the Southern District of Florida (the "Foreclosure Action"). This bankruptcy proceeding was filed with the sole intention of thwarting BB&T's secured interest in the Debtor's Real Property and Collateral pledged, which is comprised primarily of real property located at 3900 Biscayne Blvd., Miami, Florida 33137 (the "Real Property") and the rents and profits

CASE NO. 11-22948-AJC<br>Chapter 11

derived therefrom (the "Collateral"). In fact, the instant bankruptcy proceeding is nothing but an attempt by the Debtor to postpone, stall and hinder BB&T's creditor's rights with respect to the Real Property and Collateral (*i.e*., cash collateral, equipment, etc.) upon which it holds a valid, perfected, first priority mortgage and security interest.

   3. The Debtor did not file the instant action in good faith as is evident by, among other things, the Debtor's Schedules and the fact that this proceeding was filed just **one day** before a hearing on BB&T's Motion for Turnover of the Rents in the Foreclosure Action.

   4. Moreover, it is evident that this is essentially a two party dispute which should be adjudicated by the District Court and that this case should be dismissed as a bad faith filing based on the limited papers filed with this Court which reflect that (a) the Debtor's main asset is the Real Property, (b) the Debtor has little, if any, real substantive creditors (and those creditors claims are small compared to BB&T's claims), (c) the Debtor has few employees, if any, as evident by the Debtor's Notice of Filing Payroll and Sales Tax Reports [D.E. 5], (d) the Debtor's financial problems, and the real reason why it sought this Court's jurisdiction, are essentially a dispute between the Debtor and BB&T which can be resolved in the pending Foreclosure Action, and (e) the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of BB&T to enforce its creditor's rights.

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC
Chapter 11

## II. THE LOANS AND FORECLOSURE ACTION

**A.    3900 Real Estate Secured Loan**

  5. On or about July 2, 2007, 3900 executed and delivered a Promissory Note to BB&T, in the original principal amount of $10,800,00.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit "A" and incorporated fully herein by reference.

  6. The terms of the Note are further governed by a Loan Agreement dated July 2, 2007 (the "Loan Agreement") executed and delivered by the Debtor to BB&T. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "B" and incorporated fully herein by reference.

  7. As security for the repayment of the amounts advanced pursuant to the terms of the Note and Loan Agreement, on July 2, 2007, the Debtor executed and delivered to BB&T a certain Mortgage and Security Agreement, which was recorded on July 3, 2007 in Official Records Book 25751 at Page 4473 of the Public Records of Miami-Dade County, Florida (the "Mortgage"). The Mortgage encumbers the Real Property more particularly described therein. A true and correct copy of the Mortgage and UCC Financing Statement (as defined below) is attached hereto as Composite Exhibit "C" and incorporated fully herein by reference.

  8. The Mortgage contains and assignment of Rents and Security Agreement.

– 3 –

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC<br>Chapter 11

9.  In order to perfect its interest in the Collateral, pursuant to the terms of the security agreement, contained in the Mortgage, on July 18, 2007, BB&T filed a Uniform Commercial Code Financing Statement which was assigned document No. 200706064133. *See* Exhibit "C."

10. Pursuant to the UCC Financing Statement, BB&T has a perfected first lien interest in the Debtor's Collateral including the Rents and profits.

11. The Debtor defaulted on the Note by, without limitation, failing to make payment of the debt as the debt matured in May 2010, failing to pay real property taxes on the Real Property for the year 2009, and otherwise failing to comply with the terms of the loan documents.

12. The Note, Loan Agreement, and Mortgage are collectively referred to as the "3900 Real Estate Secured Loan Documents."

13. As of the Petition Date, BB&T is owed the approximate principal amount of $10,800,000.00, together with accrued interest, fees and costs under the Note. A true and correct copy of the Affidavit of Indebtedness in Support of BB&T's Motion for relief from the Automatic Stay is attached hereto as Exhibit "D" and incorporated fully herein by reference.

14. BB&T owns and holds the Note and Mortgage.

**B.  3900 CD Collateral Secured Loan**

15. On or about July 2, 2007, the Debtor executed and delivered a Promissory Note in the principal amount of $675,000.00, to BB&T which was subsequently modified by that

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC
Chapter 11

certain Note Modification Agreement dated November 5, 2008 (as modified, the "Second Note"). A true and correct copy the Second Note is attached hereto as Exhibit "E" and incorporated fully herein by reference.

16. The Second Note is also secured by, among other things, a certain Pledge Agreement dated July 2, 2007, executed by NANCY in favor of BB&T (the "Pledge Agreement"), whereby N. KARP pledged a certain Certificate of Deposit titled in the name of "Nancy B. Karp, Payable on Death to Jordan Karp and Aden Karp." (as more particularly described in the Pledge Agreement, "CD 1").

17. On or about August 7, 2008, N. KARP opened a second Certificate of Deposit with BB&T, in the approximate amount of $412,069.56, titled in the name of "Nancy B. Karp or Tania Bouskela POD to Jordan Karp and Aden Karp"("CD2").

18. Also, on or about August 7, 2008, N. KARP opened a third Certificate of Deposit with BB&T, in the approximate amount of $200,000.00, titled in the name of "Nancy B. Karp or Tania Bouskela" ("CD3").

19. Also, on or about August 7, 2008, N. KARP opened a third Certificate of Deposit with BB&T, in the approximate amount of $64,000.00, titled in the name of "Nancy B. Karp" ("CD4," and together with CD2 and CD3, the "Replacement Collateral")

20. Pursuant to the Pledge Agreement, BB&T subsequently consented to N. KARP substituting the Replacement Collateral in place of CD1 as collateral for the Second Note.

CASE NO. 11-22948-AJC<br>Chapter 11

21.     The Second Note, Pledge Agreement, and related documents are collectively referred to as the "3900 CD Collateral Secured Loan Documents."

22.     The Debtor has breached and defaulted on the terms of the Second Note by, without limitation, (a) failing to make payment of the debt outstanding at maturity; (b) failing to execute the certain Deposit Assignment and Security Agreements, as required by the parties' agreement; (c) failing to make payment upon the maturity of the Note; and (d) failing to otherwise comply with the terms of the 3900 Real Estate Secured Loan Documents and the 3900 CD Collateral Secured Loan Documents.

23.     As of the Petition Date, BB&T is owed the approximate principal amount of $630,000.00, together with accrued interest, fees and costs under the Second Note.  *See* Exhibit "D."

24.     BB&T owns and holds the Second Note.

**C.     The Foreclosure Action**

25.     On September 13, 2010, BB&T filed the Foreclosure Action seeking, among other things, to foreclose its interest in the Real Property.  On December 16, 2010, BB&T filed its Amended Complaint.

26.     On January 10, 2011, BB&T filed its Motion for Turnover of Rents, Issues & Profits, in the Foreclosure Action, a true and correct copy of which is attached hereto as Exhibit "F" and incorporated fully herein by reference.

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC
Chapter 11

27. On January 27, 2011, Debtor filed its Response to BB&T's Motion for Turnover of Rents, a true and correct copy of which is attached hereto as Exhibit "G" and incorporated fully herein by reference.

28. The Debtor's Response, does not contest that BB&T has a perfected interest in the rents, issues, profits and income from the Real Property (collectively, the "Rents"). *See* Exhibit "G."

29. Moreover, as evidenced by the budget attached to the Response, the Debtor receives at least $66,250.00 in monthly income/Rents from the Real Property (subject to additional income which would be derived from pending unsigned leases which had not been finalized as of January 2011).

30. However, pursuant to the Debtor's budget, despite of the substantial income derived from the lease of the Real Property, the Debtor does not intend to make any payments to BB&T.

### III. BANKRUPTCY PROCEEDING AND SCHEDULES

31. The Debtor's Schedule "A" lists the Debtor's interest in the Real Property with an **unsupported** value of $13,500,000.00 and a secured debt of $10,800,000.00. On Schedule "D", the Debtor lists BB&T's security interest in the Real Property with a secured claim of $10,800,000.00.

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC
Chapter 11

32. Contrary to the Debtor's overly optimistic and unrealistic value, the Miami-Dade County Property Appraiser's website reflects an assessed value of $6,790,818.00 for the Real Property. A true and correct copy of the Property Appraiser's website information for the Real Property is attached hereto as Exhibit "H and incorporated herein by reference.

33. The Real Property is of insufficient value to provide adequate protection to BB&T and the Debtor lacks any equity cushion in it to protect BB&T's interests.

34. Notwithstanding being required under the loan documents to turn over the income and profits derived from the use and operation of the Real Property (and the undersigned firm's written demand for turnover of rents and income, as set forth in the attached Exhibit "I" hereto and incorporated herein by reference), the Debtor failed to turn over any of those amounts or to pay real property taxes from and after 2009, and **just one day** before the District Court's hearing on the Motion for Turnover of Rents, it filed this Bankruptcy proceeding.

35. Debtor is now seeking protection of this Court is anticipated to seek permission to use the Collateral and Rents at the expense of BB&T and its security interest in the Real Property and Rents with respect to the <u>matured</u> business loan.

36. <u>To date, the Debtor has failed to file a projection as to anticipated income and has failed to provide for adequate protection payments to secured creditor, BB&T</u>.

37. Moreover this Bankruptcy Proceeding came **solely** as a result of the failed mediation between the parties and in an effort by the Debtor to hinder, stall and frustrate BB&T's

– 8 –

CASE NO. 11-22948-AJC
Chapter 11

efforts with respect to its creditor's rights (including the anticipated order requiring turn over of Rents and income at the May 13, 2011, District Court hearing on BB&T's Motion for Turnover of Rents).

38. Accordingly, in an attempt to delay BB&T's efforts to foreclosure on the Mortgage, on May 12, 2011, the Debtor filed its petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. " 101, et seq. [D.E. 1].

39. As of the Petition Date, BB&T was owed a principal balance under the Note of $10,800,000.00, together with interest (including, but not limited to, interest at the default rates at all applicable times), late charges, reimbursement for any advanced funds (including fees advanced by BB&T), costs and attorneys' fees and all other sums recoverable under the 3900 Secured Loan. Additionally, also as of the Petition Date, BB&T was owed a principal balance under the Second Note of $630,000.00, together with interest (including, but not limited to, interest at the default rates at all applicable times), late charges, reimbursement for any advanced funds (including fees advanced by BB&T), costs and attorneys' fees and all other sums recoverable under the 3900 CD Collateral Secured Loan. *See* Exhibit "D."

**The Schedules**

40. As stated above, the Debtor's Schedule "A" lists the Debtor's interest in the Real Property with an **unsupported** value of $13,500,000.00 and a secured debt of $10,800,000.00.

– 9 –

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC<br>Chapter 11

On Schedule "D", the Debtor lists BB&T's security interest in the Real Property with a secured claim of $10,800,000.00.

41. Pursuant to the Debtor's schedules, the Debtor does not own any other real property and does not have any other secured creditors.

42. The Debtor's Schedule "D" does not list any additional secured creditors.

43. Based on the Debtor's Schedule "D" BB&T is owed, at a minimum $10,800,000.00 (in addition to fees, costs, attorneys' fees and all other sums recoverable under the loan documents).

44. The Debtor's Schedule "F" lists aggregate unsecured debt of $2,650,791.62 of which 3 of the 11 creditors are insiders and their claims amount to a minimum of $1,877,315.54 (one of the three claims to insider is listed as "unknown"). Accordingly, if any, the Debtor owes unsecured creditors approximately $773,476.08 of which $630,000.00 is owed to BB&T pursuant to the terms of the Second Note. Therefore, there is no question that BB&T is by far the largest unsecured creditor and only secured creditor.

45. On the Petition Date, the Debtor filed its Notice of Filing Payroll and Sales Tax Reports [D.E. 5]. Pursuant to that document, the Debtor does not pay any payroll taxes.

46. The instant bankruptcy proceeding is nothing but a transparent effort by the Debtor to postpone, stall and hinder BB&T's rights with respect the Property and additional Collateral (*i.e.*, equipment, proceeds, Rents, etc.) upon which it holds a valid, perfected, first priority

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC<br>Chapter 11

mortgage and security interest. Essentially, this bankruptcy proceeding is nothing more than a two party dispute which should be adjudicated by the District Court.

    47.    The Debtor did not file the instant action in good faith as is evident by, *inter alia*, the fact that (1) the Debtor's assets are comprised of a piece of Real Property and profits therefrom, secured by a mortgage, security interest, and assignment of rents in favor of BB&T; (2) the Debtor has few, if any, unsecured creditors whose claims are small compared to BB&T's and the majority of the unsecured debt is owed to its insiders; (3) the Debtor has few, if any, employees outside of insiders, (4) the Real Property is subject to a Foreclosure Action; (5) this is a two party dispute which should be adjudicated in the Foreclosure Action; and (6) the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of BB&T to enforce its creditor's rights.

    48.    Based on the above referenced facts, this case should be dismissed.

### IV. BASIS FOR RELIEF REQUESTED

**A.**    **This Case Should be Dismissed Pursuant to Section 1112(b)(1)**

> Section 1112(b) provides in relevant part:
> (1) ... on request of a party in interest and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate if the movant establishes cause.

*See* 11 U.S.C. §1112.

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC
Chapter 11

It is a well established rule that "'Cause' exists for dismissal of Chapter 11 case, if petition was not filed in good faith." *See In re State Street Houses, Inc*.,305 B.R. 738, 741 (Bankr. S.D.Fla 2003)(*citing In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988)). In deciding whether to dismiss a single asset case based on debtor's alleged bad faith in filing for Chapter 11 relief, the Court may consider the "so-called *Phoenix Piccadilly* factors: (1) whether debtor has only one asset, the property at issue; (2) whether debtor has few unsecured creditors, whose claims are relatively small compared to claims of secured creditors; (3) whether debtor has few employees; (4) whether property is subject to foreclosure action as result of arrearage on debt; (5) whether debtor's financial problems essentially are a dispute between debtor and secured creditors which can be resolved in pending... court action; and (6) timing of debtor's filing and whether it evidences intent to delay or frustrate legitimate efforts of debtor's secured creditors to enforce their rights." *Id*. Further, the Eleventh Circuit has established that "courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V*, 254 B.R. 46, 52 ( Bankr. M.D.Fla. 2000).

Courts have also reasoned that a Chapter 11 Bankruptcy is due for dismissal for "bad faith" where, as here, there is nothing to reorganize and where the debtor had more than enough

CASE NO. 11-22948-AJC<br>Chapter 11

assets to pay all of its creditors other than the creditor with which it was involved in litigation. *See Singer Furniture Acquisition,* 254 B.R. at 52 (Bankr. M.D.Fla. 2000).

  Here, there is ample evidence that this case was filed in bad faith and should be dismissed. The Debtor has not hidden the fact that the sole reason for filing this bankruptcy proceeding was to thwart the turnover of the Rents to BB&T and requested foreclosure of the Real Property which was pledged to BB&T as security for the amounts advanced pursuant to the Note and Mortgage. Further evidence of the Debtor's bad faith is the fact that, if the Debtor's values in its Schedules are taken as true, then there is no real need for reorganization since, the scheduled value of the Debtor's assets exceed the Debtor's liabilities.

  Moreover, as in *Phoenix Piccadilly* and *State Street Houses,* there is ample evidence that this case was filed in bad faith and should be dismissed. In particular, as in *Phoenix Piccadilly* and *State Street Houses* here the Debtor's lack of good faith is evident where (1) the Debtor's only asset is the Real Property and the rents and profits derived from it which secure the Debtor's indebtedness to BB&T; (2) the Debtor's Petition and Schedules reflect that the Debtor has few unsecured debts (other than any large unsecured debt owed to its insiders) compared to the indebtedness owed to BB&T; (3) the Debtor has few, if any, employees; (4) this case was filed on the eve of the hearing on BB&T's Motion for Turnover of Rents in the Foreclosure Action and as a direct result of the failed mediation between the parties; (5) the Debtor's own Petition and Schedules show that his bankruptcy proceeding is basically a two party dispute which can, and should, be handled in the pending Foreclosure Action; and (6) the Debtor's filing of the Petition

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC<br>Chapter 11

evidences its intent to delay or frustrate legitimate efforts of BB&T with respect to the Real Property and Rents.

## V. CONCLUSION

Based on the above BB&T respectfully requests this Court enter an Order dismissing the instant action based on the Debtor's bad faith filing.

WHEREFORE, BB&T respectfully requests this Honorable Court, enter an Order (1) dismissing this Chapter 11 Proceeding and (2) ordering such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Frank P. Cuneo
Frank P. Cuneo (FBN 0123188)
Email: fpc@lgplaw.com
Juan A. Gonzalez (FBN 375500)
Email: jag@lgplaw.com
Dora F. Kaufman (FBN 771244)
Email: dfk@lgplaw.com
Laudy Luna (FBN 044544)
Email: ll@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel: (305) 379-0400
Fax: (305) 379-9626
*Attorneys for Branch Banking & Trust Company*

Case 11-22948-AJC    Doc 12    Filed 05/17/11    Page 14 of 15

– 14 –

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 11-22948-AJC<br>Chapter 11

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of this Motion and Request was furnished this 17th day of May, 2011, via electronic transmission to all parties registered to receive electronic filing (cm/ecf) and via regular U.S. Mail to the Debtor, its counsel, the U.S. Trustee, and the 20 largest unsecured creditors pursuant to the Debtor's List of Creditors Holding 20 Largest Unsecured Claims.

/s/ Frank P. Cuneo<br>FRANK P. CUNEO

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400