## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## (*MIAMI DIVISION*)

IN RE:

3900 BISCAYNE, LLC.,

        Debtor(s).

_____ /

CASE NO. 11-22948-AJC
Chapter 11

## CREDITOR BRANCH BANKING AND TRUST COMPANY'S MOTION TO PROHIBIT USE OF CASH COLLATERAL IN THE FORM OF RENTS FROM MORTGAGED PROPERTY OR IN THE ALTERNATIVE MOTION FOR ADEQUATE PROTECTION

Creditor, BRANCH BANKING AND TRUST COMPANY ("BB&T"), successor in interest to Colonial Bank[1], through undersigned counsel and pursuant to 11 U.S.C. §§361 and 363(c)(2) and (e), hereby files its Motion to Prohibit Use of Cash Collateral or in the Alternative, Motion for Adequate Protection (the " Motion"), and in support thereof states as follows:

### I. OVERVIEW

1      BB&T moves this Court for an Order prohibiting the Debtor from Using its Cash Collateral in the form of Rents and Profits from the real property located at 3900 Biscayne Blvd., Miami, Florida 33137 (the "Real Property"), upon which it holds a first lien priority mortgage and Assignment of Rents. Additionally, BB&T seeks an Order prohibiting the Debtor from using its Cash Collateral (which includes the Rents, Profits, and all other assets pledged to BB&T as security for the amounts advanced pursuant to the Note (as defined below)).

---

[1]BB&T is the successor in interest to the FDIC as Receiver for Colonial Bank pursuant to a certain Purchase and Assumption Agreement, Whole Bank All Deposits Among Federal Deposit Insurance Corporation as Receiver of Colonial Bank, Federal Deposit Insurance Corporation and BB&T dated August 14, 2009, and related allonges to Note and Second Note.

CASE NO. 11-22948-AJC
Chapter 11

2    On May 12, 2011 (the "Petition Date"), the Debtor, 3900 Biscayne LLC (the "Debtor"), filed its voluntary Chapter 11 Bankruptcy petition under Chapter 11 of 11 U.S.C.

3    On September 13, 2011, prior to this Bankruptcy, BB&T filed a mortgage foreclosure action against the Debtor, among others, in the United States District Court for the Southern District of Florida, which was assigned case No. 10-CV-23279-MGC (the "Foreclosure Action") seeking to (a) foreclose its interest in the Real Property, (b) money damages with respect to a certain Promissory Note in the original principal sum of $10,800,000.00, secured by, among other things, the Mortgage on the Real Property and (c) for the turn over of the rents and profits derived from the Real Property, pursuant to an Assignment of Rents and perfected Security Interest executed and delivered by the Debtor to BB&T.

4    Similarly, prior to this Bankruptcy, BB&T filed a separate breach of contract action against the Debtor, among others, in the United Stated District Court for the Southern District of Florida, which was assigned case No. 10-CV-23297 (the "Breach of Contract Action"), in connection with a separate Note in the original principal sum of $675,000.00.

5    The Bankruptcy petition came practically on the eve of the May 13, 2011 hearing on BB&T's Motion for Turnover of Rents in the Foreclosure Action (the "Turnover of Rents Motion") and after an impasse at mediation held on April 27, 2011.  This Bankruptcy petition is nothing more than the Debtor's attempt to stall, hinder, and delay BB&T's perfected creditor's rights with respect to the Real Property and Rents and profits derived from same.

6    The value of the Real Property, it self, is of insufficient value to secure BB&T's debt. Notwithstanding the unsupported value in the Debtor's Bankruptcy Petition and Schedules, the value

of the Real Property does not provide adequate protection to BB&T.  Should this Court not grant

BB&T's Motion to Prohibit Use of Cash Collateral pursuant to 11 U.S.C.§363, BB&T respectfully

requests, in the alternative, that this Court require the Debtor to make adequate protection payments

to BB&T pursuant to 11 U.S.C. §361(1) or 363(e)[2].

## II. SUMMARY OF THE FACTS

7      On or about July 2, 2007, 3900 executed and delivered a Promissory Note to BB&T,

in the original principal amount of $10,800,00.00 (the "Note").  A true and correct copy of the Note

is attached hereto as Exhibit "A" and incorporated fully herein by reference.

8      The terms of the Note are further governed by a Loan Agreement dated July 2, 2007

(the "Loan Agreement") executed and delivered by the Debtor to BB&T.  A true and correct copy

of the Loan Agreement is attached hereto as Exhibit "B" and incorporated fully herein by reference.

9      As security for the repayment of the amounts advanced pursuant to the terms of the

Note and Loan Agreement, on July 2, 2007, the Debtor executed and delivered to BB&T a certain

Mortgage, which contains an assignment of rents and security agreement, recorded on July 3, 2007

in Official Records Book 25751 at Page 4473 of the Public Records of Miami-Dade County, Florida

(the "Mortgage").  The Mortgage encumbers the Real Property more particularly described therein.

---

[2] Additionally BB&T respectfully seeks an Order directing the Debtor to segregate **all** funds earned, received, in the Debtor's possession as of the Petition Date and thereafter, into a DIP account, including but not limited to, all Rents and Profits derived from the Real Property but also the proceeds of the lawsuit with Channel 10 of which the Debtor is a party, funds in certain escrowed funds in certain Certificates of Deposits which serve as Collateral to the Second Note (as defined in BB&T's Motion for Relief from Automatic Stay, being filed contemporaneously herewith), and any and all other funds/cash collateral which is property of the estate.

A true and correct copy of the Mortgage is attached hereto as Exhibit "C" and incorporated fully herein by reference.

10      Pursuant to the terms of the Mortgage, the Debtor grants BB&T a security interest in all rents, leases and profits derived from the Real Property.  *See* Exhibit "C."

11      Moreover, as additional security for the amounts advanced pursuant to the terms of the Note and the Loan Agreement, the Mortgage also contains a security interest in certain collateral, as defined therein.

12      In order to perfect its interest in the Collateral, pursuant to the terms of the security agreement, contained in the Mortgage, on July 18, 2007, BB&T filed a Uniform Commercial Code Financing Statement and attached Rider to Financing Statement which was assigned document No. 200706064133 (collectively, the "UCC Financing Statement").  A true and correct copy of the UCC Financing Statement is attached hereto as Exhibit "D" and incorporated herein by reference.

13      Pursuant to the UCC Financing Statement, BB&T has a perfected first lien interest in the Debtor's Collateral.

14      The Debtor's income is derived from the lease of the Real Property. That income is BB&T's Collateral pursuant to the terms of the subject loan documents, including but not limited to the Mortgage, Assignment of Rents, and the Security Agreement contained therein.

15      Additionally, pursuant to the terms of the perfected Security Agreement, BB&T also holds a first lien interest on all of the Debtor's assets including, but not limited to, judgments, escrowed accounts, and all other assets owned by the Debtor more particularly described in the loan documents and UCC Financing Statement (collectively the Collateral").

-4-

CASE NO. 11-22948-AJC
Chapter 11

16      The Debtor defaulted on the Note by, without limitation, failing to make payment of the debt as the debt matured, failing to pay real property taxes on the Real Property for the year 2009, and otherwise failing to comply with the terms of the loan documents.

17      The Note, Loan Agreement, and Mortgage, which contains the assignment of rents provisions, are collectively referred to as the "3900 Secured Loan Documents."

18      As of the Petition Date, BB&T is owed the approximate principal amount of $10,800,000.00, together with accrued interest, fees, costs and all other sums recoverable under the terms of the Note.  A true and correct copy of the Affidavit of Indebtedness in Support of this Motion is attached hereto as Exhibit "E" and incorporated fully herein by reference.

19      BB&T owns and holds the Note and Mortgage.

20      BB&T has demanded, but not yet received, turn over of the Rents and Profits derived from the Real Property.

## III. PROCEDURAL FACTS

21      On September 13, 2010, BB&T filed the Foreclosure Action with respect to the 3900 Secured Loan.  On December 16, 2010, BB&T filed its Amended Complaint.

22      On January 10, 2011, BB&T filed its Motion for Turnover of Rents, Issues & Profits, in the Foreclosure Action, a true and correct copy of which is attached hereto as Exhibit "F" and incorporated fully herein by reference.

23      On January 27, 2011, Debtor filed its Response to BB&T's Motion for Turnover of Rents (the "Response"), a true and correct copy of which is attached hereto as Exhibit "G" and incorporated fully herein by reference.

24      As evidenced by the budget attached to the Response, the Debtor allegedly receives at least $66,250.00 in monthly income from the Real Property (subject to additional income which would be derived from pending leases which had not been finalized as of January 2011).

25      Moreover, the Debtor's Response does not contest that BB&T has a perfected interest in the rents, issues, profits and income from the Real Property.  *See* Exhibit "G" at page 1.

26      Pursuant to the Budget, attached to the Debtor's Response, the Debtor intends on using BB&T's Rents to pay various creditors, except BB&T.

### IV. BANKRUPTCY PETITION, SCHEDULES, AND RELIEF REQUESTED

27      The Note matured on May 2010 and BB&T did not receive the full payment under the Loan Documents. However, in spite of the fact that the Debtor has derived substantial income from the use of BB&T's Collateral in the form of pledged rents from Real Property (at least $66,250.00 each month prior to maturity and since maturity), subject to BB&T's first mortgage lien and security interest, it has not turned over any such amounts to BB&T and now seeks the protection of this Court as a last minute attempt to stall and hinder BB&T's efforts to enforce its security interest with respect to same.

28      The Debtor's Schedule "A" lists the Debtor's interest in the Real Property with an unsupported value of $13,500,000.00 and a secured debt of $10,800,000.00.  On Schedule "D", the Debtor lists BB&T's security interest in the Real Property with a secured claim of $10,800,000.00.

29      Contrary to the Debtor's overly optimistic and unrealistic value, the Miami Dade County Property Appraiser's website reflects an assessed value of $6,790,818.00 for the Real Property.  A true and correct copy of the Property Appraiser's website information for the Real

Property is attached hereto as Exhibit "H" and incorporated herein by reference. The Real Property is of insufficient value to provide any equity cushion to protect BB&T's interests.

30      However, despite the substantial income and profits derived from the use and operation of the Real Property, and requirement for turnover of those amounts as required under the loan (and the undersigned firm's written demand for turnover of rents and income, as set forth in Exhibit "I" hereto and incorporated herein by reference), the Debtor failed to turn over any those amounts or to pay real property taxes from and after 2009.

31      Debtor is now seeking protection of this Court and will most likely seek permission to use the Rents, at the sole expense of BB&T and its security interest in the Rents.

32      To date, the Debtor has failed to file a projection as to anticipated income and has failed to provide for adequate protection payments to secured creditor, BB&T. Moreover, a review of the projected budget attached to the Response fails to reveal whether the use of any of these funds would serve to protect the value of the estate under these circumstances.

33      BB&T believes that the Debtor's further use of BB&T's pledged Collateral/Rents will further deteriorate BB&T's security interest.

34      As the debt has matured, the Debtor owes BB&T the full amount past due of $10,800,000.00 in principal due, together with interest, fees, costs and all other sums recoverable under the loan documents.

35      At a minimum, the Debtor should be required to tender monthly interest only payments at the post-maturity default interest rate as adequate protection for use of the cash

Collateral/Rents[3].    As a condition for the Debtor's continued to use the Collateral (and Real Property subject to BB&T's mortgage, Rents, profits, etc.) of BB&T to run its business operations, it should be required to provide both adequate protection payments and replacement liens to BB&T during the time period that the Rents and Real Property of BB&T is permitted to be used by the Debtor.[4]

36     As of the date of filing this Motion, BB&T is without knowledge of amounts received by Debtor subsequent to the Petition Date or even subsequent to January 2011.

37     BB&T has not consented to the use of the Cash Collateral/Rents by the Debtor.

38     BB&T requests an Order prohibiting the Debtor from using the Rents.  Alternatively, BB&T requests, among other things, that the Court enter an order directing any payments made to the Debtor to be paid directly to BB&T or at a minimum adequate protection payments consisting of interest only payments at the post-maturity interest rate to be made to BB&T.

39     Additionally, BB&T seeks an order deeming its claim against Debtor's Rents superior to all other subsequent claims.

---

[3]Additionally, BB&T requests that the Debtor be required to account for all of the Debtor's assets including, but not limited to, the accurate value of any amounts given to insiders within the four year period prior to the Bankruptcy proceeding, all funds received by the Debtor from any source including the proceeds from judgments and other legal proceeding and agreement and all funds in escrowed deposit accounts which serve as security for that certain promissory Note executed and delivered to BB&T on July 2, 2007, in the principal amount of $675,000.00.

[4]Of course, BB&T shall retain its liens on the collateral and is entitled to replacement liens. Furthermore, notwithstanding any prospective order permitting use of cash collateral and/or providing adequate protection payments (and replacement liens) in favor of BB&T, this creditor reserves all rights, remedies and objections with respects to its liens, claims, value determinations and all other matters pertaining to these bankruptcy proceedings (including, but not limited to all matters pertaining to cash and other collateral, and any prospective plans, and any requests for dismissal, stay relief or conversion in this bankruptcy proceeding).

CASE NO. 11-22948-AJC
Chapter 11

40      Pursuant to the Bankruptcy Code, the Debtor is prohibited from using or disposing of cash Collateral and Rents in which BB&T has a properly perfected security interest unless BB&T consents to such use of cash collateral or the Court, after notice and hearing, authorizes such use. *See* 11 U.S.C. § 363(c)(2).

41      Despite its intent to use over $66,250.00 of BB&T's pledged Rents, in addition to any other undisclosed income derived by the Debtor, the Debtor's Budget (as proposed in the Foreclosure Action) does not reflect an intent to tender any funds to BB&T.  The Debtor's continued use of BB&T's pledged Rents, will cause irreparable damage and prejudice to BB&T in that, as it is, the value of the Real Property is insufficient to adequately protect BB&T.

42      To avoid further injury, loss and damages (and considering the pre-filing circumstances pertaining to this Debtor), this Court should order adequate protection of BB&T's interests during the pendency of this bankruptcy proceeding.

WHEREFORE, on the basis of the foregoing, BB&T moves this Court to prohibit the Debtor's use of cash collateral for the reasons set forth above and/or to the extent that this Court authorizes the use of cash collateral (on an interim basis and/or otherwise), BB&T respectfully requests adequate protection payments, replacement liens, a proper accounting and preservation of the estate's assets including proceeds from any source and kind, and such other and further relief deemed just and proper under the circumstances.

Respectfully submitted,
/s/ Frank P. Cuneo
Frank P. Cuneo (FBN 0123188)
Email: fpc@lgplaw.com
Juan A. Gonzalez (FBN 375500)
Email: jag@lgplaw.com
Dora F. Kaufman (FBN 771244)

CASE NO. 11-22948-AJC
Chapter 11

Email: dfk@lgplaw.com
Laudy Luna (FBN 044544)
Email: ll@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel: (305) 379-0400
Fax: (305) 379-9626
*Attorneys for Branch Banking & Trust Company*

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of this Motion and Request was furnished this <u>13th</u> day of May, 2011, via electronic transmission to all parties registered to receive electronic filing (cm/ecf) and via regular U.S. Mail to the Debtor, its counsel, the U.S. Trustee, and the 20 largest unsecured creditors pursuant to the Debtor's List of Creditors Holding 20 Largest Unsecured Claims.

/s/ Frank P. Cuneo
FRANK P. CUNEO

# EXHIBIT "A"

# PROMISSORY NOTE

$ 10,800,000.00

July 2, 2007
Miami, Florida

FOR VALUE RECEIVED, **3900 BISCAYNE, LLC**, a Florida limited liability company, its successors, administrators and / or assigns (jointly and severally, hereinafter, the "Borrower") whose address is 2915 Biscayne Boulevard, Suite 200, Miami, Florida 33137, promise to pay to the order of COLONIAL BANK, N.A., a national banking association, its successors, administrators and assigns (hereinafter, together with any holder hereof, the "Bank"), having an office at 1200 Brickell Avenue, 10th Floor, Miami, Florida 33131, the principal sum of TEN MILLION EIGHT HUNDRED THOUSAND and 00/100 ($10,800,000.00) Dollars, together with interest thereon from the date hereof until and including the Initial Maturity Date (as such term is defined below) of this Promissory Note (the "Note") at a fixed annual rate equal to Seven and One-Quarter (7.25%) per annum, as may be adjusted on the Initial Maturity Date, as provided below if Borrower elects to extend the Initial Maturity Date, as set forth below.

During the initial 24-month period of this Note, the Borrower shall pay the principal and interest due on this Note, as follows:

    (a)    Twenty-three (23) consecutive monthly payments of *interest only* on the outstanding principal balance of this Note, shall be due and payable commencing on August 5, 2007, and on the fifth (5th) day of each and every month thereafter, through and including June 5, 2009;

    (b)    One (1) final balloon payment shall be due on July 5, 2009 (the "Initial Maturity Date"), unless the Borrower elects to exercise the extension period as provided in subparagraph (c) below;

    (c)    Provided no Event of Default (as defined in this Note or in any Loan Document), or event which with the passage of time or notice or both would become an Event of Default, has occurred and is continuing, and the Borrower has entered into lease agreements containing terms and conditions that achieve the Debt Service Coverage Ratio required below, then the Borrower may extend the Initial Maturity Date of this Note and the payments due hereunder one (1) time, for an additional twelve (12) month period. If the Borrower elects to extend the Initial Maturity Date, Borrower shall (i) furnish the Bank written notice thereof not more than ninety (90) days, but

THE DOCUMENTARY STAMPS AND INTANGIBLE TAXES IN THE AMOUNT REQUIRED BY LAW HAVE BEEN PAID ON AND ARE AFFIXED TO THE MORTGAGE AND SECURITY AGREEMENT OF EVEN DATE HEREWITH, SECURING THIS NOTE, TO BE RECORDED IN THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

not less than forty-five (45) days prior to the Initial Maturity Date, (ii) pay an extension fee equal to one-eighth (.125%) of one percent of the principal amount of this Note then outstanding, and (iii) Borrower, if requested by Bank, executes an estoppel certificate acknowledging the outstanding balance then due, and certifying that Borrower, and any Guarantor, has no defenses, objections, setoffs, claims or counterclaims against Bank with respect to this Note;

(d)   If Borrower elects to exercise the extension option as provided above, this Note shall accrue interest commencing on the Initial Maturity Date, at an annual rate based on the *"Two-Year Swap Rate"* (as hereinafter defined) then in effect, plus a margin of *2.06%* percent per annum, the total of which rate shall hereinafter be referred to as the "Applicable Interest Rate". The Applicable Interest Rate shall be computed on the basis of the actual number of days elapsed over a 360-day year, and such Rate shall remain fixed thereafter, until the Extended Maturity Date; and

(e)   This Note shall then be repaid in twelve (12) monthly payments of *Interest only*, commencing on August 5, 2009, and on the fifth (5th) day of each and every consecutive month thereafter, until July 5, 2010 (the "Extended Maturity Date"), when all principal then remaining unpaid, together with all accrued and unpaid interest, shall be due and payable in full. NOTWITHSTANDING ANYTHING TO THE CONTRARY, HOWEVER, THIS NOTE SHALL MATURE ON THE INITIAL MATURITY DATE, OR THE EXTENDED MATURITY DATE, AS THE CASE MAY BE, AT WHICH TIME ALL OUTSTANDING PRINCIPAL, ACCRUED INTEREST AND ANY OTHER CHARGES DUE HEREUNDER SHALL BE DUE AND PAYABLE IN FULL.

The "Two-Year Swap Rate" shall mean the International Swaps and Derivatives Associates ("ISDA") 2-year mid-market par swap rate, which is a rate for a Fixed Rate Payer in return for receiving three (3) month's LIBOR, and is based on rates collected at 11:00 A.M. by Garban Intercapital, PLC, and published on Reuters Page ISDAFIX1. The Two-Year Swap Rate shall be calculated on the basis of a 360-day year for the actual number of days elapsed in the period. The Two-Year Swap Rate is not necessarily the best, lowest or most favorable rate offered by the Bank to its borrowers. The Borrower acknowledges that no representations have been made that the Two-Year Swap Rate is actually the rate charged to customers of a particular degree of creditworthiness. However, in no event, shall the Two-Year Swap Rate exceed the maximum annual rate of interest permitted by law.

This Note is secured by that certain (i) Mortgage and Security Agreement of even date herewith (the "Mortgage"), (ii) Collateral Assignment of Leases, Rents and Profits (the "Lease Assignment"), (iii) UCC-1 Financing Statements (the "UCC-1 Financing Statements"), executed and

-2-

delivered by the Borrower in favor of the Bank, to be filed in the Public Records of Miami-Dade County, Florida, and the Florida Secured Transaction Registry, as the case may be, (iv) a Loan Agreement of even date herewith (the "Loan Agreement") executed by the Borrower in favor of the Bank, and (v) Guaranty Agreements of even date herewith (collectively, the "Guaranties"), executed and delivered by Kobi Karp and Nancy Karp, husband and wife, and Michael Flacks and Deborah Flacks, husband and wife, as Guarantor (jointly and severally, the "Guarantor"). This Note, the Mortgage, Lease Assignment, UCC-1 Financing Statements, Loan Agreement, the Guaranties, and any other agreement or instrument now or hereafter executed in connection with the indebtedness evidenced by this Note are hereinafter referred to collectively as the "Loan Documents". Any default by Borrower or Guarantor under the terms and conditions of any of the Loan Documents shall constitute a default hereunder.

If any payment under this Note is not made in full when due beyond any applicable grace period, the entire unpaid principal balance and accrued interest, less any unearned interest and less and any interest in excess of the maximum allowed by law and any rebates required by law, shall, at the option of the Bank, become immediately due and payable without notice. Failure to exercise this option shall not constitute a waiver of the subsequent right to exercise such option. While in default, this Note shall bear interest at an annual interest rate equal to eighteen (18.00%) per cent per annum (the "Default Interest Rate"). In addition, to any other remedies provided herein, if any installment of principal or interest is not paid within ten (10) days of its due date, then to the extent permitted by law, the Bank shall also be entitled to receive a late fee equal to five percent (5.00%) of the amount of the delinquent installment or overdue payment.

Borrower shall pay all amounts owing under this Note in full when due without setoff, deduction or withholding for any reason whatsoever. If any payment falls due on a day other than a day on which Bank is open for business (a "Business Day"), then such payment shall instead be made on the next succeeding Business Day; and interest shall accrue accordingly. Any payment received by Bank after 1:00 P.M. shall not be credited against the indebtedness evidenced by this Note until the next succeeding Business Day.

All payments of principal and interest shall be payable in lawful money of the United States of America.

The Borrower promises and agrees to pay, in an Event of Default, all costs and expenses incurred by the Bank in collecting this Note, including court costs and attorney's fees, and also those costs, expenses and attorney's fees incurred in any trial, appellate, administrative or bankruptcy proceeding, whether or not a lawsuit is commenced.

This Note is payable in lawful currency of the United States of America at Bank's offices at 1200 Brickell Avenue, 10th Floor, Miami, Florida 33131, or at such other place as the Bank may hereafter designate in writing. Except as otherwise required by law or by the provisions of any of the Loan Documents, all payments shall be applied first against expenses and indemnities, next against accrued interest, and next against principal; provided, however, from and after any default by Borrower under this Note or under the Mortgage, beyond the applicable grace period, the Bank may apply such payments in any order of priority determined by Bank in its sole and absolute

-3-

judgment.

This Note may be prepaid, in whole or in part, at any time, without penalty or premium. Any prepayment shall be accompanied by an amount equal to the interest accrued thereon to the date of receipt of such prepayment in collected funds. In the event of a partial prepayment at any time, there will be no change in the amount or due date of the monthly payments, unless the Bank agrees in writing to such change.

The remedies of Bank as provided herein, in the Mortgage and any of the other Loan Documents shall be cumulative and concurrent and may be pursued singly, successively, or together at the sole discretion of Bank and may be exercised as often as occasion therefor shall arise. The acceptance by Bank of any payment under this Note which is less than the amount then due or the acceptance of any amount after the due date thereof, shall not be deemed a waiver of any right or remedy available to Bank nor nullify the prior exercise of any such right or remedy by Bank. No course of dealing or conduct shall be effective to waive, alter, modify or amend any of the terms or provisions hereof.

The provisions of this Note shall be construed and interpreted and all rights and obligations hereunder determined in accordance with Florida law. In the event any provision of this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

All nouns and pronouns contained in this instrument shall mean and include the plural as well as the singular, and the masculine, feminine and neuter gender whenever and wherever the context so admits or requires.

It is expressly understood and agreed that Bank shall never be construed for any purpose as a partner, joint venturer, co-principal, or associate of Borrower, or of any person or party claiming by, through, or under Borrower.

The Borrower consents that jurisdiction and venue of any dispute arising from the terms and conditions of this Note or any of the Loan Documents shall be in a court of competent jurisdiction in Miami-Dade County, Florida or in the county in which the Mortgage is recorded, if different, in the sole discretion of Bank.

Borrower, Guarantor, and all sureties, endorsers and any guarantor of this Note hereby (a) waive demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notice, filing of suit and diligence in collecting this Note, in enforcing any of the security rights or in proceeding against the Property encumbered by the Mortgage or any of the collateral (the "Collateral") securing the obligations evidenced by this Note; (b) agree to any substitution, exchange, addition or release of the Property or any of the Collateral or the addition or release of any party or person primarily or secondary liable hereon; (c) agree that the Bank shall not be required first to institute any suit, or to exhaust its remedies against Borrower or any other person or party to become liable hereunder or against the Property or the Collateral in order to enforce

-4-

payment of this Note; (d) consent to any extension, rearrangement, renewal or postponement of time of payment of this Note and to any other indulgence with respect hereto without notice, consent or consideration to any of the foregoing; and (e) agree that, notwithstanding the occurrence of any of the foregoing (except the express written release by the Bank), they shall be and remain jointly and severally, directly and primarily, liable for all sums due under this Note, and any other documents securing payment or performance of this Note.

Any notice, consent, approval or communication given pursuant to the provisions of this Note shall (except where otherwise permitted by this Note) be in writing and shall be (a) delivered by hand, (b) mailed by certified mail or registered mail, return receipt requested, postage prepaid, or (c) delivered by a nationally recognized overnight courier, U.S. Post Office Express Mail, or similar overnight courier which delivers only upon signed receipt of the addressee. The time of the giving of any notice shall be the time of receipt thereof by the addressee or any agent of the addressee, except that in the event the addressee or such agent of the addressee shall refuse to receive any notice given as above provided or there shall be no person available at the time of delivery thereof to receive such notice, the time of the giving of such notice shall be the time of such refusal or the time of such delivery, as the case may be. Such notices shall be given to the Borrower and the Bank at the addresses provided herein or in the Mortgage.

Upon the happening of any of the following events, each of which shall constitute an event of default hereunder ("Event of Default"), all liabilities of the Borrower to the Bank, whether or not evidenced by this Note, shall thereupon or thereafter, at the option of the Bank, without notice or demand become due and payable: (a) failure of any Borrower, endorser, surety or guarantor ("Obligor") to perform any agreement hereunder or to pay in full, when due beyond any applicable grace period, any indebtedness or liability whatsoever to Bank or any installment thereof or interest thereon; (b) the filing of any petition under the Bankruptcy Act, or any similar federal, or state statute, by or against any Obligor which is not dismissed or discharged within thirty (30) days of the filing thereof; (c) an application for the appointment of a receiver for the making of a general assignment for the benefit of creditors by, or the insolvency of, any Obligor which is not dismissed or discharged within thirty (30) days of the filing thereof; (d) the entry of a judgment against the Borrower, which is not released or transferred to surety or bond within thirty (30) days of the filing thereof; (e) the issuing of any attachments or garnishment, or the filing of any lien, against the Property, which issuance or filing is not discharged or transferred to surety or bond within thirty (30) days of the filing thereof; (f) the taking of possession of any substantial part of the Property at the instance of any governmental authority; (g) the dissolution, merger, consolidation, or reorganization of any Obligor; (h) the death of any Obligor which materially, adversely affects the Borrower's ability to pay the amounts due under the Note or the Mortgage; (i) a material default by any Obligor under any other Loan Document beyond any applicable grace period; (j) a reasonable determination by Bank that a material adverse change has occurred in the financial condition of any Obligor from the conditions set forth in the most recent financial statement of such Obligor as heretofore most recently disclosed to Bank in any manner, which in the Bank's reasonable discretion, materially, adversely affects the Borrower's ability to pay the amounts due under the Note or the Mortgage; or (k) that any warranty, representation, certification or statement of any Obligor (whether contained in this Note or not) pertaining to or in connection with this Note or the loan evidenced by this Note is not true in all material respects.

-5-

In addition to the foregoing Events of Default, if Obligor fails to maintain, during the term of this Note, a "Global Debt Service Coverage Ratio (hereafter, "DSCR") of 1.20 times to 1.00 or greater, tested on an annual basis, it shall constitute an Event of Default. For purposes of this Note, Debt Service Coverage is defined as follow:

(a)   Gross Cash Flow divided by Actual Debt Service verified on an annual basis from figures obtained from Borrower's semi-annual and year-end financial statements;

(b)   Gross Cash Flow shall be defined as earnings before, interest expense, income taxes, depreciation and amortization expense, plus rent paid to Borrower, less any extraordinary income;

(c)   Actual Debt Service shall be defined as actual principal and interest payments made by the Borrower on *all* outstanding Bank debt (including any contemplated loan), plus real estate taxes and condominium maintenance fees during the preceding period.

Should the Obligor fail to maintain the above DSCR, the Borrower shall have ninety (90) days in which to cure any shortfall by making a principal reduction payment adequate to reduce the outstanding principal balance to an amount which would comply with the DSCR requirements under this Note.

Upon the occurrence and during the continuance of any Event of Default beyond all applicable grace periods, the Bank is hereby authorized at any time and from time to time, to the fullest extent permitted by applicable law, without notice to Borrower (any such notice being expressly waived by Borrower to the fullest extent permitted by applicable law), to set off and apply any and all deposits funds, or assets at any time held and other indebtedness at any time owing by Bank to or for the credit or the account of Borrower or any Obligor against any and all of the obligations of Borrower now or hereafter existing under this Note, whether or not Bank shall have made any demand under this Note or any Loan Document or exercised any other right or remedy hereunder. Bank will promptly notify Borrower after any such setoff and application made by Bank, provided that the failure to give such notice shall not affect the validity of such setoff and application.

The failure of Borrower or any other Obligor to provide any of the documents or information required by the Bank within the time period(s) specified in the Loan Documents, or if no time period is specified, then within thirty (30) days following the Bank's request therefor, shall further constitute an Event of Default under this Note and the Loan Documents. During the period of any such default beyond the applicable grace period, the Bank, in addition to any other remedies available hereunder or under the Loan Documents, may charge default interest at an annual interest rate equal to the Default Interest Rate.

In no event shall interest (including any charge or fee held to be interest by a court of competent jurisdiction) accrue to be payable hereon in excess of the maximum rate allowable by law

for the time such indebtedness shall be outstanding and unpaid, and if by reason of acceleration of maturity of such indebtedness, or for any other reason, interest in excess of the highest legal rate shall be due or paid, any such excess shall constitute and be treated as a payment on the principal hereof and shall operate to reduce such principal by the amount of such excess, or if in excess of the principal indebtedness such excess shall be refunded to the Borrower. Without limiting the generality of the foregoing, and notwithstanding any oral or written agreement, no deposit of funds shall be required in connection with the loan evidenced by this Note in an amount which will, when deducted from the principal amount outstanding hereunder, cause the rate of interest hereunder to exceed the maximum lawful rate.

THE BANK AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A JURY TRIAL IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. IF THE SUBJECT MATTER OF ANY SUCH LITIGATION IS ONE IN WHICH THE WAIVER OF A JURY TRIAL IS PROHIBITED, NEITHER THE BORROWER NOR THE BANK SHALL PRESENT AS A NON-COMPULSORY COUNTERCLAIM IN SUCH LITIGATION, ANY CLAIM ARISING OUT OF THIS NOTE. FURTHERMORE, NEITHER THE BANK NOR BORROWER SHALL SEEK TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE WAIVED. BORROWER ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE BANK'S EXTENDING CREDIT TO BORROWER AND ENTERING INTO THE LOAN TRANSACTION EVIDENCED BY THIS NOTE.

Dated and executed this _2_ day of July, 2007.

BORROWER:

3900 BISCAYNE, LLC, a Florida limited liability company,

By: _____
Nancy Karp, Member

By: _____
Deborah Flacks, Member

F:\IEAPA\10006\7019\MISC Prom Note 3 IBA.wpd

-7-

## ESTOPPEL CERTIFICATE

BEFORE ME, the undersigned authority, personally appeared, NANCY KARP (the "Affiant"), who being by me first duly sworn, deposes and states that:

1.    The Affiant is a Manager of 3900 BISCAYNE, LLC, a Florida limited liability company (the "Company"), has personal knowledge of the matters set forth herein, and is authorized to certify the matters herein in such capacity on behalf of the Company.

2.    The Company is the Borrower in connection with a loan made by COLONIAL BANK, an Alabama banking corporation, successor by conversion to Colonial Bank, N.A., a national banking association Bank (the "Bank"), to the Company, evidenced by a Promissory Note dated July 2, 2007, in the principal amount of $10,800,000.00 (the "Note").

3.    The Affiant acknowledges that the outstanding principal balance due on the Note as of May 5, 2009 is $10,800,000.00.

4.    The Affiant hereby certifies that the Company has no defenses, objections, setoffs, claims or counterclaims against the Bank with respect to the Note.

5.    This Affidavit is being made to induce the Bank to renew and extend the maturity of the Note. The Affiant is familiar with the nature of an oath and with the penalties prescribed by law for falsely swearing to statements made in an instrument of this nature. The Affiant has read this Affidavit or have caused it to be read to Affiant and swears to the truth and accuracy of its contents.

FURTHER AFFIANT SAYETH NAUGHT.

3900 BISCAYNE, LLC, a Florida limited liability company,

By: _____
        Nancy Karp, Manager

(This space intentionally left blank)

STATE OF FLORIDA                )
                                )SS:
COUNTY OF MIAMI-DADE            )


5ᵗʰ  I HEREBY CERTIFY that the foregoing instrument was acknowledged before me this
day of June, 2009, by Nancy Karp, as Manager of 3900 BISCAYNE, LLC, a Florida limited
liability company.  She is [✓] personally known to me or [  ] has produced a driver's license issued
by the Florida Department of Highway Safety and Motor Vehicles or
_____ [insert type of identification, if applicable] as identification.




Sign & Print Name
NOTARY PUBLIC, State of Florida At Large
Serial No:
My Commission Expires:

Notary Public State of Florida
Nathalia Y Bogoni
My Commission DD804235
Expires 02/26/2013


F:\HAPA\10006\2007 Files\7019\2009 Extension\MISC Estoppel Certificate 1 - Borrower $10.6MM LEA.wpd


-2-

# EXHIBIT "B"

## LOAN AGREEMENT

This **LOAN AGREEMENT** (the "Agreement"), is made on this _2nd_ day of July 2007, between **3900 BISCAYNE, LLC**, a Florida limited liability company, as Borrower (hereinafter, the "Borrower"), whose address is 2915 Biscayne Boulevard, Suite 200, Miami, Florida 33137, and **COLONIAL BANK, N.A.**, a national banking association, having an office at 1200 Brickell Avenue, 10th Floor, Miami, Florida 33131 (its successors, administrators and/or assigns, jointly and severally, hereinafter, the hereinafter, the "Bank").

### R E C I T A L S :

This Agreement applies to the loan or loans (individually and collectively, the "Loan") evidenced by that certain Promissory Note of even date herewith made by the Borrower to the order of Bank in the original principal amount of $10,800,000.00, as the same shall be amended, modified, increased or extended from time to time (collectively, the "Note") and all Loan Documents. The terms "Loan Documents" and "Obligations," as used in this Agreement, are defined in the Note.

Relying upon the covenants, agreements, representations and warranties contained in this Agreement, Bank is willing to extend credit to Borrower upon the terms and subject to the conditions set forth herein, and Bank and Borrower agree as follows:

**ADVANCES.** The purpose of the Loan is to refinance a commercial office building located at 3900 Biscayne Boulevard, Miami, Florida 33137 (the "Property").

**REPRESENTATIONS.** Borrower represents that from the date of this Agreement and until final payment in full of the Obligations: **Accurate Information.** All information now and hereafter furnished to Bank is and will be true, correct and complete in all material respects. Any such information relating to Borrower's financial condition will accurately reflect Borrower's financial condition as of the date(s) thereof, (including all contingent liabilities of every type), and Borrower further represents that its financial condition has not changed materially or adversely since the date(s) of such documents. **Authorization; Non-Contravention.** The execution, delivery and performance by Borrower and any guarantor, as applicable, of this Agreement and other Loan Documents to which each is a party are within its power, have been duly authorized as may be required and, if necessary, by making appropriate filings with any governmental agency or unit and are the legal, binding, valid and enforceable obligations of Borrower and any guarantor; and do not (i) contravene, or constitute (with or without the giving of notice or lapse of time or both) a violation of any provision of applicable law, a violation of the organizational documents of Borrower or any guarantor, or a default under any agreement, judgment, injunction, order, decree or other instrument binding upon or affecting Borrower or any guarantor, (ii) result

in the creation or imposition of any lien (other than the lien(s) created by the Loan Documents) on any of Borrower's or any guarantor's assets, or (iii) give cause for the acceleration of any obligations of Borrower or any guarantor to any other creditor. **Asset Ownership.** The Borrower has good and marketable title to all of the properties and assets reflected on the balance sheets and financial statements supplied Bank by each, and all such properties and assets are free and clear of mortgages, security deeds, pledges, liens, charges, and all other encumbrances, except as otherwise disclosed to Bank by Borrower in writing and approved by Bank ("Permitted Liens"). To the best of Borrower's knowledge, no default has occurred under any Permitted Liens and no claims or interests adverse to Borrower's present rights in its properties and assets have arisen. **Discharge of Liens and Taxes.** Borrower has duly filed, paid and / or discharged all taxes or other claims that may become a lien on any of their respective property or assets, except to the extent that such items are being appropriately contested in good faith and an adequate reserve for the payment thereof is being maintained. **Sufficiency of Capital.** Borrower is not, and after consummation of this Agreement and after giving effect to all indebtedness incurred and liens created by Borrower in connection with the Note and any other Loan Documents, will not be, insolvent within the meaning of 11 U.S.C. § 101, as in effect from time to time. **Compliance with Laws.** Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all material respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances; all applicable federal, state and local laws and regulations intended to protect the environment. Neither the Borrower nor any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/ sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country to the extent subject to a sanctions program administered by OFAC. **Organization and Authority.** The Borrower is duly created, validly existing and in good standing under the laws of the state of its organization, and has all powers, governmental licenses, authorizations, consents and approvals required to operate its business as now conducted. The Borrower is duly qualified, licensed and in good standing in each jurisdiction where qualification or licensing is required by the nature of its business or the character and location of its property, business or customers, and in which the failure to so

qualify or be licensed, as the case may be, in the aggregate, could have a material adverse effect on the business, financial position, results of operations, properties or prospects of Borrower or any guarantor of the Loan. **No Litigation.** There are no pending or threatened suits, claims or demands against Borrower or any guarantor that have not been disclosed to Bank by Borrower in writing, and approved by Bank. **Indemnity.** Borrower will indemnify Bank and its affiliates from and against any losses, liabilities, claims, damages, penalties or fines imposed upon, asserted or assessed against or incurred by Bank arising out of the inaccuracy or breach of any of the representations contained in this Agreement or any other Loan Documents.

**AFFIRMATIVE COVENANTS.** Borrower agrees that, from the date hereof and until final payment in full of the Obligations, unless Bank shall otherwise consent in writing, Borrower, will: **Access to Books and Records.** Allow Bank, or its agents, during normal business hours, access to the books, records and such other documents of Borrower, as Bank shall reasonably require, and allow Bank, at Borrower's expense, to inspect, audit and examine the same and to make extracts therefrom and to make copies thereof. **Business Continuity.** Conduct its business in substantially the same manner and locations as such business is now and has previously been conducted. **Compliance with Other Agreements.** Comply with all terms and conditions contained in this Agreement, and any other Loan Documents, and swap agreements, if applicable, as defined in the 11 U.S.C. § 101, as in effect from time to time. **Estoppel Certificate.** Furnish, within 10 days after request by Bank, a written statement duly acknowledged of the amount due under the Loan and whether offsets or defenses exist against the Obligations. **Insurance.** Maintain adequate insurance coverage with respect to its properties and business against loss or damage of the kinds and in the amounts customarily insured against by companies of established reputation engaged in the same or similar businesses including, without limitation, commercial general liability insurance, hazard, windstorm, flood, workers compensation insurance, and business interruption insurance; all acquired in such amounts and from such companies as Bank may reasonably require. **Maintain Properties.** Maintain, preserve and keep its property, including the Property, in good repair, working order and condition, making all replacements, additions and improvements thereto necessary for the proper conduct of its business, unless prohibited by the Loan Documents. **Notice of Default and Other Notices.** (a) Notice of Default. Furnish to Bank immediately upon becoming aware of the existence of any condition or event which constitutes a Default (as defined in the Loan Documents) or any event which, upon the giving of notice or lapse of time or both, may become a Default, written notice specifying the nature and period of existence thereof and the action which Borrower is taking or proposes to take with respect thereto. (b) Other Notices. Promptly notify Bank in writing of (i) any material adverse change in its financial condition or its business; (ii) any default under any material agreement, contract or other instrument to which it is a party or by which any of its properties are bound, or any acceleration of the maturity of any indebtedness owing by Borrower; (iii) any material adverse claim against or affecting Borrower or any part of its properties; (iv) the commencement of, and any material

-3-

determination in, any litigation with any third party or any proceeding before any governmental agency or unit affecting Borrower; and (v) at least 30 days prior thereto, any change in Borrower's name or address as shown above, and/or any change in Borrower's structure. **Other Financial Information.** Deliver promptly such other information regarding the operation, business affairs, and financial condition of Borrower which Bank may reasonably request. **Payment of Debts.** Pay and discharge when due, and before subject to penalty or further charge, and otherwise satisfy before maturity or delinquency, all obligations, debts, taxes, and liabilities of whatever nature or amount, except those which Borrower in good faith disputes. **Reports and Proxies.** Deliver to Bank, promptly, a copy of all financial statements, reports, notices, and proxy statements, sent by Borrower to members, partners, stockholders, and all regular or periodic reports required to be filed by Borrower with any governmental agency or authority. **Rent Rolls.** The Borrower shall furnish Bank (i) copies all lease agreements pertaining to the rental of any space in the building located on the Property, as reasonably requested by the Bank, and (ii) rent rolls and operating statements relating to the Property, on an annual basis. **Building Report.** The Borrower shall furnish Bank with a written report (the "Building Report") prepared by an engineer approved by the Bank, to be reviewed by the Account Officer, showing the physical condition of the building located on the Property and the status of all systems, including mechanical, roofing, electrical, plumbing and structural. The Building Report shall be in form and content satisfactory to the Bank and its engineer. In the event it becomes necessary to undertake minor renovations, repairs or improvements of the Property, the progress shall be monitored by the Account Officer, and Borrower shall furnish Bank supporting documents, including contracts, work orders, inspection reports. All work completed at the Property shall be reasonably acceptable to the Bank.

**NEGATIVE COVENANTS.** Borrower agrees that, from the date hereof and until final payment in full of the Obligations, unless Bank shall otherwise consent in writing, Borrower will not: **Change in Fiscal Year.** Change its fiscal year. **Change of Control.** Make or suffer a change of ownership that effectively changes control of Borrower from current ownership such that Nancy Karp and Deborah Flacks, do not maintain day-to-day ownership and control of Borrower. **Encumbrances.** Create, assume, or permit to exist any mortgage, security deed, deed of trust, pledge, lien, charge or other encumbrance on any of its assets, whether now owned or hereafter acquired, other than: (i) security interests required by the Loan Documents; (ii) liens for taxes contested in good faith; or (iii) Permitted Liens. **Guarantees.** Guarantee or otherwise become responsible for obligations of any other person or persons, other than the endorsement of checks and drafts for collection in the ordinary course of business. **Cross Default.** Default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower or any Subsidiary or Affiliate of Borrower ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any corporation or company of which more than 50% of the issued and outstanding voting stock or membership interest is owned directly or indirectly by Borrower), any general partner of or

-4-

the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates. **Default on Other Contracts or Obligations.** Default on any material contract with or obligation when due to a third party or default in the performance of any obligation to a third party incurred for money borrowed. **Government Intervention.** Permit the assertion or making of any seizure, vesting or intervention by or under authority of any governmental entity, as a result of which the management of Borrower or any guarantor is displaced of its authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered.** Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or attachment against any property of or debts due.

**ANNUAL FINANCIAL STATEMENTS.** Borrower shall deliver to Bank, within ninety (90) days after the close of each fiscal year, company-prepared financial statements reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all on a consolidated and consolidating basis with respect to Borrower, and its subsidiaries, affiliates and parent or holding company, as applicable and in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year, including a schedule of all outstanding debt, commitments and terms of repayment. The Borrower shall cause each Guarantor to deliver to Bank, within ninety (90) days after the close of each calendar year, personal financial statements reflecting its financial condition during such calendar year, including, without limitation, a balance sheet, statement of cash flows, a breakdown of all contingent liabilities, with supporting schedules; all on a consolidated and consolidating basis with respect to the Guarantor, in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year and containing such information as may be necessary to prepare a statement of the Borrower's global cash flow.

In addition, each Guarantor shall to deliver to Bank, within the time specified above, financial statements for any entity owned or controlled by any Guarantor, reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules, debt schedule, financial commitments and terms of repayment, or a developer's schedule, all on a consolidated and consolidating basis with respect to the entities owned or controlled by a Guarantor, in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year.

**TAX RETURNS.** The Borrower shall deliver to Bank, within ninety (90) days of filing, complete copies of U.S. Corporate Federal and State Income or sales tax returns, as applicable, together with all schedules thereto, each of which shall be signed and certified by Borrower to be true and complete copies of such returns. In the event an extension is filed, Borrower shall deliver a copy of the extension within ninety (90) days of filing. The

Borrower shall cause each Guarantor to deliver to Bank, within ninety (90) days of filing, complete copies of personal federal income tax returns, as applicable, together with all schedules thereto, including any K-1 schedules, each of which shall be signed and certified by the Guarantor to be true and complete copies of such returns. In the event an extension is filed, the Guarantor shall deliver a copy of the extension within 90 days of filing.

**FINANCIAL COVENANTS.** Borrower agrees to the following provisions from the date hereof until final payment in full of the Obligations, unless Bank shall otherwise consent in writing, using the financial information for Borrower, its subsidiaries, affiliates and its holding or parent company, as applicable: **Deposit Relationship.** Borrower shall establish a depository account with Bank. **Limitation on Advances.** Borrower shall not, during any fiscal year, make loans or advances, excepting such loans or advances in the ordinary course of Borrower's business. **Debt Service Coverage Ratio.** The Obligor, as such term is defined in the Note, shall maintain a minimum Global Debt Service Coverage Ratio ("DSCR") of 1.20 times to 1.00 or greater, to be tested on an annual basis. For purposes of this Agreement, Global Debt Service Coverage is defined as follow:

(a)     Gross Cash Flow divided by Actual Debt Service verified on an annual basis from figures obtained from Borrower's and Guarantor's semi-annual and year-end financial statements;

(b)     Gross Cash Flow shall be defined as earnings before, interest expense, income taxes, depreciation and amortization expense, plus rent paid to Borrower, less any extraordinary income;

(c)     Actual Debt Service shall be defined as actual principal and interest payments made by the Borrower on *all* outstanding Bank debt (including any contemplated loan), plus real estate taxes and condominium maintenance fees during the preceding period.

Failure to maintain the required Debt Service Coverage shall constitute an Event of Default under the Note and the Loan Documents.

**CONDITIONS PRECEDENT.** The obligations of Bank to make the loan and any advances pursuant to this Agreement are subject to the following conditions precedent: **Additional Documents.** Receipt by Bank of such additional supporting documents as Bank or its counsel may reasonably request. **Lease Agreements.** The Borrower shall furnish Bank with satisfactory evidence of the written Lease Agreements entered into by the Borrower and all tenants at the Property, including any amendments thereto or modifications thereof, which Leases shall be satisfactory in form and content to the Bank and its legal counsel. **Operating Statements.** The Borrower shall furnish Bank with Operating Statements for the Property on an annual basis. **Additional Guarantor.** Any person or entity that has an ownership interest in the Borrower, except for the Henri Bouskela Living Trust, which interest is greater than twenty (20%) percent shall be required to execute and deliver an unlimited, unconditional guaranty of the Borrower's obligations

-6-

on the Loan in favor of the Bank. **Verification of Liquidity.** The Guarantor shall furnish the Bank satisfactory written evidence that the Guarantor has liquid assets in the personal name or in an entity owned and controlled by Guarantor, of at least $1,000,000.00, which are unencumbered and not subject to any claim or demand. This requirement shall be monitored on a semi-annual basis by the Credit Administration Department of the Bank. **Phase I Environmental Site Assessment.** The Borrower shall obtain a Phase I Environmental Site Assessment report of the Property (and a Phase II, if required), prepared by an engineering firm approved by the Bank that is satisfactory in form and content. The cost of the environmental audit shall be paid by the Borrower. **Opinion of Counsel.** On or prior to the date of any extension of credit hereunder, and if required by Bank, Bank shall have received a written opinion of the counsel of Borrower acceptable to Bank that includes confirmation of the following:  (a) The accuracy of the representations set forth in this Agreement in the Representations Subparagraphs entitled "Authorization; Non-Contravention"; "Compliance with Laws", and "Organization and Authority".  (b) This Agreement and other Loan Documents have been duly executed and delivered by the Borrower and Guarantor constitutes the legal, valid and binding obligations of Borrower and Guarantor, enforceable in accordance with their terms.  (c) No registration with, consent of, approval of, or other action by, any federal, state or other governmental authority or regulatory body is required by law in connection with the execution and delivery of this Agreement and the other Loan Documents, or the extension of credit under this Agreement or the other Loan Documents, or, if so required, such registration has been made, and such consent or approval given or such other appropriate action taken.  (d) The loan is not usurious.  (e) The Loan Documents create the priority of lien on or security interest in the Collateral (as defined in the Loan Documents) that is contemplated by the Loan Documents.  (f) The execution and delivery of the Loan Documents have been properly and completely authorized by all action or consent required of each member of the Borrower.

**COSTS, EXPENSES AND TAXES.** The Borrower agrees to pay all reasonable costs and expenses of the Bank in connection with the preparation, execution, delivery and administration of this Agreement, the Note, Security Instruments and the other instruments and documents to be delivered hereunder and thereunder, including the reasonable fees and out-of-pocket expenses of counsel for the Bank, as well as the reasonable fees and out-of-pocket expenses of legal counsel, independent public accounts and other outside experts retained by the Bank in connection with the enforcement or interpretation of this Agreement, the Note, Security Instruments and the other instruments and documents to be delivered hereunder and thereunder. In addition, the Borrower shall pay any and all documentary stamp and other taxes payable or determined to be payable in connection with the execution and delivery of this Agreement, the Note, Security Instruments and the other instruments and documents to be delivered hereunder and thereunder, and agrees to save the Bank harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such taxes.

**EXEMPTION FROM TRUTH IN LENDING AND FAIR DEBT COLLECTION PRACTICES ACTS.** The Borrower understands and agrees that the extension of credit by the Bank to the Borrower represented by the Loan is exempt from the provisions of the

Federal Consumers Credit Protection Act ("Truth in Lending Act") and Regulation "Z" of the Board of Governors of the Federal Reserve System of the United States of America, and the Fair Debt Collection Practices Act because the Borrower is a person fully excluded therefrom and / or because the Loan is only for business or commercial purposes of the Borrower, and the Borrower acknowledges that the proceeds of the Loan are not being used for personal, family, household or agricultural purposes.

**NO FIDUCIARY RELATIONSHIP.** The relationship between Bank and Borrower or any guarantor of the Note or any of the Loan Documents, is solely that of lender and borrower, mortgagor and / or guarantor. The Bank has no fiduciary or other special relationship with or duty to the Borrower or any guarantor of the Note and none is created hereby or may be inferred from any course of dealing or act or omission of the Bank.

**IN WITNESS WHEREOF,** Borrower, Mortgagor and Bank, on the day and year first written above, have caused this Agreement to be executed under seal.

|  |  |
|---|---|
| **BORROWER:** | **BANK:** |

3900 BISCAYNE, LLC, a Florida limited liability company

COLONIAL BANK, N.A., a national banking association

By: _____
Nancy Karp, Member

By: _____
Lina Mackl, Senior Vice President

By: _____
Deborah Flacks, Member

F:\IEAPA\10008\7019\MISC Loan Agreement 2 IEA.wpd

-8-

# EXHIBIT "C"

CFN 2007R0662744
OR Bk 25751 Pgs 4473 - 45011 (29pgs)
RECORDED 07/03/2007 13:32:51
MTG DOC TAX 37,800.00
INTANG TAX 21,600.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

THIS INSTRUMENT PREPARED BY:

Ignacio E. Arango, Esquire
IGNACIO E. ARANGO, P.A.
201 Alhambra Circle, Suite 500
Coral Gables, Florida 33134

(Reserved)

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (the "Mortgage") is made and entered into as of the ___2nd___ day of July, 2007, by 3900 BISCAYNE, LLC, a Florida limited liability company, as Mortgagor (the "Mortgagor"), whose address is 2915 Biscayne Boulevard, Suite 200, Miami, Florida 33137, and COLONIAL BANK, N.A., a national banking association, as Mortgagee (the "Mortgagee"), having an office at 1200 Brickell Avenue, 10th Floor, Miami, Florida 33131.

The Mortgagor is justly and lawfully indebted to Mortgagee in the sum of TEN MILLION EIGHT HUNDRED THOUSAND and 00/100 ($10,800,000.00) Dollars (the "Loan"), as evidenced by a certain Promissory Note payable to the order of Mortgagee (the "Note"), executed by Mortgagor, bearing the same date as this Mortgage, to be paid according to its terms.

To secure (i) the payment of the Loan and to secure the full and faithful performance of the Mortgagor's covenants and agreements contained in the Note, (ii) all obligations of the Mortgagee in favor of the Mortgagee (or Mortgagee's affiliate), now or hereafter existing under any interest rate or commodity swap, cap, floor, collar, or any combination thereof, or option with respect to these or similar transactions, for the purposed of hedging Mortgagor's exposure to fluctuations in interest rates or commodity prices, (iii) all sums advanced by Mortgagee for the benefit of Mortgagor under any other instrument or otherwise, including, without limitation, any amounts paid by Mortgagee under any letters of credit issued by Mortgagee for the benefit of Mortgagor, and (iv) all covenants and agreements contained in this Mortgage and all other instruments and documents executed or which may in the future be executed in connection with the Loan by Mortgagor or its permitted successor(s) in title and/or any guarantor of the Loan (individually and collectively, the "Loan Documents"), Mortgagor grants, bargains, sells, conveys, assigns, transfers, grants a security interest in, mortgages, pledges, delivers, sets over, warrants and confirms to Mortgagee:

All those certain lots, pieces, or parcels of land lying and being in MIAMI-DADE County, State of Florida (all or any part of which, and any interest in which, collectively and individually are referred to in this Mortgage as the "Property"), the legal description of which is set forth in Exhibit "A" attached hereto and made a part hereof.

TOGETHER WITH the buildings and improvements of every nature whatsoever now or at any time in the future situated on the Property;

TOGETHER WITH all and singular the tenements, hereditaments, appurtenances, easements, riparian and other rights now or at any time in the future belonging or appurtenant to the Property, including but not limited to, the rights, if any, in all adjacent roads, way, streams, alleys, strips and gores, and the reversion or reversions, remainder or remainders, rents, issues and profits of the Property, and all the estate, right, title, interest, property, claim and demand whatsoever of Mortgagor of, in and to the Property;

TOGETHER WITH all machinery, apparatus, equipment, fittings, fixtures, furniture, furnishings, and articles of property of every kind and nature whatsoever (collectively and individually, the "Equipment") now or at any time in the future owned by Mortgagor and located in, upon or under the Property or any improvements on the Property (whether actually or constructively attached to it) and used or usable in connection with any present or future operation of the Property or such improvements, or future operation of the Property or such improvements, including without limitation all heating, air conditioning, air cooling, sprinkling, freezing, lighting, water distribution, electric distribution, laundry, incinerating, plumbing, sewage, processing, lifting, cleaning, vacuuming, fire prevention, fire extinguishing, refrigerating, ventilating, telephone and communications systems, apparati, fixtures, conduits and attachments; all dynamos, generating and power equipment; all engines, pipes, pumps, tanks, motors, switchboards, lifting stations, boilers, ranges, furnaces, oil burners or units of them; all appliances, carpeting, underpadding, elevators, escalators, shades, awnings, screens, blinds, storm doors and windows; all cabinets, partitions, ducts, and compressors; and any other items of property acquired by Mortgagor, wherever the same may be kept or stored, if acquired with the intent of being incorporated in and/or used in connection with the Property or any improvements to the Property; together also with all additions to them and replacements of them (Mortgagor agreeing, with respect to all additions and replacements, to execute and deliver from time to time such further instruments as may be requested by Mortgagee to confirm their inclusion in the Property subject to this Mortgage); all of which foregoing items described in this paragraph are declared to be part of the real estate and encumbered by this Mortgage;

TOGETHER WITH (a) any and all awards or payments, including interest on them and the right to receive them, growing out of or resulting from any exercise of the power of eminent domain, including the taking of the Premises, as such term is defined below, or any alteration of the grade of any street, or any other injury to, taking of, or decrease in the value of the Premises (as defined below); (b) any unearned premiums on any hazard, casualty, liability, or other insurance policy carried for the benefit of Mortgagor, Mortgagee and/or the Premises (as defined below); (c) Mortgagor's rights in and to all supplies and materials delivered to or located upon the Property; and (d) Mortgagor's rights in, to, under, by virtue of, arising from, growing out of or related to any and all present or future contracts, instruments, accounts, insurance policies, permits, licenses, trade names, plans, appraisals, reports, paid fees, choses-in-action, subdivision restrictions or declarations or other contract rights and intangibles whatsoever now or subsequently dealing with, affecting or concerning the Property or any improvements to it, including but not limited to, (i) all architect's,

2

engineers, contractor's, subcontractor's contracts and all other contracts, and all plans and permits for or related to the Property, its development or the construction or refurbishing of improvements on it, (ii) any agreements for the provision of utilities to the Property, (iii) all payment, performance and other bonds, (iv) any contracts now existing or at any time in the future made for the sale by Mortgagor of the Property, including any deposits paid by any purchasers (however, such deposits may be held) and any proceeds of such sales contracts, including any purchase money notes and mortgages made by such purchasers, and (v) any declaration of condominium, covenants, restrictions, easements or similar documents now or at any time in the future recorded against the title to the Property;

TOGETHER WITH all of Mortgagor's rights to enter into any lease or lease agreement regarding the Property, and all of Mortgagor's rights further to encumber the Property for debt or any other obligation;

TOGETHER WITH any and all profits and proceeds arising form, related to, or growing out of any of Property, Equipment, appurtenances, rights and all other property of whatever nature described in and granted in this Mortgage;

TO HAVE AND TO HOLD the Property, Equipment, appurtenances, rights and all other property of whatever nature described and granted above (all and any part of which, and any interest in which, collectively and individually are referred to in this Mortgage as the "Premises") to Mortgagee in fee simple forever;

PROVIDED HOWEVER, that if Mortgagor (a) shall pay or cause to be paid to Mortgagee the principal and all interest payable in respect of the Loan and any future advance made under this Mortgage and any other sums secured by this Mortgage, at the time and in the manner stipulated in the Note and in this Mortgage or any other Loan Document, all without any deduction or credit for taxes or other similar charges paid by Mortgagor, (b) shall punctually perform, keep and observe all and singular the covenants and promises in the Note and any future advance agreement(s), in any renewals, extensions or modifications of them, and in this Mortgage and any other Loan Document to be kept, performed and observed by and on the part of Mortgagor, and (c) shall not permit or suffer to occur any default under this Mortgage, the Note or any other Loan Document, then this Mortgage and all the interests and rights granted, bargained, sold, conveyed, assigned, transferred, mortgaged, pledged, delivered, set over, warranted and confirmed in them shall cease, terminate and be void, but shall otherwise remain in full force and effect.

Mortgagor covenants with and warrants to Mortgagee as special inducements to Mortgage to make the Loan: (a) that Mortgagor has good and marketable title to the Premises, is lawfully seized and possessed of the Premises in fee simple and has good right to sell, convey and mortgage it; (b) hat the Mortgage is a first mortgage and that the Premises are unencumbered; (c) that as of the date of this Mortgage there are no encumbrances to secure debt prior or junior to this Mortgage and there are to be none as of the date when this Mortgage is recorded; (d) that all applicable zoning and subdivision laws, ordinances and regulations affecting the Premises have been complied with and permit the use and occupancy of the improvements located upon the Premises; and (e) that

3

Mortgagor shall forever warrant and defend the title to the Premises and to the Property to Mortgagee against the lawful claims and demands of all persons whomsoever, and shall make such further assurances to perfect fee simple title to the Property in Mortgagee subject to no encumbrances other than permitted by Mortgagee, as Mortgagee may reasonably require.

Mortgagor further covenants and agrees with Mortgagee to the following terms:

1.    Payment and Performance. Mortgagor shall unconditionally and promptly pay all sums due Mortgagee at the time and in the manner provided in the Note, this Mortgage, any other Loan Document and any instrument evidencing a future advance, and Mortgagor shall otherwise perform, comply with and abide by each and every one of the stipulations, agreements, conditions and covenants contained in the Note, this Mortgage or any other Loan Document.

2.    Taxes, Assessments and Charges. Mortgagor shall pay all taxes, assessments (whether general or special and whether or not payable in installments) and other charges whatsoever levied, assessed, placed or made against the Premises, or against the Note, this Mortgage, any Loan Document or any obligation under any of them. Mortgagor shall make such payments in full (and shall deliver to Mortgagee the paid receipts) not later than thirty (30) days before the last day upon which they may be paid without the imposition of interest (except interest on special assessments payable by law in installments, in which case Mortgagor shall pay each such installment when due) or other late charge or penalty. If Mortgagor shall fail, neglect or refuse so to pay any such taxes, assessments or other charges, then Mortgagee at its option may pay them, and any funds so advanced by Mortgagee shall bear interest, shall be paid and shall be secured as provided in Section 16. Mortgagee shall not be required to pay any such taxes, assessments or other charges in order to accelerate the maturity of the Loan based upon Mortgagor's failure to pay such sums. Nothing contained in this paragraph shall prevent or preclude Mortgagor from contesting the validity of any such taxes, as Mortgagor may reasonably deem appropriate, by diligently pursued legal means, provided such contest does not in any way impair, or risk the impairment of, Mortgagee's security for the Loan.

3.    Insurance.

3.1    Mortgagor shall maintain property insurance covering all buildings and improvements now or at any time in the future located on the Property and all the Equipment and all tangible personal property encumbered by this Mortgage, for an amount not less than their full insurable value on a replacement cost basis, without contribution or coinsurance (or with coinsurance and endorsement in an agreed amount), for the benefit of Mortgagor and Mortgagee as their interests may appear, by policies with such companies, on such terms, in such form and for such periods as Mortgagee shall require or approve from time to time, insuring with extended coverage and broad form coverage against loss or damage by all risks, including, fire, lightning, flood, windstorm, hail, aircraft, riot, vehicles, explosion, smoke, falling objects, weight of ice or snow or sleet, collapse, sudden tearing asunder, breakage of glass, freezing, electricity, sprinkler leakage, water damage, earthquake, vandalism and malicious mischief, theft, riot attending a strike, civil commotion, war risks (when and if war risk coverage is available) and, when and to the extent

4

required by Mortgagee, against any other risks. Regardless of the types or amounts of insurance required and approved by Mortgagee, Mortgagor shall assign and deliver to Mortgagee all policies of insurance which insure against any loss or damage to the Premises, including worker's compensation insurance coverage, as collateral and further security for the payment of the Loan, with loss payable to Mortgagee pursuant to a standard mortgagee clause acceptable to Mortgagee.

3.2     If Mortgagor defaults in obtaining and maintaining, or in delivering proper evidence of, or in fulfilling any other provisions related to, the insurance required under this Mortgage, Mortgagee at its option may effect such insurance from year to year and pay the premiums for it, and any such sums advanced by Mortgagee shall bear interest, shall be paid and shall be secured as provided in Section 16. Mortgagee shall not be required to advance any such sums in order to accelerate the maturity of the Loan because of Mortgagor's default under this section.

3.3     If Mortgagee receives any money for loss or damage by reason of such insurance, then Mortgagee at its option may retain such proceeds and apply them toward the payment of the Loan (in any order of priority Mortgagee may deem appropriate in its sole discretion), or Mortgagee may disburse them to Mortgagor, under such safeguards as Mortgagee shall deem appropriate, in its sole discretion, for the reconstruction or restoration or repair of the damaged Premises, but Mortgagee shall not be obligated to see to the proper application by Mortgagor of any such disbursement.

3.4     Mortgagor shall obtain and carry for the benefit of itself and Mortgagee (i) general comprehensive commercial liability insurance with initial limits of not less than One Million and 00/100 ($1,000,000.00) Dollars per occurrence up to an aggregate of Two Million and 00/100 ($2,000,000.00) Dollars (or such greater or different limits which Mortgagee may require from time to time), as to personal injury or death, and property damage, (ii) all risk, fire and extended coverage hazard insurance and windstorm coverage in minimum amounts sufficient to cover 100% (before co-insurance) of the full replacement cost of the improvements and any other collateral located on the Property; (iii) if the Property is located in a special flood hazard zone (as determined by the Mortgagee), flood insurance for all improvements and any other collateral located on the Property in the maximum available coverage amounts or such other amounts as the Mortgagee may reasonably require; and (iv) such other coverages as the Mortgagee may require.

3.5     In the event of a foreclosure of this Mortgage or other transfer of title to the Premises in lieu of payment of the indebtedness secured by this Mortgage, the purchaser or transferee of the Premises shall succeed to all the rights of Mortgagor, including any right to unearned premiums, in and to all policies of insurance required under this Mortgage.

3.6     Not less than thirty (30) days prior to the modification, termination or expiration date of each policy required under this Mortgage, Mortgagor shall deliver to Mortgagee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Mortgagee.

5

3.7    Each policy of insurance required under this Mortgage shall be non-cancellable without at least thirty (30) days' advance written notice to Mortgagee.

4.    Escrow. As of the date of this Mortgage, the Mortgagee is not requiring Mortgagor to deposit with Mortgagee sufficient funds in an escrow account to pay the taxes, assessments, insurance premiums and other charges that may be due on the Property. In the event Mortgagor fails to pay on a timely basis the taxes, assessments, insurance premiums and other charges that may be due on the Property, and if Mortgagee thereafter elects to require Mortgagor to deposit such funds in an escrow account, Mortgagee shall notify Mortgagor in writing of such requirement at least thirty (30) days in advance. Thereafter, Mortgagor shall pay to Mortgagee together with and in addition to each regular installment of principal and/or interest payable under the Note, an amount deemed sufficient by Mortgagee to provide Mortgagee with funds in an escrow account to pay the taxes, assessments, insurance premiums and other charges next due at least thirty (30) days before the date they are due. Escrow payments under this Section 4 may be calculated based on 1/12 of the amounts reasonably estimated by the Mortgagee (based on the most recent available bills for taxes, assessments and insurance premiums of the Premises, unless such bills are not indicative of the amounts next coming due for such purposes) to be sufficient to enable the Mortgagee to pay such amounts when they become due and payable. Payment of the foregoing sums by the Mortgagee shall not relieve the Mortgagor from its obligation to pay any deficiency. The monies held in escrow under this Section may, at the Mortgagee's discretion, be commingled with the Mortgagee's general funds. In no event shall Mortgagee be liable for payment of any interest on any such funds held in the escrow account. At least thirty (30) days before the date they are due, Mortgagor shall furnish to Mortgagee an official statement of the amount of said taxes, assessments, insurance premiums and other charges, and Mortgagee shall pay the same, but only if sufficient funds remain in the escrow account. In the event of any deficiency in the escrow account, Mortgagor shall, upon notice from Mortgagee, immediately deposit with Mortgagee such additional funds as Mortgagee, in its sole discretion, may deem necessary to cure the deficiency. If Mortgagee elects to pay any such taxes, assessments, insurance premiums or other charges notwithstanding the escrow account deficiency, then all sums advanced by Mortgagee in excess of the escrow account balance shall bear interest, shall be paid and shall be secured as provided in Section 16. An official receipt for such sums shall be conclusive evidence of Mortgagee's payment and of the validity of the tax, assessment, insurance premium or other charge so paid. In the event of any default under the Note or this Mortgage or any other Loan Document, Mortgagee, at its option, may apply any or all funds in the escrow account against the Loan or any other sums secured by this Mortgage, in any order of priority Mortgagee, in its sole discretion, may deem appropriate. At the time of any permitted transfer of the title to all of the Premises then encumbered by this Mortgage, the balance in the escrow account shall inure to the benefit of such transferee without any specific assignment of such funds. Upon payment in full of the Loan and all other sums secured by this Mortgage, the funds remaining in the escrow account (if any) shall be paid over to the record owner of the Premises encumbered by this Mortgage as of the date of such full payment.

5.    Improvements and Development. Without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, no building or other improvements covered by the lien of this Mortgage shall be removed, demolished or materially altered or enlarged,

6

except as required in the event of fire, other casualty or condemnation. Without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, Mortgagor shall not undertake any development of the Property, nor construct any new improvements on the Property, nor do anything that will change or alter the use or character of the Premises, nor initiate or join in or consent to any new (or any change in any existing) private, restrictive covenant, zoning ordinance, master plan, site plan, easement, or other public or private restrictions limiting or defining the uses which may be made of the Premises. Mortgagor shall complete and pay for any permitted development and/or improvements undertaken on the Property within a reasonable time after commencing such work.

6.    **Maintenance and Repair.**

6.1    Mortgagor shall do everything necessary to maintain the Premises in good condition and repair, shall operate the Premises in a first-class manner suited to its intended use, shall not commit or allow the Premises to suffer any waste, impairment, abandonment or deterioration, shall promptly pay all utility fees for services provided to the Premises, and shall comply with (or cause compliance with) all applicable restrictive covenants and all statutes, ordinances and requirements of any governmental authorities having jurisdiction over the Premises or the use of the Premises. In the event of any fire or other casualty, loss or damage to all or any part of the Premises, Mortgagor shall notify Mortgagee within forty-eight (48) hours of such occurrence.

6.2    Mortgagor shall promptly (a) repair, restore, replace or rebuild any part of the Premises which may be damaged or destroyed by any casualty whatsoever or which may be affected by any condemnation, alteration or grade, or other public or quasi-public taking or injury and (b) make proof of loss and do all necessary to process insurance claims related to the loss.

6.3    If Mortgagor shall fail, neglect or refuse (a) to repair or maintain the Premises as described in this Mortgage, then Mortgagee may, at its option, undertake such repairs or maintenance, or (b) to make proof of loss and diligently process insurance claims, then Mortgagee may at its option do so and any funds advanced for such work by Mortgagee shall bear interest, shall be paid and shall be secured as provided in Section 16. Mortgagee shall not be required to advance any such funds in order to accelerate the maturity of the Loan because of Mortgagor's failure to repair or maintain the Premises.

6.4    Mortgagor shall, immediately, upon obtaining knowledge of the institution of any proceedings for the condemnation, alteration of grade, or other public or quasi-public taking or injury of or to the Premises, notify Mortgagee of the pendency of such proceedings. Mortgagee may, but shall not be obligated to, participate in such proceedings, and Mortgagor shall from time to time deliver to Mortgagee all instruments requested by it to permit such participation.

7.    **Assignment of Leases.**

7.1    As further security for the repayment of the Loan, Mortgagor sells, assigns, transfers and sets over to Mortgagee all rents, issues, and profits, together with security deposits of

7

any type, of or related to the Premises and all right, title and interest of Mortgagor in and under all leases (and any extensions and renewals of them) now or hereafter affecting the Premises, including but not limited to, Mortgagor's right to enter the Premises for the collection of rent and other sums due under the leases, to lease the Premises, and to apply all rents, issues and profits, after payment of necessary charges and expenses, on account of any sums due under the Note or secured by the Mortgage or any other Loan Document. This assignment shall be enforceable immediately upon the Mortgagor's default and written demand for the rents is made by the Mortgagee to the Mortgagor, whereupon the Mortgagor shall turn over to the Mortgagee all of the rents, issues and profits in possession of the Mortgagor, it agents, representatives, successors or assigns, at the time such demand is made or are collected thereafter by the Mortgagor. Neither this assignment nor the Mortgagee's enforcement of the provisions of this assignment (including the receipt of the rents) shall operate to subordinate the lien of this Mortgage to any of the rights of any lessee or purchaser under any lease or sales contract of the Property or the Premises. The assignment of leases and rents contained in this Mortgage are intended to provide the Mortgagee with all the rights and remedies of mortgagees pursuant to §697.07, Florida Statutes, as may be amended from time to time. In no event shall the reference to the foregoing section of the Florida Statutes serve to diminish, alter, impair or affect any other rights and remedies of the Mortgagee. Although Mortgagor and Mortgagee intend that this instrument shall be a present assignment, it is expressly understood and agreed that so long as no default shall exist under the Note, this Mortgage or any other Loan Document, Mortgagor may collect assigned rents and profits for not more than two (2) months in advance of the accrual of them, but upon the occurrence of any such default, or at any time during its continuance, all right of Mortgagor to collect or receive rents or profits shall wholly terminate immediately upon notice from Mortgagee. Mortgagor shall faithfully perform the covenants of Mortgagor as lessor or lessee under any present or future leases affecting the Premises and neither do nor neglect to do, nor permit to be done, anything (a) which may cause the termination of such leases, or any of them, except with the prior written, duly issued consent of Mortgagee, nor (b) which may diminish or impair their value, or the rents provided in them, or the interest of Mortgagee or Mortgagor in or under them.

   7.2 Unless it obtains the prior written consent of Mortgagee, Mortgagor shall not:

    (a) assign or encumber the rents, or any part of them, from the Premises;

    (b) consent to the cancellation or surrender of any present or future leases of the Premises;

    (c) modify any present or future lease of the Premises so as to shorten the unexpired term or to decrease the amount of payments due or to be payable;

    (d) allow any such lease to be subordinate to a lien or charge other than that of this Mortgage and any Loan Document; and/or;

    (e) accept any discounted rental or advance rental for more than two (2) months in advance.

7.3    Mortgagor shall:

(a)    fulfill and perform all terms, covenants and obligations of all leases which are to be performed or fulfilled by the lessor;

(b)    give prompt notice to Mortgagee of any notice of any kind received by the Mortgagor of default by lessor under any leases, together with a complete copy of such notice; and

(c)    vigorously enforce, short of termination, the performance and observance by every lessee of every term, condition and obligation to be performed or observed by each lessees under all leases.

7.4    Mortgagor shall procure and deliver to Mortgagee, at any time within sixty (60) days of Mortgagee's request on an annual basis, a current rent roll containing names of all Lessees, tenants and occupants of the Premises, terms of their respective leases, spaces occupied and rentals to be paid, and an operating statement for the Premises; estoppel letters from each tenant, lessee or occupant of the Premises, as required by and in form and substance satisfactory to Mortgagee; a separate recorded assignment of all of the lessor's interest in such leases in form and substance satisfactory to Mortgagee; and proof of the service of a copy of such assignment, or of this Mortgage if requested by Mortgagee, on each tenant, lessee or occupant in possession, either personally or by prepaid certified mail, return receipt requested.

8.    Further Encumbrances.

8.1    Mortgagor shall not grant any other lien, mortgage or security interest encumbering the Premises, nor make any further assignment of the leases and rentals of the Premises, without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole and absolute discretion; any such unpermitted lien or mortgage or assignment or security interest shall entitle Mortgagee to accelerate the maturity of the Loan and foreclose this Mortgage. Any such other lien or mortgage or assignment of security interest shall be junior to this Mortgage and to all permitted tenancies now or at any time in the future affecting the Premises and shall be subject to all renewals, extensions, modifications, releases, interest rate increases, future advances, changes or exchanges permitted by this Mortgage, all without the joinder or consent of such junior lienholder or mortgagee or assignee or security holder and without any obligation on Mortgagee's part to give notice of any kind to any of them.

8.2    Mortgagor shall maintain in good standing any other mortgage or encumbrance to secure debt affecting any part of the Premises from time to time and shall not commit or permit or suffer to occur any default under such mortgages or encumbrances, nor shall Mortgagor accept any future advance under or modify the terms of any such mortgage or encumbrance which may then be superior to the lien of this Mortgage.

9

8.3    Notwithstanding anything to the contrary in the Note, this Mortgage, or any other Loan Document, if foreclosure proceedings should be initiated against the Premises upon any lien or claim other than this Mortgage, whether alleged to be superior or inferior to the lien of this Mortgage, Mortgagee may immediately upon institution of such proceedings, or at any time during the pendency of them, declare this Mortgage and the debt secured by it to be due and payable and may, at its option, without notice, proceed to foreclose this Mortgage and any other Loan Documents.

8.4    Except for encumbrances permitted by Mortgagee, Mortgagor shall not commit or permit or suffer to occur any act or omission whereby any of the security represented by this Mortgage shall be impaired or threatened, or whereby the Premises shall become subject to any attachment, judgment, lien, charge or other encumbrance whatsoever, and Mortgagor shall immediately cause any such attachment, judgment, lien, charge or other encumbrance to be discharged or otherwise bonded or transferred to other security.

8.5    Mortgagor shall not directly or indirectly do anything or take any action which might prejudice any of the right, title or interest of Mortgagee in or to the Premises or impose or create any direct or indirect obligation or liability on the part of Mortgagee with respect to the Premises.

9.    <u>Prohibited Transfers.</u>

9.1    Mortgagor shall not cause or permit or suffer to occur any of the following events without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, and if any such event shall occur without such consent, then Mortgagee shall have the right to accelerate the maturity of the Loan and foreclose this Mortgage:

(a)    if all or any portion of the legal or equitable title to the Premises shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law;

(b)    if Mortgagor shall enter into any lease or other arrangement with any third party regarding the use or possession by such third party of all or any portion of the Premises (regardless of whether such lease or arrangement includes an option to purchase) to which Mortgagee has not consented in writing, subject to the provisions of Section 7 of this Mortgage, except for leases of all or a portion of the Property which are entered into in the normal and ordinary course of Mortgagor's business, and provided such leases generate income sufficient for Mortgagor to comply with the Debt Service Coverage Ratio in accordance with the provisions of the Note;

(c)    in the case of a corporate Mortgagor (or a partnership or trust or other business entity), if more than 20% of any stock or partnership interest or beneficial interest in Mortgagor shall be transferred, or if such percentage of stock or partnership interest or beneficial interest shall be assigned, pledged, hypothecated, mortgaged or otherwise encumbered, except for transfers made to the members of the immediate family of the existing stockholders for estate tax

10

planning purposes which do not result in a significant change in control of the existing management of the Mortgagor;

(d)    if any such corporate, partnership or trust Mortgagor shall be dissolved or terminated, by operation of law, involuntarily or voluntarily; or

(e)    if Mortgagor shall pay, repay or distribute any funds to any guarantor of the Loan or any other person directly or indirectly related to Mortgagor (such as a stockholder, partner or beneficiary), and such act results in Mortgagor having insufficient funds to pay the Note, except for payments of (i) salaries, bonuses or other types of compensation paid in the normal and ordinary course of business, (ii) debts, the existence which have been disclosed to Mortgagee prior to the date of this Mortgage, and (iii) dividends to Mortgagor's stockholders, if structured as an S-Corporation under Section 1362 Internal Revenue Code of 1986, as amended, and only for the purpose of paying personal income taxes and in an amount not to exceed the tax liability of the current tax year.

9.2    If Mortgagor does convey the Premises (subject to the provisions of this section), the grantee, its successors and assigns, shall be deemed to have assumed all obligations under the Note, this Mortgage and all other Loan Documents, but Mortgagor (and its successors and assigns from time to time) shall not be released from any of such obligations.

9.3    If at any time the Premises are conveyed subject to a purchase money mortgage, such mortgage and the note which it secures shall be and be deemed to be assigned to Mortgagee as additional collateral security for the Loan.

9.4    Notwithstanding anything to the contrary in this Section, all provisions requiring Mortgagee's prior consent to encumbrances and transfers, in this Section, Section 8 or otherwise, remain in full force and effect.

10.    Further Instruments.  Mortgagor shall execute and deliver to Mortgagee, from time to time and on demand, any further instruments and documents (and pay the costs of preparation and recording of them), including but not limited to mortgages, security agreements, financing statements, assignments and renewal and substitution notes, so as to reaffirm, to correct and to perfect the evidence of the obligations secured by this Mortgage and the security interest of Mortgagee in all the property intended to be mortgaged or secured by this Mortgage, whether now mortgaged or secured, later substituted for other collateral, or acquired subsequent to the date of this Mortgage.

11.    Estoppel Letters.  Upon request made either personally or by mail, Mortgagor shall certify, by a duly acknowledged writing, to Mortgagee or to any proposed assignee of this Mortgage, the amount of principal and interest and other sums then owing on the Loan and whether any offsets or defenses exist against the payment of the Loan.  Mortgagor shall provide such estoppel certificate within five (5) days in the case of a personal request and within ten (10) days after Mortgagor's receipt of a mailed request.

11

12.   Information. Mortgagor shall keep adequate books and records in accordance with sound accounting principles and shall permit Mortgagee, by its employees, agents, accountants and attorneys, to visit and inspect the Premises and to examine its books and records; Mortgagor shall discuss its affairs, finances and accounts with Mortgagee's officers at such reasonable times as are requested by Mortgagee.  Mortgagor shall promptly furnish to Mortgagee any financial or other information regarding Mortgagor or any guarantor or the Premises required by any Loan Document or which Mortgagee may reasonably request from time to time.  Unless waived by Mortgagee, such information shall include, but not be limited to, annual financial statements internally prepared by Mortgagor.  Mortgagor hereby covenants and agrees to (i) furnish, within ninety (90) days of the end of the Mortgagor's fiscal year, financial statements (balance sheet, income statement and cash flow statements), together with supporting schedules, showing the financial condition of the Mortgagor at the close of such year and the results of operations of the Mortgagor during such year, and (ii) cause each Guarantor of the Loan to furnish within ninety (90) days of the end of the calendar year, financial statements, together with supporting schedules, showing the financial condition of each Guarantor at the close of such year.  The Mortgagor further hereby covenants and agrees to (i) furnish state and federal income tax returns (or any extension relating thereto) within ninety (90) days of the filing thereof, and (ii) cause each Guarantor to furnish federal income tax returns (or any extension relating thereto) within ninety (90) days of the filing thereof.  The Mortgagee shall have full and complete access to the books and records of the Mortgagor during regular business hours as they pertain to the Premises.

13.   Notices. Whenever Mortgagor or Mortgagee are permitted or required to give notice to the other under this Mortgage, such notice shall be in writing and may be given personally by regular U.S. Mail or by prepaid certified mail, return receipt requested.  In the case of notice by certified mail, notice shall be deemed effectively made when the receipt is signed or when the attempted initial delivery is refused or cannot be made because of a change of address of which the sending party has not been notified.  Until the designated addresses are changed by notice given in accordance with this section, notice to either party hereunder shall be sent to their respective addresses set forth below:

| | |
|---|---|
| If to Mortgagee: | Colonial Bank, N.A.<br>1200 Brickell Avenue, 10th Floor<br>Miami, Florida 33131<br>Attn: Lina Mackl, Senior Vice President |
| With a copy to: | Ignacio B. Arango, P.A.<br>201 Alhambra Circle, Suite 500<br>Coral Gables, Florida 33134<br>Attn: Ignacio B. Arango, Esquire |
| If to Mortgagor: | 3900 Biscayne, LLC<br>2915 Biscayne Boulevard, Suite 200<br>Miami, Florida 33137<br>Attn: Nancy Karp, Member<br>       Deborah Flacks, Member |

12

14.    Default.  At Mortgagee's option, all of the principal and interest and other sums secured by this Mortgage shall immediately and at any subsequent time become due and payable without notice to Mortgagor, and Mortgagee shall immediately have all the rights accorded Mortgagee by law and equity and under this Mortgage or any other Loan Document to foreclose this Mortgage and otherwise to enforce this Mortgage, the Note and any other Loan Document, upon the occurrence of any of the following events of default ("Event(s) of Default"):

14.1    failure to pay any sum due under the Note and the expiration of the grace period (if any) provided in the Note for such payment; or

14.2    failure to repay any sum paid or advanced by Mortgagee under the terms of this Mortgage or any other Loan Document (with interest on such sum), as provided in Section 16; or

14.3    failure to pay any tax, assessment, utility charge, or other charge against the Premises as and when required by this Mortgage; or

14.4    actual waste, impairment, abandonment, deterioration, removal, demolition, material alteration or enlargement of any building or other improvement on the Property, or the commencement of construction of any new building or other improvements on any part of the Property, in either case without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion; or

14.5    failure to obtain, assign, deliver or keep in force the policies of insurance required by this Mortgage or any other Loan Document; or

14.6    Mortgagor's failure or refusal to certify, within the time required by this Mortgage, the amount due under the Loan and whether any offsets or defenses exist against payment of the Loan; or

14.7    Mortgagor's filing for record, without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, of any notice limiting the maximum principal amount that may be secured by this Mortgage to an amount less than the limit set forth in the Future Advance clause in Section 36 of this Mortgage; or

14.8    any sale, conveyance, transfer (whether voluntary, involuntary or by operation of law), pledge, hypothecation or further encumbrancing of the Premises, or the additional assignment of all or any part of the rents, income or profits arising from the Premises, in either case without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion; or

14.9    Mortgagor's failure to remove any involuntary lien on the Premises within twenty (20) days after its filing, or failure to have dismissed within thirty (30) days after Mortgagor

13

is served with process in any suit filed against or involving the Premises based upon any claim or lien other than this Mortgage (whether superior or inferior to this Mortgage); or

14.10  Mortgagor's failure to comply, within thirty (30) days, with a requirement, order or notice of violation of a law, ordinance, or regulation issued or promulgated by any political subdivision or governmental department claiming jurisdiction over the Premises or any operation conducted on the Property (or, if such order or notice provides a time period for compliance, Mortgagor's failure to comply within such period), or, in the case of a curable noncompliance requiring longer than the applicable time period for its cure, Mortgagor's failure to commence to comply with said order or notice within said period or failure thereafter to pursue such cure diligently to completion; or

14.11  the issuance of any order by the State of Florida, or any subdivision, instrumentality, administrative board or department of the State or any of its subdivisions, declaring unlawful or suspending any operation conducted on the Premises; or

14.12  the filing by the United States of America or any instrumentality of it in any court of competent jurisdiction of any notice of intention to acquire under the power of eminent domain any estate less than an estate in fee simple in the entire Property, or the recording by the State of Florida, any instrumentality thereof or any other person with eminent domain powers, of a notice of taking of any estate less than an estate in fee simple in the entire Property; or

14.13  any representation, warranty, affidavit, certificate or statement made or delivered to Mortgagee by or on behalf of Mortgagor any guarantor of the Loan from time to time in connection with the Loan or this Mortgage or any other Loan Document proving to be false, incorrect or misleading in any respect deemed material by Mortgagee; or

14.14  the dissolution, merger, consolidation, or termination of existence (as applicable) of Mortgagor, or the death of any guarantor of the Loan, which materially, adversely affects the Mortgagor's or guarantor's collective ability to pay or perform this Mortgage, or the failure or cessation or liquidation of their respective businesses, or if the person(s) controlling any of them which is a business entity shall take any action authorizing or leading to the same; or

14.15  any material default by Mortgagor or any guarantor of the Loan in the payment of any material indebtedness for borrowed money (whether direct or contingent and whether matured or accelerated) to Mortgagee or to any person whomsoever, or if Mortgagor or any guarantor of the Loan shall become insolvent or unable to pay their respective debts as the same become due.  Notwithstanding anything to the contrary in this Section 14.15, in the event of a material default by Mortgagor or any guarantor of the Loan in the payment of any material indebtedness for borrowed money (whether direct or contingent and whether matured or accelerated) to any person whomsoever, such failure to pay shall not be deemed an Event of Default under this Mortgage as long as payments due under the Note and this Mortgage are being timely made; or

14.16  any declaration by Mortgagor or any guarantor of the Loan of an intention not to perform any of their respective obligations as and when the same become due; or

14

14.17   the disposition or transfer or exchange of all or substantially all of the assets of Mortgagor or any guarantor of the Loan for less than fair market value, or the issuance of any levy, attachment, charging order, garnishment or other process against any of their respective property, or the filing of any lien against any such property (and the expiration of any grace period, if any, provided in any Loan Document for the discharge of such lien); or

14.18   Mortgagor's or any Loan guarantor's making an assignment for the benefit of creditors, filing a petition in bankruptcy, applying to or petitioning any tribunal for the appointment of a custodian, receiver, intervenor or trustee for any of them or a substantial part of their respective assets, or the commencement by any of them of any proceeding under any bankruptcy, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether nor or at any future time in effect, or the approval, consent or acquiescence by any of them, of, to or in the filing of any such petition or application against any of them or the appointment of any such custodian, receiver, intervenor or trustee or the commencement of any such proceeding against any of them or the entry of an order for relief with respect to any of them, or the entry of any such petition or application or commencement of any such proceeding against any of them which remains undismissed for thirty (30) days or more or in which an order for relief is entered, or the sufferance by any of them of any such appointment of a custodian, receiver, intervenor or trustee which shall continue undischarged for thirty (30) days or more; or

14.19   Mortgagor's or any Loan guarantor's having concealed, transferred, removed, or permitted to be concealed or transferred or removed, any part of its respective property with intent to hinder, delay or defraud any of their respective creditors, or any of them having made or suffered a transfer of any of their respective properties which may be invalid under any bankruptcy, fraudulent conveyance, preference or similar law, or any of them having made any transfer of their respective properties to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or

14.20   the failure to obtain any permit, license, approval or consent from, or to make any filing with, any governmental authority (or the lapse or revocation or rescission of such permit, license, approval, consent or filing, once obtained or made) which is necessary in connection with the business of Mortgagee, the Loan, any Loan Document or the enforcement of them, or if it shall become unlawful for Mortgagee to make or maintain the Loan or for Mortgagor or any guarantor to perform any of their respective obligations under any Loan Document; or

14.21   the existence of any uncured default under any other mortgage or encumbrance affecting the Premises then encumbered by this Mortgage (in the case of a default for which such mortgage or other encumbrance provides a grace period, if the default remains uncured after the expiration of that grace period), or Mortgagor's acceptance of any future advance under, or modification of the terms of, any such other mortgage or encumbrance which may then be superior to the lien of this Mortgage; or

15

14.22  Mortgagee's election to accelerate the maturity of the Loan under the provisions of any other Loan Document; or

14.23  *Intentionally Deleted*; or

14.24  any default in the observance or performance of any provision, breach of or covenant or agreement of Mortgagor in this Mortgage or any other Loan Document, the occurrence of any other event prohibited by the terms of this Mortgage or any other Loan Document, or the violation of any other provision of this Mortgage or any other Loan Document which default, breach or occurrence is not cured within twenty (20) days after Mortgagor is notified thereof by Mortgagee.

15.  No Waiver.  No consent or waiver expressed or implied by Mortgagee with respect to any default by Mortgagor under this Mortgage or a default by Mortgagor under the Note shall be construed as a consent or waiver with respect to any further default of the same or a different nature; no consent or waiver shall be deemed or construed to exist by reason of any curative action initiated by Mortgagee or any other course of conduct or in any other manner whatsoever except by a writing duly executed by Mortgagee, and then only for the single occasion to which such writing is addressed.  In order to accelerate the maturity of the Loan because of Mortgagor's failure to pay any tax, assessment, premium, charge, liability, obligation or encumbrance upon the Premises as required by this Mortgage, or in order to accelerate because of any other default by Mortgagor, Mortgagee shall not be required to pay, nor to advance funds to cure, the default, notwithstanding Mortgagee's option under this Mortgage or any other Loan Document to do so; no such payment or advance by Mortgagee shall be deemed or construed to be a waiver of Mortgagee's right to accelerate the maturity of the Loan on account of such failure or other default.

16.  Advances.

16.1  In the event of any default in the performance of any of Mortgagor's covenants or agreements contained in this Mortgage, of Mortgagor's covenants contained in the Note or any other Loan Document or the violation of any term of them, Mortgagee shall have the right (but in no event the obligation), at its option, to cure the default or take any other action Mortgagee deems necessary or desirable to protect its security (including, without limitation, the payment of any taxes, assessments, premiums, charges, liens or encumbrances required of Mortgagor under this Mortgage) without waiving any rights or remedies otherwise available to Mortgagee.  If Mortgagee shall elect to advance at any time any sum(s) for the protection of its security or for any other reason permitted or provided by any of the terms of this Mortgage or any other Loan Document, then such sum(s) shall be deemed Loan funds, shall be secured by this Mortgage and shall bear interest until paid as the "Default Rate" provided in the Note commencing on the date(s) they are advanced by Mortgagee.  If advanced by Mortgagee before the natural or accelerated maturity date of the Loan, such sum(s) shall be due and payable by Mortgagor on such maturity date or ten (10) days following Mortgagor's receipt of demand for them, whichever is earlier, but if advanced after the natural or accelerated maturity date, such sum(s) shall be due and payable immediately without demand.  Mortgagee's lien on the Premises for such advances shall be superior to any right or title to, interest in, or claim upon all or any portion of the Premises junior to the lien of this Mortgage.

16

16.2    Without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, Mortgagor shall not file for record any notice limiting the maximum principal amount that may be secured by this Mortgage to an amount less than the limit set forth in the Future Advance Clause in Section 36 of this Mortgage.

17.    Receiver.  In any action to foreclose this Mortgage, or upon the actual waste to the Premises, Mortgagee shall have the right to apply for the appointment of a receiver of the Premises and the rents and profits of the Premises, and Mortgagee shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value or occupancy of the Premises as security for the amounts due Mortgagee or the solvency or insolvency of the Mortgagor or any person liable for the payment of such amounts.  To the extent permitted by law, Mortgagor waives any right to object to the appointment of a receiver and expressly consents that such appointment shall be made as an admitted equity and as a matter of absolute right to Mortgagee.  The expenses, including receiver's fees, counsel's fees, costs and agent's compensation incurred pursuant to the powers herein contained shall be secured by this Mortgage.

18.    Remedies.  The rights of Mortgagee arising under this Mortgage, under the Note or under any other Loan Document, and the rights allowed or permitted Mortgagee by law or equity, shall be separate, distinct and cumulative, and the selection of one remedy shall not preclude the selection of another or other remedies until Mortgagee shall have recovered all sums due Mortgagee, together with the appropriate interest on those sums and all costs of collection, including reasonable attorneys' (including paralegals' and similar persons') and accountants' fees, costs and disbursements and all court costs, including those for trial, appellate and bankruptcy proceedings, with interest on them.  In case of any foreclosure sale, the Premises may be sold in one parcel and as an entirety or in such parcels, manner or order as Mortgagee in its sole discretion, may elect, and Mortgagor waives any and all rights to have any of the collateral for the Loan marshalled for the payment of any particular indebtedness.

19.    Fees and Expenses.  Mortgagor shall pay any and all costs, expenses and reasonable attorneys' and accountants' fees incurred by Mortgagee, whether or not in connection with any action, bankruptcy, proceeding or appeal, to sustain the lien of this Mortgage or its priority, to protect or enforce any of Mortgagee's rights under this Mortgage, the Note or under any other Loan Document, whether or not a suit is filed, to recover any indebtedness secured by this Mortgage, to contest or collect any award or payment in connection with the taking or condemnation of the Premises or with any insurance policy related to the Premises, or for any title examination or abstract preparation or title insurance policy relating to the Property, and all such sums shall be evidenced, shall bear interest, shall be paid and shall be secured as provided in Section 16.

20.    Public Takings.  Notwithstanding any taking by eminent domain, any alteration of the grade of any street, or any other injury to or decrease in value of, the Premises caused by any public or quasi-public authority or person, Mortgagor shall continue to pay principal and interest on the Loan and all other sum(s) secured by this Mortgage until Mortgagee shall have actually received the award or payment for such taking or alteration or injury and shall have applied the same against the Loan.  Mortgagee, at its option, may retain any such award or payment and apply all or part of it toward payment of the Loan (in any order of priority Mortgagee may deem appropriate in its sole

17

discretion), or Mortgagee may disburse all or part of such award or payment to Mortgagor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking or alteration or injury, or for any other purpose or object satisfactory to Mortgagee in its sole discretion. If, prior to receipt by Mortgagee of any such award or payment, the Premises shall have been sold upon foreclosure of this Mortgage, Mortgagee shall continue to have the right to receive such award or payment to the extent the sums due Mortgagee under the Note, this Mortgage, and any other Loan Document remain unsatisfied after such sale of the Premises, together with interest on such sums, whether or not a deficiency judgment for such unsatisfied sums shall have been sought or obtained or denied, and together with reasonable attorneys' (including paralegals' and similar persons') and accountants' fees, costs and disbursements and all court costs, including those for trial, appellate and bankruptcy proceedings, incurred by Mortgagee in connection with the collection of such award or payment.

21.    Documentary Stamps and Intangible Taxes.  If at any time the State of Florida shall determine that the intangible tax paid in connection with this Mortgage is insufficient or that the documentary stamps affixed to this Mortgage are insufficient, and that additional intangible tax should be paid or that additional stamps should be affixed, Mortgagor shall pay for such stamps and taxes, together with any interest or penalties imposed in connection with such determination, and Mortgagor indemnifies and holds Mortgagee harmless from such obligations. If any such sums shall be advanced by Mortgagee, they shall be evidenced, shall bear interest, shall be paid and shall be secured as provided in Section 16.

22.    Additional Taxes.  In the event of the passage after the date of this Mortgage of any federal, state or local law (a) deducting from the value of real property the balances of any liens(s) on it for the purposes of ad valorem taxation, or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for federal, state or local purposes, or changing the manner of the collection of any such taxes, and (b) imposing either directly or indirectly a new or additional tax on this Mortgage, the Note, any other Loan Document, or the holder of them, then Mortgagee shall have the right to declare the Loan due on a date to be specified by Mortgagee which shall not be less than thirty (30) days after notice to Mortgagor; provided, however, that such election shall be ineffective if Mortgagor is permitted by law to pay the whole of such tax (without such payment being deemed to be interest or a payment in the nature of interest) in addition to all other payments required under this Mortgage and if Mortgagor, prior to such specified date, does pay such tax and agrees to pay any such tax when subsequently levied or assessed, in which case such agreement shall constitute a modification of this Mortgage.

23.    Uniform Commercial Code.

23.1    This Mortgage is a security agreement (as defined in the Florida Uniform Commercial Code), and a carbon, photographic, or other reproduction of either this Mortgage or a financing statement shall be sufficient as a financing statement under the Florida Uniform Commercial Code.

18

23.2  The remedies for any violation of the covenants, terms and conditions contained in this Mortgage shall be as prescribed (a) in this Mortgage and any other Loan Document, (b) by general law or (c) as to any items included in the definition of the Premises that may also be listed in any filed financing statement, by the specific statutory provisions now or hereafter enacted and specified in the Florida Uniform Commercial Code, all at Mortgagee's sole election.

23.3  Mortgagor and Mortgagee agree that the mention in any such financing statement of (a) the rights in or the proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) Mortgagor's interest as lessor in any present or future lease or right to income growing out of the use or occupancy of the Property or improvements to it, whether pursuant to lease or otherwise, or (d) any other item included in the definition of the Premises, shall never be construed to alter any of the rights of Mortgagee as determined by this Mortgage or to impugn the priority of the interests of Mortgagee granted in this Mortgage or by any other recorded instrument; such mention in a financing statement is declared to be for the protection of Mortgagee in the event any court shall hold with respect to this Section 23.3 that notice of Mortgagee's priority of interest, to be effective against a particular class of persons, including but not limited to, the federal government and any subdivision or entity of the federal government, must be filed in the Uniform Commercial Code records.

23.4  Mortgagor and Mortgagee agree that the filing of such a financing statement in the records normally pertaining to personal property shall never derogate from or impair in any way their declared intention that everything used in connection with the production of income from the Premises or described or reflected in this Mortgage is and at all times, for all purposes and in all proceedings, both legal and equitable, shall be regarded as part of the real estate to the fullest extent permitted by law, irrespective of whether (a) any such item is physically attached to the improvements, (b) serial numbers are used, for the better identification of certain items of Equipment capable of being so identified, in a recital contained in this Mortgage, in any other Loan Document, or in a list filed with Mortgagee, or (c) any such item is referred to or reflected in any such financing statement so filed at any time.

24.  **Payments to Mortgagee.**  Any payment made in accordance with the terms of the Note or this Mortgage by any person at any time liable for the payment of the whole or any part of the sums now or at any time in the future secured by this Mortgage, by any subsequent owner of the Premises, by any other person whose interest in the Premises might be prejudiced in the event of a failure to make such payment, or by any partner, stockholder, officer or director of any person which at any time may be liable for such payment or may own or have such an interest in the Premises, shall be deemed, as between Mortgagee and all such persons who at any time may be so liable or may have an interest in the Premises, to have been made on behalf of all such persons. Mortgagee's acceptance of any payment which is less than full payment of all amounts then due and payable to Mortgagee, regardless from whom received, shall not constitute a waiver of Mortgagee's right to exercise its option to accelerate the maturity of the Loan or to exercise any other rights or remedies of Mortgagee.

19

25.    <u>Consent to Changes</u>. Mortgagor consents and agrees that, at any time and from time to time without notice, Mortgagee or the holder(s) of the Note and the owner(s) of any collateral then securing the Loan or obligor(s) under the Note may agree to renew, extend, compromise, discharge or release the Loan in whole or in part, and/or to release, increase, change, substitute or exchange all or any part of such collateral, and/or to modify the terms of the Loan in any other way that Mortgagee and such holder(s), owner(s) and obligor(s) may deem appropriate. Mortgagor agrees that no such renewal, extension, compromise, discharge, release, increase, change, substitution, exchange or modification, no sale of the Premises, no forbearance on the part of Mortgagee, nor any other indulgence given by Mortgagee or any other holder(s) of the Note (whether with or without consideration) shall relieve or affect in any manner the original liability of Mortgagor or any guarantor of the Loan, nor adversely affect the priority of this Mortgage, nor limit or prejudice or impair any right or remedy of Mortgagee. Mortgagor and all guarantors of the Loan and all those claiming by, through or under any of them, jointly and severally, waive any and all right to prior notice of, and any and all defenses or claims based upon any such renewal, extension, compromise, discharge, release, increase, change, substitution, exchange, modification, sale, forbearance or indulgence.

26.    <u>Governing Law and Severability</u>. This Mortgage shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, excepting only that federal law shall govern to the extent it may permit Mortgagee to charge, from time to time, interest on the Loan at a rate higher than may be permissible under applicable Florida law. Mortgagor and Mortgagee intend that all of the provisions of this Mortgage shall be valid and enforceable as specifically set forth. Any provision of this Mortgage which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provision of this Mortgage or affecting the validity or enforceability of such provision in any other jurisdiction. Any judicial determination that any provision of this Mortgage is not valid or enforceable as specifically set forth shall not result in such provision being declared invalid, but the same shall be deemed modified in such a manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. As to any portion of this Mortgage that is actually determined by a court of competent jurisdiction to be invalid, Mortgagor and Mortgagee intend that the remainder of the document (or, if applicable, clause, paragraph, section or article) shall be enforced as written, and the declaration of invalidity shall apply only to the clause, paragraph, section or article in question. The terms of this Section shall control any contrary provisions in the Note or this Mortgage, notwithstanding anything in the Note or in this Mortgage to the contrary.

27.    <u>No Usury</u>. In no event shall any agreed to or actual exaction charged, reserved or taken as an advance or forbearance by Mortgagee as consideration for the Loan exceed the limits (if any) imposed or provided by the law applicable from time to time to the Loan for the use or detention of money or for forbearance in seeking its collection; Mortgagee waives any right to demand any such excess. In the event that the interest provisions of the Note or any exactions provided for in the Note, this Mortgage or any other Loan Document shall result at any time or for any reason in an effective rate of interest that exceeds the maximum interest rate permitted by

20

applicable law (if any), then, without further agreement or notice, the obligation to be fulfilled shall automatically be reduced to such limit and all sums received by Mortgagee in excess of those lawfully collectible as interest shall be applied against the principal of the Loan immediately upon Mortgagee's receipt of the sums, with the same force and effect as though the payor had specifically designated such extra sums to be so applied to principal and Mortgagee had agreed to accept such extra payment(s) as a premium-free prepayment or prepayments.

28.    Inspection and Watchmen.  Mortgagee and any persons authorized by Mortgagee shall have the right, from time to time at the discretion of Mortgagee, to enter and inspect the Premises.  At any time after default by Mortgagor under the terms of the Note, or default by Mortgagor under this Mortgage or any other Loan Document, if any, of the buildings, improvements or Equipment now or at any time in the future located on or in the Property, shall be unprotected or unguarded, or if any improved portion of the Property shall be allowed to remain vacant or deserted, then, at its option, Mortgagee may employ watchmen for the Property and expend any monies deemed necessary by Mortgagee to protect the Property and the buildings, improvements and Equipment on the Property from waste, vandalism and other hazards, depredation or injury, and any sums expended by Mortgagee for such purpose shall bear interest, shall be paid and shall be secured as provided in Section 16.

29.    Professional Management.  Mortgagor agrees that the management of the Premises shall be conducted at all times by Mortgagor or by such other professional property management organization as Mortgagee may grant or withhold in its sole discretion.  At any time after default by Mortgagor under the Note or this Mortgage or any other Loan Document, if Mortgagee shall determine in its sole discretion that the management or maintenance of the Premises is unsatisfactory, then Mortgagor shall employ as managing agent of the Premises such person(s) as Mortgagee may designate from time to time, as Mortgagor's sole expense and for the duration of the default.  Any sums advanced by Mortgagee in connection with such managing agent shall bear interest, shall be paid and shall be secured as provided in Section 16.

30.    Abstracts.  Mortgagee may, in its sole discretion, require that Mortgagor deliver to Mortgagee or its designated agent the abstract or abstracts of title now owned or subsequently acquired by Mortgagee covering the Property as further security for the Loan and the performance of Mortgagor's obligations to Mortgagee, which abstract(s) shall remain in the possession of Mortgagee or its agent at all times until all sums secured by this Mortgage are paid in full.  In the event of a foreclosure of this Mortgage or other transfer of title to the Premises, all right, title and interest of Mortgagor in and to such abstract(s) of title shall pass to the foreclosure purchaser or other transferee.

31.    Indemnity.  In the event Mortgagee shall be named as a party to any lawsuit brought at any time against Mortgagor with respect to, arising from or growing out of the Premises or this Mortgage or the Loan, then regardless of the merits of such lawsuit Mortgagor shall, at Mortgagee's option, defend Mortgagee, and Mortgagor shall indemnify and hold Mortgagee fully harmless from any and all claims, demands, damages, liabilities, judgments, losses, costs, expenses and reasonable

21

attorneys' fees arising from, growing out of or related to any such lawsuit or any appeal or bankruptcy in connection with it.

32. <u>Subrogation</u>. Mortgagee is hereby subrogated (a) to the lien(s) of each and every mortgage, lien or other encumbrance on the Premises which is fully or partially paid or satisfied out of the proceeds of the Loan, and (b) to the rights of the owner(s) and holder(s) of any such mortgage, lien or other encumbrance. The respective rights under and priorities of all such mortgages, liens or other encumbrances shall be preserved and shall pass to and be held by Mortgagee as security for the Loan, to the same extent as if they had been duly assigned by separate instrument of assignment and notwithstanding that the same may have been cancelled and satisfied of record.

33. <u>Representations and Warranties</u>. In order to induce Mortgagee to make the Loan, Mortgagor represents and warrants that:

33.1    except as previously or concurrently disclosed in writing to Mortgagee, the Mortgage is a first mortgage on the Property, that, to the best of Mortgagor's knowledge, there are no actions, suits or proceedings pending or threatened against or affecting Mortgagor or any portion of the Property, or involving the validity or enforceability of this Mortgage or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority, and Mortgagor is not in default under any other indebtedness or with respect to any order, writ, injunction, decree, judgment or demand of any court or any governmental authority;

33.2    the execution and delivery of the Note, this Mortgage and all other Loan Documents do not and shall not (a) violate any provisions of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to Mortgagor or any other person executing the Note, this Mortgage or other Loan Documents, nor (b) result in a breach of, or constitute a default under, any indenture, bond, mortgage, lease, instrument, credit agreement, undertaking, contract or other agreement to which Mortgagor or such other person is a party or by which either or both of them or their respective properties may be bound or affected;

33.3    the Note, this Mortgage and all other Loan Documents constitute valid and binding obligations of Mortgagor and any other person executing the same, enforceable against Mortgagor and such other person(s) in accordance with their respective terms;

33.4    all financial statements of Mortgagor and any guarantor(s) of the Loan delivered to or required by Mortgagee, to the best of Mortgagor's knowledge, have been prepared in accordance with sound accounting principles consistently applied and fairly present the correct respective financial conditions of Mortgagor and any such guarantor(s) as of their respective dates, and the foregoing shall be true with respect to all financial statements delivered to or required by Mortgagee in the future;

22

33.5   there is no fact that Mortgagor and any guarantor(s) of the Loan have not disclosed to Mortgagee in writing that could materially adversely affect their respective properties, businesses or financial conditions or the Premises or any other collateral for the Loan; and

33.6   Mortgagor and any guarantor(s) of the Loan have, to the best of Mortgagor's knowledge, duly obtained all permits, licenses, approvals and consents from, and made all filings with, any governmental authority (and the same have not lapsed nor been rescinded or revoked) which are necessary in connection with the execution and delivery of this Mortgage and any other Loan Document, the making of the Loan, the performance of their respective obligations under any Loan Document, or the enforcement of any Loan Document.

34.   <u>Business Entity</u>. If Mortgagor is a corporation, limited liability company, partnership or other business entity, then, in order to induce Mortgagee to make the Loan, Mortgagor represents and warrants that:

34.1   Mortgagor is duly organized, validly existing and in good standing under the laws of the jurisdiction of its creation and the State of Florida;

34.2   Mortgagor has all requisite power and authority (corporate or otherwise) to conduct its business, to own its properties, to execute and deliver the Note and this Mortgage and all other Loan Documents, and to perform its obligations under them;

34.3   the execution, delivery and performance of the Note, this Mortgage and all other Loan Documents have been duly authorized by all necessary actions (corporate or otherwise) and do not require the consent or approval of Mortgagor's stockholders (if a corporation), members (if a limited liability company) or of any other person or entity whose consent has not been obtained; and

34.4   the execution, delivery and performance of the Note, this Mortgage and all other Loan Documents do not and shall not conflict with any provision of Mortgagor's bylaws or articles of incorporation (if a corporation), articles or organization (if a limited liability company), partnership agreement (if a partnership) or trust agreement or other document pursuant to which Mortgagor was created and exists, nor with any existing rule, regulation or order of any court or governmental body.

35.   <u>Interpretation</u>.

35.1   Whenever the context of any provision of this Mortgage shall so require, words in the singular shall include the plural, words in the plural shall include the singular, and pronouns of any gender shall include the other genders.

35.2   Captions and headings in this Mortgage are for convenience only and shall not affect its interpretation.

23

35.3    All references in this Mortgage to exhibits, schedules, paragraphs, subparagraphs and sections refer to the respective subdivisions of this Mortgage, unless the reference expressly identifies another document.

35.4    Wherever used in this Mortgage, unless the context clearly indicates a contrary intention or unless this Mortgage specifically provides otherwise, the term:

(a)    "Mortgagor" shall mean "Mortgagor or any subsequent owner or owners of the Premises";

(b)    "Mortgagee" shall mean "Mortgagee or any subsequent holder(s) of this Mortgage";

(c)    "Note" shall mean "the Note, and all renewals, extensions, modifications, replacements and consolidations thereof, and all future or additional notes hereafter to be issued and secured by this Mortgage pursuant to the future advance provision of this Mortgage;

(d)    "Loan" shall mean "the Loan and all extensions, modifications, replacements and consolidations thereof, and all future or additional advances made by Mortgagee from time to time for any reason permitted or provided by the terms of this Mortgage or any other Loan Document"; and

(e)    "Person" shall mean "an individual, corporation, limited liability company, partnership, limited partnership, unincorporated association, joint stock corporation, joint venture or other legal entity".

36.    Future Advance.  Mortgagee may in Mortgagee's sole discretion, from time to time within twenty (20) years from the date of this Mortgage or within such lesser period of time as may in the future be provided by law as a prerequisite for the sufficiency of actual or record notice of optional future or additional advances as against the rights of creditors or subsequent purchasers for valuable considerations, make further advances to Mortgagor, or Mortgagor's permitted successors in title, which shall be secured by the lien of this Mortgage, provided that at no time shall the outstanding principal indebtedness secured by this Mortgage, including advances, exceed a sum which is two (2) times the principal amount of the Loan as shown on page one of this Mortgage, plus interest and any disbursements made for the payment of taxes, levies or insurance or other matters on the Premises with interest on those disbursements.  Mortgagor shall, immediately upon request of Mortgagee, execute and deliver to Mortgagee a note evidencing each and every such future advance and notices of such advances in recordable form.  All such notes shall be of equal dignity and a default in the payment of any one note shall constitute a default in the payment of all other notes.

24

37.    Environmental Laws.    Mortgagor represents and warrants to Mortgagee that Mortgagor has undertaken an appropriate inquiry into the previous ownership and uses of the Premises consistent with good commercial or customary practice in an effort to minimize liability with respect to any substances defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials", "toxic substances", "contaminants" or other pollution under any applicable federal, state or local laws, ordinances, rules or regulations now or hereafter in effect ("Hazardous Materials"). To the best of Mortgagor's knowledge and except as otherwise disclosed to Mortgagee in writing, Mortgagor represents and warrants that the Premises is presently free from contamination by Hazardous Materials and that the Premises and the activities conducted thereon do not pose any significant hazard to human health or the environment or violate any applicable federal state or locals laws, ordinances, rules or regulations pertaining to Hazardous Materials or industrial hygiene or environmental conditions ("Environmental Laws"). Mortgagor shall not cause or permit the Premises to be used for the generation, handling, storage, transportation, disposal or release of any Hazardous Materials except as exempted or permitted under applicable Environmental Laws, and Mortgagor shall not cause or permit the Premises or any activities conducted thereon to be in violation of any applicable Environmental Laws. Mortgagor agrees to indemnify Mortgagee and hold Mortgagee and its directors, officers, employees, successors and assigns harmless from and against any and all claims, losses, damages (including all foreseeable and unforeseeable consequential damages), liabilities, fines, penalties, charges, interest, administrative or judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including without limitation, reasonable attorneys' fees and expenses), directly or indirectly resulting in whole or in part from the violation of any Environmental Laws applicable to the Premises or any activity conducted thereon, or from any past, present or future use, generation, handling, storage, transportation, disposal or release of Hazardous Materials at or in connection with the Premises, or any decontamination, detoxification, closure, cleanup or other remedial measures required with respect to the Premises under any Environmental Laws. All sums paid and costs incurred by Mortgagee with respect to the foregoing matters shall bear interest, shall be paid and shall be secured as provided in Section 16. This indemnity shall survive the full payment and performance of the Obligations and the satisfaction of this Mortgage, and it shall inure to the benefit of any transferee of title to the Premises through foreclosure of this Mortgage or through deed in lieu of foreclosure.

38.    Miscellaneous.

38.1    Time is of the essence as to all provisions of this Mortgage.

38.2    Mortgagor waives all right of homestead exemption (if any) in the Premises.

38.3    If Mortgagor consists of more than one person, the obligations and liabilities of each such person under this Mortgage shall be joint and several, and wherever the term "Mortgagor" is used it shall be deemed to refer to such persons jointly and severally.

25

38.4    If Mortgagor is a partnership, then all general partners in Mortgagor shall be liable jointly and severally for the covenants, agreement, undertakings and obligations of Mortgagor in connection with the Loan, notwithstanding any contrary provision of the partnership laws of the State of Florida.

38.5    This Mortgage shall be binding upon and inure to the benefit of the parties to this Mortgage and their respective heirs, personal representatives, successors and assigns, either voluntarily or by operation of law.

38.6    This Mortgage may be executed in any number of counterparts, each of which shall be deemed in original, but all of which, together, shall constitute but one instrument.

38.7    This Mortgage cannot be changed except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

38.8    The Note secured by this Mortgage and all sums due thereunder may be prepaid in whole or in part at any time without premium or penalty.

39.    WAIVER OF JURY TRIAL.    MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE PARTIES.    MORTGAGOR FURTHER HEREBY COVENANTS AND AGREES NOT TO BRING ANY ACTION THAT WOULD CONSTITUTE THE SUBJECT OF A NON-COMPULSORY COUNTERCLAIM UNDER APPLICABLE LAW OR RULES OF CIVIL PROCEDURE IN ANY ACTION, SUIT OR PROCEEDING INVOLVING THIS MORTGAGE OR ANY OF THE LOAN DOCUMENTS. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THE LOAN TRANSACTION CONTEMPLATED HEREBY.

40.    No Fiduciary Relationship. The relationship between Mortgagee, Mortgagor and any guarantor of the Loan is solely that of lender and borrower and/or mortgagor or guarantor. Mortgagee has no fiduciary or other special relationship with or duty to the Mortgagor or any guarantor of the Loan and none is created hereby or may be inferred from any course of dealing or act or omission of the Mortgagee.

41.    Radon Gas. The following notice is given pursuant to Section 404.056 of the Florida Statutes: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who were exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

26

42.   Exemption from Truth in Lending and Fair Debt Collection Practices Acts.   The Mortgagor understands and agrees that the extension of credit by the Mortgagee to the Mortgagor represented by the Loan is exempt from the provisions of the Federal Consumers Credit Protection Act ("Truth in Lending Act") and Regulation "Z" of the Board of Governors of the Federal Reserve System of the United States of America, and the Fair Debt Collection Practices Act because the Mortgagor is a person fully excluded therefrom and/or because the Loan is only for business or commercial purposes of the Mortgagor, and the Mortgagor acknowledges that the proceeds of the Loan are not being used for personal, family, household or agricultural purposes.

IN WITNESS WHEREOF, this Mortgage is executed as of the date first written above.

Signed, sealed and delivered
in the presence of:

MORTGAGOR:

3900 BISCAYNE, LLC, a Florida limited liability company,

Sign & Print Name: STEVEN E. GOLDMAN

Sign & Print Name: DAWN T. ROSARIO

By:
Deborah Flacks, Member

Sign & Print Name: STEVEN E. GOLDMAN

Sign & Print Name: DAWN T. ROSARIO

By:
Nancy Karp, Member

(This space intentionally left blank)

27

STATE OF FLORIDA            )
                           )SS:
COUNTY OF MIAMI-DADE       )

I HEREBY CERTIFY, that the foregoing instrument was acknowledged before me this _28_ day of July, 2007, by Nancy Karp, Member of 3900 BISCAYNE, LLC, a Florida limited liability company. She [X] is personally known to me or [ ] has produced a Florida driver's license issued by the Florida Department of Highway Safety and Motor Vehicles or _____ [insert other identification if applicable] as identification.

Sign & Print Name: _DAWN T. ROSARIO_
NOTARY PUBLIC, State of Florida at Large
Serial No:
My Commission Expires:

DAWN T. ROSARIO
Notary Public - State of Florida
My Commission Expires Jun 21, 2010
Commission # DD 658798
Bonded By National Notary Assn.

STATE OF FLORIDA            )
                           )SS:
COUNTY OF MIAMI-DADE       )

I HEREBY CERTIFY, that the foregoing instrument was acknowledged before me this _28_ day of July, 2007, by Deborah Flacks, Member of 3900 BISCAYNE, LLC, a Florida limited liability company. She [X] is personally known to me or [ ] has produced a Florida driver's license issued by the Florida Department of Highway Safety and Motor Vehicles or _____ [insert other identification if applicable] as identification.

Sign & Print Name: _DAWN T. ROSARIO_
NOTARY PUBLIC, State of Florida at Large
Serial No:
My Commission Expires

DAWN T. ROSARIO
Notary Public - State of Florida
My Commission Expires Jun 21, 2010
Commission # DD 658798
Bonded By National Notary Assn.

28

OF BK 25751 PG 4501
LAST PAGE

EXHIBIT "A"

Legal Description

Tract A, of WLBW-TV STUDIO SITE, according to
the Plat thereof, as recorded in Plat Book 80, at Page
44, of the Public Records of Miami-Dade County,
Florida.

F:\IBA\PA\10006\7019\MISC Mortg Sec Agt 4 IBA.wpd

29

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE
# FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Ignacio E. Arango, Esquire (305)774-9333

**B. SEND ACKNOWLEDGEMENT TO:**
Name  IGNACIO E. ARANGO, P.A.

Address  201 Alhambra Circle

Address  Suite 500

City/State/Zip  Coral Gables, FL 33134

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

**2007 Jul 18 AM 12:00**

****** 200706064133 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3900 BISCAYNE, LLC, a Florida limited liability company | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2915 Biscayne Boulevard, Suite 200 | Miami | FL | 33137 | USA |
| 1d. TAX ID# 20-8245787 | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Limited Liability Company | 1f. JURISDICTION OF ORGANIZATION Florida | 1g. ORGANIZATIONAL ID# L-06000122618 ☐NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID# ☐NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| COLONIAL BANK, N.A.,  a national banking association | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1200 Brickell Avenue, 10th Floor | Miami | FL | 33131 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

SEE ATTACHED RIDER ALONG WITH EXHIBIT "A"

**5. ALTERNATE DESIGNATION (if applicable)**

| | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR |
|---|---|---|---|
| | AG. LIEN | NON-UCC FILING | SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.12/2001)          Filing Office Copy          Approved by the Secretary of State, State of Florida

## RIDER TO FINANCING STATEMENT

This Financing Statement covers the following types and items of property (the "Mortgaged Property"):

All property rights of any kind whatsoever, whether real, personal, mixed or otherwise, and whether tangible or intangible, described in that certain Mortgage and Security Agreement (the "Mortgage") dated July ___2___, 2007, from the Debtor ("Mortgagor"), as identified hereinabove, encumbering that certain parcel of real estate (the "Land") situate in Miami-Dade County, Florida, and legally described on Exhibit "A" attached hereto and made a part hereof, together with all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, projections, appurtenances, water rights including riparian and littoral rights, streets, ways, alleys, and strips and gores of land now or hereafter in any way belonging, adjoining, crossing or pertaining to the Land; and all of the following property of Mortgagor whether now owned or existing, or hereafter acquired or arising, located in, on, pertaining to, used or intended to be used in connection with or resulting or created from the ownership, development, management, or operation of the Land:

    (i)    all "Improvements" (as said term is defined in the Mortgage) and landscaping;

    (ii)    all "Fixtures" (as said term is defined in the Mortgage) and goods to become Fixtures;

    (iii)    all accounts, accounts receivable, other receivables, contract rights, chattel paper, instruments and documents deposit accounts, all letter-of-credit rights, all investment property and all farm products. Any other obligations or indebtedness owed to Mortgagor from whatever source arising; all rights of Mortgagor to receive any performance of any payments in money or kind; all guaranties of the foregoing and security therefor; all of the right, title and interest of Mortgagor in and with respect to the goods, services, or other property that gave rise to or that secure any of the foregoing, and all rights of Mortgagor as an unpaid seller of goods and services, including, but not limited to, the rights to stoppage in transit, replevin, reclamation, and resale;

    (iv)    all goods, including, without limitation, all machinery, equipment, furniture, furnishings, building supplies and materials, appliances, business machines, tools, aircraft and motor vehicles of every kind and description, and all warranties and guaranties for any of the foregoing;

    (v)    all inventory merchandise, raw materials, parts, supplies, work-in-process and finished products intended for sale, of every kind and description, in the custody or possession, actual or constructive, of Mortgagor including such inventory as is temporarily out of the custody or possession of Mortgagor, any returns upon any accounts and other proceeds, resulting from the sale or disposition of any of the foregoing, including without limitation, raw materials, work-in-process, and finished goods;

    (vi)    all general intangibles, including without limitation, corporate or other business records and books, blueprints, surveys, architectural or engineering drawings, plans and

-1-

specifications, trademarks, trade names, goodwill, telephone numbers, licenses, governmental approvals, franchises, permits, payment and performance bonds, tax refund claims, and agreements with utility companies, together with any deposits, prepaid fees and charges paid thereon;

    (vii)    all "Leases" and "Rents" (as said terms are defined in the Mortgage);

    (viii)    all judgments, awards or damages and settlements from any condemnation or eminent domain proceedings regarding the Land, the Improvements or any of the Mortgaged Property;

    (ix)    all insurance policies required by the Mortgage, the unearned premiums therefor and all loss proceeds thereof;

    (x)    all other "Personal Property" (as said term is defined in the Mortgage) including, without limitation, management contracts, construction contracts, architectural contracts, service contracts, engineering contracts, advertising contracts, contracts for purchase and sale of any of the Mortgaged Property, purchase orders, equipment leases, monies in escrow accounts, reservation agreements, prepaid expenses, deposits and down payments with respect to the sale or rental of any of the Mortgaged Property, options and agreements with respect to additional real property for use or development of the Mortgaged Property, end-loan commitments, surveys, abstracts of title, all brochures, advertising materials, condominium documents and prospectuses; and

    (xi)    all proceeds, products, replacements, additions, betterments, extensions, improvements, substitutions, renewals and accessions of any of the foregoing.

Debtor hereby irrevocably authorizes the Secured Party to file one or more financing statement in whatever filing offices the Secured Party considers appropriate. Such financing statement may describe the collateral covered thereby as being all Debtor's assets (whether now owned or hereafter acquired, whether now existing or hereafter created or arising and wherever located) or using any narrower description the Secured Party elects. Any such financing statement may also contain the following statement (or words of similar import):

"Without the Secured Party's prior written consent, Debtor may not grant any security interest in any of the collateral to anyone other then the Secured Party and may not sell or otherwise dispose of any of it."

**THE DEBTOR IS THE FEE SIMPLE OWNER OF THE MORTGAGED PROPERTY. THIS DOCUMENT IS A SECURITY AGREEMENT.**

## EXHIBIT "A"

### Legal Description

Tract A, of WLBW-TV STUDIO SITE, according to the Plat thereof, as recorded in Plat Book 80, at Page 44, of the Public Records of Miami-Dade County, Florida.

# EXHIBIT "E"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(*MIAMI DIVISION*)

IN RE:                                          CASE NO. 11-22948-AJC
                                                Chapter 11
3900 BISCAYNE, LLC.,

                 Debtor(s).

_____/

### AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF MOTIONS

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF ORANGE          )

BEFORE ME, the undersigned authority, personally appeared OSCAR A. BRUNI, JR., who, being first duly sworn, deposes and says as follows:

1.      I am Senior Vice President of Acquired Assets Group, a Division of Branch Banking & Trust ("BB&T") and I have knowledge about the transactions, facts and circumstances discussed in this Affidavit.

2.      This Affidavit is based on my personal knowledge of the facts contained herein or on the books and records of BB&T kept in the ordinary course of business and under my supervision and control.

3.      I have reviewed the allegations of BB&T's Motions for Relief from Automatic Stay (the "Motion for Relief from Automatic Stay"), Motion to Prohibit Use of Cash Collateral ("Cash Collateral Motion"), and Motion to Dismiss Chapter 11 Bankruptcy Case ("Motion to Dismiss"), and those allegations are true and correct, and I adopt those allegations as if they were set forth fully in this Affidavit.

4.      I have reviewed the Note[1], Loan Agreement, the Mortgage, which contains the Assignment of Rents and Security Agreement provisions, and the Guaranties (collectively, the "3900 Real Estate Secured Loan Documents") attached as Exhibits to the Motions and have determined that they are true and correct copies of the original documents that they purport to duplicate.

5.      I have also reviewed the Second Note, Pledge Agreement, UCC Financing Statement and related documents (collectively, the "3900 CD Collateral Secured Loan Documents"), attached as Exhibits to the Motions and have determined that they are true and correct copies of the original documents that they purport to duplicate (collectively, the 3900 Real Estate Secured Loan Documents and the 3900 CD Collateral Secured Loan Documents are referred to as the "Loan Documents").

6.      To the best of my knowledge and belief, the signatures upon the Loan Documents are genuine and the signers executed those instrument freely, voluntarily and without coercion, duress or interference of any kind with the ability to read and fully comprehend the documents they were signing.

7.      To the best of my knowledge and belief, the dates of execution shown on the Loan Documents accurately reflect the dates on which they were executed.

8.      I have reviewed the ledgers, books of account, computer printouts, receipts and all other papers available to BB&T reflecting the status of indebtedness due upon the Loan Documents. These records, paper and documents, include data compilations of the payments made and received on the Loans in question and are kept in the course of a regularly conducted

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motions.

CASE NO. 11-22948-AJC
Chapter 11

business activity. The entries are made at or near the time that each payment is received, by

persons with knowledge of the information being recorded. It is the regular practice of BB&T

to make these entries at the time the payments are received.

9.      The Debtor has defaulted on the Loan Documents by, including without

limitation, failing to make payment of the outstanding amounts due as the Loans matured, and

failing to pay property taxes with respect to the Real Property.

10.     BB&T has not received any payments from the Debtor under the 3900 Real

Estate Secured Loan since August 6, 2010, when the Debtor made its last post-maturity interest

only payment of $32,130.00. This payment was applied towards the total matured indebtedness

in accordance with the 3900 Real Estate Secured Loan Documents and BB&T's reservation of

rights.

11.     Additionally, BB&T has not received any payments from the Debtor under

the 3900 CD Collateral Secured Loan since September 13, 2010, when the Debtor made a post-

maturity principal reduction payment of $64,005.26. This payment was applied towards the total

matured indebtedness in accordance with the 3900 CD Collateral Secured Loan Documents and

BB&T's reservation of rights.

12.     Based upon my review and examination of these records, papers and

documents, I have determined that as of the Petition Date the Debtor, 3900 Biscayne LLC, owed

BB&T the following amounts under the Loans:

**3900 Real Estate Secured Loan**
Principal Balance due on
the Note:                                  $10,800,000.00

CASE NO. 11-22948-AJC
Chapter 11

| | | |
|---|---|---|
| Interest Balance (through 5/12/2011)<br>Per diem rate $747.00 | $ | 213,624.00[2] |
| Post-Maturity Default Interest<br>from 5/6/2010 through 5/12/2011;<br>Per diem rate $4,589.26 | $ 1,702,615.46[3] | |
| Late fees/Fee Balance | $ | 14,915.66 |

**TOTAL DUE**
**under 3900 Real Estate Secured Loan:**   **$12,731,155.12[4]**


**3900 CD Collateral Secured Loan**
Principal Balance due on
the Note:                                            $610,994.74

Interest Balance (through 5/12/2011):    $ 12,284.72[5]
Per diem rate: $42.26

Post-Maturity Default Interest from        $133,585.97[6]
5/6/2010 through 5/12/2011;
Per diem rate $360.07

Late fees                                        $     300.00

**TOTAL DUE**
**under 3900 CD Collateral Secured Loan:**   **$757,165.43[7]**

---

[2] Pursuant to the terms of the Note, the contractual interest rate is 2.49%.

[3] Pursuant to the terms of the Note, the post-maturity default interest rate on the Loan is 15.51%, in addition to the contractual interest rate.

[4] As the Debtor contends that BB&T is fully secured, BB&T reserves the right to amend this amount to include post-petition interest, fees, and costs.

[5] Pursuant to the terms of the Second Note, the contractual interest rate is 2.49%.

[6] Pursuant to the terms of the Second Note, the post-maturity default interest rate on the Loan is 21.51%, in addition to the contractual interest rate.

[7] BB&T reserves the right to amend this amount to include post-petition interest, fees, and costs.

CASE NO. 11-22948-AJC

Chapter 11

10.     In order to enforce the right to recover the aforesaid indebtedness, BB&T has

incurred court costs and is also obligated to pay its attorneys, Liebler, Gonzalez & Portuondo,

P.A., a reasonable fee for their services in this litigation.

FURTHER AFFIANT SAYETH NAUGHT.

BRANCH BANKING & TRUST

BY: OSCAR A. BRUNI, JR.

ITS: SENIOR VICE-PRESIDENT

SWORN TO AND SUBSCRIBED before me this _17_ day of May, 2011, by
_Oscar A. Bruni, JR_____, as Senior Vice President of Branch Banking & Trust, who
is personally known to me and who did take an oath.

My Commission Expires: June 26, 2012.

Notary Public, State of Florida

DIANNE F. WALLACE
Notary Public - State of Florida
My Commission Expires Jan 26, 2012
Commission # DD 801072
Bonded Through National Notary Assn.

# EXHIBIT "F"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICTOF FLORIDA

**BRANCH BANKING AND TRUST COMPANY, a foreign corporation,**

**CASE NO. 10-cv-23279-MGC**
**Judge Marcia G. Cooke**

Plaintiffs,

v.

**3900 BISCAYNE, LLC, et al.,**

Defendants.

_____/

### MOTION FOR TURNOVER OF RENTS

Plaintiff, BRANCH BANKING & TRUST COMPANY ("BB&T"), respectfully moves this Court for entry of an Order: (a) directing 3900 BISCAYNE, LLC ("3900 BISCAYNE"), UNKNOWN TENANT #1, UNKNOWN TENANT #2 and/or any and all parties who may be in possession of the subject property, to pay and deliver to BB&T, all rents, income, and profits derived from the subject property; (b) declaring BB&T's interest in said rents superior to those, if any, of 3900 BISCAYNE, UNKNOWN TENANT #1, UNKNOWN TENANT #2, and any party claiming by, through or under any of them; and (c) granting such other and further relief as the Court deems appropriate, and states as follows:

### I. INTRODUCTION

Defendant 3900 BISCAYNE has defaulted on the promissory note it executed in favor of BB&T. The promissory note, as explained below, is secured by a mortgage on real property. 3900 BISCAYNE, upon information and belief, has leased the real property encumbered by the mortgage to MIAMI ARTS CHARTER SCHOOL and is collecting rent from same.

**A.      The Parties**

    1.      BB&T is a state-chartered banking corporation organized under the laws of North Carolina, has its main office in Winston-Salem, North Carolina, and is authorized to conduct business in the State of Florida.

    2.      3900 BISCAYNE is a Florida limited liability company, owns real property and has its principal place of business in Miami-Dade County, Florida, and has contractually submitted itself to the jurisdiction of this Court.

    3.      UNKNOWN TENANT #1 and UNKNOWN TENANT #2 may claim an interest in the subject mortgaged property by virtue of being in possession of same.

    4.      Upon information and belief, MIAMI ARTS CHARTER SCHOOL is a public charter school located in Miami-Dade County, Florida operating out of the subject mortgaged property.

**B.**    **Factual Background**

    1.      On or about July 2, 2007, 3900 BISCAYNE executed and delivered to BB&T a promissory note in the principal amount of $10,800,000.00 (the "Note"). A true and correct copy of the Note is attached to the Complaint as **Exhibit "A,"** and incorporated herein.

    2.      The Note is secured by that certain mortgage dated July 2, 2007, executed by 3900 BISCAYNE to BB&T and recorded on July 3, 2007, in Official Records Book 25751 at Page 4473 of the Public Records of Miami-Dade County, Florida (the "Mortgage"). The Mortgage encumbers the real property more particularly described therein (as described in Mortgage, the "Mortgaged Property "). A true and correct copy of the Mortgage is attached the Complaint as **Exhibit "C,"** and incorporated herein.

3.    The Mortgage provides that all of the rents, issues, and profits arising from the renting or hiring of the Mortgaged Property or any part thereof are assigned to BB&T until the Note is paid.

4.    The Assignment of Leases in the Mortgage also provides that upon 3900 BISCAYNE's default under the Note, BB&T shall have the right to receive the rents, issues, profits, and income from the Mortgaged Property, including any payments due under any leases covered by the Assignment of Leases and apply such proceeds against the outstanding indebtedness, including reasonable attorney's fees incurred in enforcing the Assignment of Leases.

5.    BB&T presently owns and holds the Note and the Mortgage, which includes the Assignment of Leases.

6.    3900 BISCAYNE has defaulted on the Note and the Mortgage, by, without limitation, failing to make payment of the debt outstanding at maturity and failing to pay property taxes on the Mortgaged Property.

7.    Upon information and belief, MIAMI ARTS CHARTER SCHOOL, is in possession of the premises located at the Mortgaged Property, as a tenant.

8.    BB&T is owed the approximate principal amount of $10,800,000.00, pursuant to the terms of the Note and the Mortgage, together with interest, late charges, and attorneys' fees and costs.

9.    BB&T hereby demands that 3900 BISCAYNE deliver to BB&T all the rents, issues, profits, and income from the Mortgaged Property, including any payments due under any leases covered by the Assignment of Leases provision of the Mortgage and any rents held in escrow.

– 3 –

10.    BB&T also demands that UNKNOWN TENANT #1, UNKNOWN TENANT #2 and MIAMI ARTS CHARTER SCHOOL pay rents to BB&T by delivering said rents by the due date to the undersigned law firm.

11.    3900 BISCAYNE is required to immediately turnover to BB&T all rents in its actual or constructive possession.

## II. ARGUMENT

**A.    As a matter of law, Plaintiff is entitled to receive the rents, issues, profits and income from the Mortgaged Property due to Defendant, 3900 BISCAYNE's, failure to comply with its obligations under the Note and the Mortgage.**

Pursuant to the Mortgage, the Assignment of Rents, and section 697.07, Florida Statutes, BB&T is entitled to all the rents, issues, profits, and income from the Mortgaged Property, including any payments due under any leases covered by the Assignment of Leases.  Section 697.07, Florida Statutes, provides as follows:

> (1) A mortgage or separate instrument may provide for an assignment of rents of real property or any interest therein as security for repayment of an indebtedness.

> (2) If such an assignment is made, the mortgagee shall hold a lien on the rents, and the lien created by the assignment shall be perfected and effective against third parties upon recordation of the mortgage or separate instrument in the public records of the county in which the real property is located, according to law.

> (3) Unless otherwise agreed to in writing by the mortgagee and mortgagor, the assignment of rents shall be enforceable upon the mortgagor's default and written demand for the rents made by the mortgagee to the mortgagor, whereupon the mortgagor shall turn over all rents in the possession or control of the mortgagor at the time of the written demand or collected thereafter (the "collected rents") to the mortgagee less payment of any expenses authorized by the mortgagee in writing.

> (4) Upon application by the mortgagee or mortgagor, in a foreclosure action, and notwithstanding any asserted defenses or counterclaims

– 4 –

of the mortgagor, a court of competent jurisdiction, pending final adjudication of any action, may require the mortgagor to deposit the collected rents into the registry of the court, or in such other depository as the court may designate. However, the court may authorize the use of the collected rents, before deposit into the registry of the court or other depository, to:

(a) Pay the reasonable expenses solely to protect, preserve, and operate the real property, including, without limitation, real estate taxes and insurance;

(b) Escrow sums required by the mortgagee or separate assignment of rents instrument; and

(c) Make payments to the mortgagee.

The court shall require the mortgagor to account to the court and the mortgagee for the receipt and use of the collected rents and may also impose other conditions on the mortgagor's use of the collected rents.

(5) Nothing herein shall preclude the court from granting any other appropriate relief regarding the collected rents pending final adjudication of the action. The undisbursed collected rents remaining in the possession of the mortgagor or in the registry of the court, or in such other depository as ordered by the court, shall be disbursed at the conclusion of the action in accordance with the court's final judgment or decree.

(6) The court shall expedite the hearing on the application by the mortgagee or mortgagor to enforce the assignment of rents. The procedures authorized by this statute are in addition to any other rights or remedies of the mortgagee or mortgagor under the mortgage, separate assignment of rents instrument, promissory note, at law, or in equity.

(7) Nothing herein shall alter the lien priorities, rights, or interests among mortgagees or other lienholders or alter the rights of the mortgagee under the mortgage, separate assignment of rents instrument, at law or in equity, concerning rents collected before the written demand by the mortgagee. A mortgagee's enforcement of its assignment of rents under this statute shall not operate to transfer title to any rents not received by the mortgagee.

(8) Any moneys received by the mortgagee pursuant to this statute shall be applied by the mortgagee in accordance with the mortgage, separate assignment of rents instrument, or promissory note, and the mortgagee shall account to the mortgagor for such application.

Accordingly, pursuant to Section 697.07, Florida Statutes, if a mortgage contains an assignment of rents provision and is recorded in the public records of the county the mortgagee shall hold a lien on the rents and such lien shall have been perfected and effective against third parties. In the present case, the mortgage given by 3900 BISCAYNE to BB&T contains an Assignment of Leases provision and has been duly recorded in the public records of Miami-Dade County, Florida. As such, BB&T has complied with the provisions of Section 697.07, Florida Statutes to establish and perfect its lien interest on the rents derived from the Mortgaged Property.

Under Florida law, a mortgagor may pledge rents to secure a debt and the mortgagee is entitled to collect any rents pledged by mortgagor. *In re: Venice-Oxford Ass. Ltd. P'ship*, 236 B.R. 791, 797 (Bankr.M.D. Fla. 1998). The lien on rents by virtue of the assignment is perfected upon recordation of the mortgage or the assignment of rents. *Id.* at 798.

There are two (2) prongs that must be complied with in order for the assignment to become enforceable. They are: (1) mortgagor's default under the terms of the note and/or mortgage, and (2) written demand for the rents by mortgagee. *Id.* Further, the Bankruptcy Court for the Southern District, relying upon *In re: 163rd Street Mini Storage, Inc.*, 113 B.R. 87, 90 (Bankr.S.D. Fla. 1990) stated that it "adhere[s] to the opinion that **Section 697.01 is intended to create an absolute transfer of the income stream to the mortgagee,** upon default and written demand to the mortgagor." *In re River Oaks Inv. Corp.*, 152 B.R. 684, 686 (Bankr.S.D. Fla. 1993) (emphasis added).

In the present case, both prongs delineated above have been satisfied. 3900 BISCAYNE has defaulted on the Note and Mortgage by failing to pay the debt outstanding at maturity and failing to pay property taxes on the Mortgaged Property. Further, BB&T has made

– 6 –

written demand upon 3900 BISCAYNE for the rents derived from the Mortgaged Property. *See* Demand to 3900 Biscayne, LLC attached hereto and incorporated herein as **Exhibit "A"**. Accordingly, BB&T is entitled to have all rents currently in 3900 BISCAYNE's possession and all future rents transferred to it. This Motion, in addition to the written demand previously sent to 3900 BISCAYNE, shall serve as written demand upon 3900 BISCAYNE for delivery and/or payment of all leases and rents derived from the Mortgaged Property to BB&T. This Motion shall also serve as written demand of turnover of rents upon MIAMI ARTS CHARTER SCHOOL, UNKNOWN TENANT #1 and UNKNOWN TENANT #2.

BB&T hereby requests that its rights and privileges with respect to the Mortgage, the Assignment of Leases, and section 697.07, Florida Statutes, be enforced, by Order of this Court. Pursuant to both Fla. Stat. § 697.07 and the Assignment of Leases, Plaintiff is entitled to an Order of this Court requiring 3900 BISCAYNE and MIAMI ARTS CHARTER SCHOOL to tender all rents, income, and profits as they become due to BB&T. Any payments from the funds paid to BB&T during the pendency of the foreclosure action are made solely to protect the mortgaged property and the mortgagor's lawful obligations in connection with the property. Fla Stat. § 697.07. Moreover, BB&T is entitled to recover its attorneys' fees from 3900 BISCAYNE pursuant to the terms of the Mortgage.

## CONCLUSION

For the foregoing reasons, Plaintiff BB&T respectfully requests that this Court enter an Order (a) directing 3900 BISCAYNE, and any and all parties who may be in possession of the Mortgaged Property, to pay and deliver to BB&T, all rents, income and profits derived from the Mortgaged Property; (b) declaring BB&T's interest in the rents, profits, leases, income, revenues,

and all assets derived from the Mortgaged Property superior to those, if any, of any party claiming

by, through or under them; and (c) such other and further relief as the Court deems appropriate.

Dated this 10th day of January, 2011

Respectfully submitted,

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Attorneys for BB&T
44 West Flagler Street, 25th Floor
Miami, FL 33130
Tel. No.: (305) 379-0400
Fax No.: (305) 379-9626

By:    s/ Guillermo M. Mancebo
JUAN A. GONZALEZ
Florida Bar No. 375500
MIGUEL M. CORDANO
Florida Bar No. 0523682
GUILLERMO M. MANCEBO
Florida Bar No. 41521

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 10. 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is

being served this day on all counsel of record identified in the Service List below, either via

transmission of Notices of Electronic Filing generated by the CM/ECF or in some other authorized

manner for those counsel or parties who are not authorized to receive electronic Notices of

Electronic Filing.

LIEBLER, GONZALEZ & PORTUONDO,
P.A.
Attorneys for Plaintiff, BB&T
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel: (305) 379-0400

By:        /s/ Guillermo M. Mancebo
JUAN A. GONZALEZ
Florida Bar No. 375500
MIGUEL M. CORDANO

-- 8 --

Florida Bar No. 0523682
GUILLERMO M. MANCEBO
Florida Bar No. 41521

**SERVICE LIST**
**Case No. 1:10-cv-23279-MGC**
**Branch Banking & Trust Company v. 3900 Biscayne, LLC et al.**

**Cheryl Elyse Zuckerman, Esq.**
**Peter Dumas Russin, Esq.**
Meland Russin & Budwick PA
200 S Biscayne Boulevard
Suite 3000 Wachovia Financial Ctr.
Miami, FL 33131
305-358-6363
Fax: 358-1221
Email: czuckerman@melandrussin.com
Email: prussin@melandrussin.com

**Laurel White Marc-Charles, Esq.**
Richard & Richard
825 Brickell Bay Drive
Suite 1748 Tower III
Miami, FL 33131-2961
305-374-6688
Fax: 374-0384
Email: Laurel@richardandrichard.com

**James D. Gassenheimer, Esq.**
Berger Singerman
200 South Biscayne Boulevard
Suite 1000
Miami, FL 33131
Phone: 305-755-9500
Fax: 305-714-4340
Email: JGassenheimer@bergersingerman.com

-- 9 --

Law Offices

# LIEBLER, GONZALEZ & PORTUONDO, P.A.

COURTHOUSE TOWER
44 WEST FLAGLER STREET
TWENTY-FIFTH FLOOR
MIAMI, FLORIDA 33130

GUILLERMO M. MANCEBO, ESQ.
E-MAIL GMM@LGPLAW.COM

TELEPHONE: (305) 379-0400
FACSIMILE: (305) 379-9626

December 20, 2010

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**AND REGULER U.S. MAIL**

3900 BISCAYNE, LLC
2915 Biscayne Blvd.
Suite 200
Miami, FL 33137

Re:    **Branch Banking and Trust Company v. 3900 Biscayne, LLC et al.**
**Case No. 1:10-cv-23279-MGC currently before the United States District Court**
**for the Southern District of Florida**
**DEMAND FOR RENT PURSUANT TO § 697.07, FLORIDA STATUTES**
**(Our File No. 190-0010)**

To Whom It May Concern:

As you are aware, the undersigned law firm is legal counsel to Branch Banking and Trust Company ("BB&T"), successor in interest to Colonial Bank, N.A., in connection with the Promissory Note executed by 3900 Biscayne, LLC on July 2, 2007 in favor of Colonial Bank, N.A. as well as the Mortgage and Security Agreement encumbering property located in Miami-Dade County, Florida securing same.

This correspondence shall serve as formal notice that Branch Banking and Trust Company hereby demands that 3900 Biscayne, LLC immediately turnover all rents , income, and profits accruing from the mortgaged premises more particularly described in the referenced mortgage.

Pursuant to section 697.07, *et seq.*, Florida Statutes, 3900 Biscayne, LLC's default with respect to its financing obligations with Branch Banking and Trust Company, the referenced Mortgage dated July 2, 2007, recorded on July 3, 2007 in Official Records Book 25751 at Page 4473, in the Public Records, of Miami-Dade County, Florida and the Collateral Assignment of Leases, Rents and Profits dated July 2, 2007, recorded on July 3, 2007 in Official Records Book 25751 at Page 4502, the Bank hereby demands that 3900 Biscayne, LLC immediately turnover to Branch Banking and Trust Company the rents, income, and profits accruing from the mortgaged premises more particularly described in the referenced Mortgage and the Collateral Assignment of Leases, Rents and Profits.

DEMAND IS HEREBY MADE upon 3900 BISCAYNE, LLC for immediate payment of all rents accruing on the mortgaged premises. In the event you fail and/or refuse to turnover all rents, income, and profits derived from the mortgaged premises within **ten (10) days** from the date of this Demand, we shall be compelled to proceed with all available legal remedies to obtain such rents. In such event, we shall seek to hold you responsible for all legal fees and costs incurred in connection therewith.

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

Sincerely,

GUILLERMO M. MANCEBO

GMM/vcd

cc:   Cheryl E. Zuckerman Esq. and Peter D. Russin, Esq., counsel for 3900 Biscayne, LLC, Via Regular Mail and Certified RRR
      Branch Banking and Trust Company

Z:\190-0010\Correspondence\Demand for Rents.wpd

# EXHIBIT "G"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23279-CIV-COOKE /BANDSTRA

BRANCH BANKING AND TRUST
COMPANY,

     Plaintiff,

v.

3900 BISCAYNE, LLC, KOBI KARP,
NANCY KARP, DEBORAH FLACKS,
and MICHAEL FLACKS,

     Defendants.

_____/

## DEFENDANT 3900 BISCAYNE, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR TURNOVER OF RENTS

     Defendant 3900 Biscayne, LLC ("***Defendant***"), by and through undersigned counsel, hereby files its Response (the "***Response***") to Plaintiff Branch Banking and Trust Company's ("***Plaintiff***") Motion for Turnover of Rents (the "***Motion for Rents***"), and states:

### FACTS

     1.    Defendant does not contest that Plaintiff has perfected a security interest in the rents, issues, profits and income from the Mortgaged Property (the "***Rents***"), as asserted in Plaintiff's Motion for Rents; however, Plaintiff requests that this Court approve the budget (the "***Budget***"), attached hereto as **Exhibit A**, and direct payment of the Rents, subject to allocation of rental income as provided in the Budget, into a non-comingled escrow account for the benefit of Plaintiff and Defendant.

2.      The Budget provides for an allocation of rental income which will permit Defendant to protect, preserve and operate the Mortgaged Property and, thereby, ensure the Mortgaged Property continues to generate rental income and avoid waste.

3.      The following details relate to specific line items included in the Budget or contingent liabilities not reflected in the Budget:

a. Security Deposit from Miami Arts Charter School.  Pursuant to the terms of the lease entered into between Defendant and Miami Arts Charter School (*"Tenant"*), a security deposit is required in an amount equal to 6 months rent.  Bank of America currently holds a Letter of Credit in this amount; however, Tenant is required to replace that Letter of Credit through monthly payments made directly to Defendant.  Tenant has failed to make any such payments despite repeated demand by Defendant.  These funds, if and when paid, would not be available to Plaintiff as part of the Rents.

b. Antenna Lease.  Defendant is in ongoing negotiations to lease an antenna located on the Mortgaged Property (the *"Antenna Lease"*).  If the Antenna Lease is executed, Defendant will be required to pay a commission of at least $9,000.00 upon execution or receipt of the first rent payment pursuant thereto.  This payment is estimated in the Budget to be due, if at all, in February 2011; however, the time of this payment remains uncertain as negotiations are ongoing.  Additionally, Defendant has incurred fees for negotiation of the Antenna Lease, which will be due irrespective of whether the Antenna

Lease is executed.  Defendant has estimated that these fees will be approximately $5,000.00, and that they will be payable in February 2011; however, the time and amount of this payment remains uncertain.  The Antenna Lease, if executed, will generate additional rental income, the allocation of which will need to be determined through stipulation of the parties or further order of this Court.

c.  <u>Property Taxes</u>.  Property taxes for the Mortgaged Property for 2009 are $219,850.56; however, this amount is currently on appeal and the amount which will be due and when such amount will be due remains uncertain.  Defendant has, as of the date of this Response, placed approximately $110,000.00 in a separate property tax account and will continue to fund this account until it reaches $219.850.56 such that sufficient funds will be available if it is determined that the full amount of 2009 property taxes are due and payable.  Additionally, Defendant continues to incur fees for legal services related to the appeal of 2009 property taxes; however, the timing and amount of such fees remains uncertain.

d.  <u>Elevator Overhaul</u>.  The city of Miami has ordered that the elevators on the Mortgaged Premises be overhauled in order to comply with the current building codes.  As such, the expenses included in the Budget are necessary and additional funds may be necessary to complete the overhaul, which is ongoing.

    e. <u>Tenant Build Out</u>. Pursuant to the terms of the Tenant's lease, approved by Plaintiff at the time it was entered into, Defendant is required to provide $55,000.00 for build out expenses, beyond those already paid by Defendant, upon demand of the Tenant. It is anticipated that Tenant will make such demand beginning in June 2011; however the precise timing of Tenant's forthcoming demand for payment of these build out funds remains uncertain.

    4.    Failure to allocate rental income as provided in the Budget will subject the Mortgaged Property to otherwise avoidable waste by, *inter alia*, rendering Defendant unable to administer the business of the Mortgaged Property and subjecting the Mortgaged Property to physical disrepair, building code violations, property tax liens, and defaults on other lawful obligations. Additionally, failure to allocate rental income as provided in the Budget will hinder Defendant's ability to generate additional rental income through further negotiation and execution of the Antenna Lease.

    5.    Defendant believes the proposed Order submitted to the Court along with this Response provides the appropriate measures allowing sequestration of rents, income and profits from the Mortgaged Property subject to the Budget such that the Mortgaged Property can be properly protected, preserved and operated for the benefit of Plaintiff and Defendant.

## <u>MEMORANDUM OF LAW</u>

    Florida Statute 697.07, in conjunction with the Mortgage and the Assignment of Rents entered into by Plaintiff and Defendant, grants Plaintiff a lien on the rents generated by the Mortgaged Property. Section 697.07 does not, however, provide for the

transfer of ownership of rents without the mortgagor's consent or court action. *In re Villamont-Oxford Assoc. Ltd. P'ship*, 230 B.R. 445, 452 (Bankr. M.D. Fla. 1998) (discussing the 1993 amendment of Fla. Stat. 697.07 and the clarification in its language that it is not intended to create an absolute transfer of the income stream to the mortgagee.). The mortgagor is not divested of its interest in rents solely because the mortgagee pursues its remedies under Section 697.07. *See id.*

By the express terms of Section 697.07(4), the court may order that rents be used to pay reasonable expenses associated with the property in order to protect, preserve, and operate the real property, including, without limitation, real estate taxes and insurance. *See id.* One method by which this can be accomplished is for the court to enter an order granting the mortgagor authority to use the rents in a limited fashion pursuant to a court approved budget. *See In re Century Plaza Assoc.*, 154 B.R. 349, 351 (Bankr. S.D. Fla. 1992) (state court entered an order, over objection of the mortgagee, granting debtor authority to use the rents in a limited fashion pursuant to a court approved budget.).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court enter an Order: (a) approving the Budget; (b) directing payment of net rents, income and profits derived from the Mortgaged Property into a non-comingled escrow account for the benefit of Plaintiff and Defendant subject to Defendant's right to use such rents, income and profits for the protection, preservation and operation of the Mortgaged Property as provided in the Budget; and (c) other such relief as the Court deems appropriate.

Respectfully submitted,

s/ Peter D. Russin

Peter D. Russin
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL  33131
Telephone:  (305) 358-6363
Facsimile:  (305) 358-1221
*Counsel for Defendant 3900 Biscayne, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of January, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Peter D. Russin
Peter D. Russin, Esquire

### SERVICE LIST

Guillermo M. Mancebo, Esq.
gmm@lgplaw.com
Juan A. Gonzalez, Esq.
jag@lgplaw.com
Miguel M. Cordano, Esq.
mc@lgplaw.com
LIEBLER GONZALEZ & PORTUONDO, P.A.
44 West Flagler Street, 25th Floor
Miami, FL 33130
Telephone:  (305) 379-0400
Facsimile:  (305) 379-9626
*Counsel for Plaintiff*

## BUDGET FOR RENTS

| | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 |
|---|---|---|---|---|---|---|
| **REVENUE:** | | | | | | |
| Miami Arts Charter School Rent | $ 66,250.00 | $ 66,250.00 | $ 66,250.00 | $ 66,250.00 | $ 66,250.00 | $ 66,250.00 |
| Carry-Over Net Revenue (approximate) | $ 19,533.07 | $ 962.07 | $ 1,599.57 | $ 1,237.07 | $ 1,740.57 | $ 24,527.51 |
| **TOTAL REVENUE** | $ 85,783.07 | $ 67,212.07 | $ 67,849.57 | $ 67,487.07 | $ 67,990.57 | $ 90,777.51 |
| | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 |
| **MONTHLY PAYMENTS:** | | | | | | |
| Management Fee (3%) | $ 1,446.01 | $ 1,987.50 | $ 1,987.50 | $ 1,987.50 | $ 1,987.50 | $ 1,987.50 |
| Comras Commission Settlement | $   - | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 |
| Legal Fees | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 |
| **ONE TIME PAYMENTS:** | | | | | | |
| Postage/Shipping/Courier (Misc. Office Expenses) | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 |
| 2009 Property Taxes ($219,850.56 on appeal) (approximately $110,000 currently held in separate tax acct) | $ 49,000.00 | $ 8,000.00 | $ 16,000.00 | $ 23,000.00 | $ 13,850.56 | |
| Accounting (CPA estimate for 2010 return) | | $ 4,000.00 | | | | |
| Antenna Broker Commissions | | | $ 9,000.00 | | | |
| Antenna Lease Fees (estimated) | | $ 5,000.00 | | | | |
| Property Appraisal - BB & T | | $ 5,500.00 | | | | |
| **MISCELLANEOUS:** | | | | | | |
| Art Environmental - Past Due Bill | | | | $ 865.00 | | |
| CCY Interiors | | | | $ 813.00 | | |
| DC Media Graphics (estimated) | | | | $ 1,808.00 | | |
| Elevator Overhaul (approx. $47,280 +) | $ 14,250.00 | $ 13,500.00 | $ 12,000.00 | $ 7,530.00 | | |
| Phase II Tenant Build-Out ($55,000 in total) | | | | $ 1,500.00 | | |
| Spectra Consulting - Past Due Bill | | | | | | $ 27,500.00 |
| Tropical Fire & Security | | | | $ 618.00 | | |
| **TOTAL BILLS TO PAY** | $ 84,821.00 | $ 65,612.50 | $ 66,612.50 | $ 65,746.50 | $ 43,463.06 | $ 57,112.50 |
| **NET REVENUE** | $ 962.07 | $ 1,599.57 | $ 1,237.07 | $ 1,740.57 | $ 24,527.51 | $ 33,665.01 |

EXHIBIT A

(Firm Clients\5345\5345-2\00844925.XLSX.)

**BUDGET FOR RENTS**

| | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Jan-12 | TOTAL INCOME | TOTAL VENDOR BILLS |
|---|---|---|---|---|---|---|---|---|---|
| | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 890,416.62 | |
| | $ 33,665.01 | $ 46,844.17 | $ 87,523.33 | $ 128,202.49 | $ 168,881.65 | $ 209,560.81 | $ 250,239.97 | | |
| | $ 104,081.67 | $ 117,260.83 | $ 157,939.99 | $ 198,619.15 | $ 239,298.31 | $ 279,977.47 | $ 320,656.63 | $ 1,864,933.91 | |
| | | | | | | | | | |
| | $ 27,500.00 | | | | | | | | |
| | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 | | $ 26,171.00 |
| | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | | $ 90,000.00 |
| | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | | $ 260,000.00 |
| | | | | | | | | | $ 109,850.56 |
| | | | | | | | | | $ 4,000.00 |
| | | | | | | | | | $ 9,000.00 |
| | | | | | | | | | $ 5,500.00 |
| | | | | | | | | | $ - |
| | | | | | | | | | $ 865.00 |
| | | | | | | | | | $ 813.00 |
| | | | | | | | | | $ 1,808.00 |
| | | | | | | | | | $ - |
| | | | | | | | | | $ 55,000.00 |
| | | | | | | | | | $ 1,500.00 |
| | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | | $ 1,625.00 |
| | | | | | | | | | $ 618.00 |
| | $ 57,237.50 | $ 29,737.50 | $ 239,737.50 | $ 29,737.50 | $ 29,737.50 | $ 29,737.50 | $ 29,737.50 | $ 245,903.36 | $ 567,250.56 |
| | $ 46,844.17 | $ 87,523.33 | $ 128,202.49 | $ 168,881.65 | $ 209,560.81 | $ 250,239.97 | $ 290,919.13 | | |

(Firm Clients\5345\5345-2\00844925.XLSX)

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23279-CIV-COOKE /BANDSTRA

BRANCH BANKING AND TRUST
COMPANY,

      Plaintiff,

v.

3900 BISCAYNE, LLC, KOBI KARP,
NANCY KARP, DEBORAH FLACKS,
and MICHAEL FLACKS,

      Defendants.

_____/

### ORDER ON PLAINTIFF'S MOTION FOR TURNOVER OF RENTS

THIS CAUSE came before the Court upon Plaintiff's, Branch Banking and Trust Company, Motion for Turnover of Rents (the "*Motion*"), and the Court having reviewed the Motion, the Court's file, and being otherwise duly advised in the premises, it is hereby

ORDERED and ADJUDGED that:

1.     The budget attached as Exhibit A (the "*Budget*") is approved.

2.     The Motion is Granted subject to the Budget and other provisions of this Order.

3.     Defendant is authorized to use the rents, income and profits from the Mortgaged Property (the "Rents") as provided in the Budget for the protection, preservation and operation of the Mortgaged Property.  Defendant's right to utilize the Rents as provided in the Budget shall commence on the date of the entry of this Order and expire upon the close of business on January 31, 2012 (the "Expiration Date"), unless an extended budget is provided to and approved by the Court or stipulated to by Plaintiff and Defendant (the "Extended Budget"), in which case the Expiration Date shall be extended to the end of the period included in the Extended Budget.

4.      Defendant is authorized: (a) to exceed any line item on the Budget by an amount equal to five (5) percent of each such line item; or (b) to exceed any line item by more than five (5) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed five (5) percent in the aggregate of the total Budget.

5.      To the extent additional amounts related to the protection, preservation, or operation of the Mortgaged Property become due or require that the Budget be exceeded beyond the percentages provided in paragraph 4 of this Order ("*Additional Payments*"), Defendant shall seek Plaintiff's approval for such Additional Payments and, if received, shall not require approval from this Court.  In the event Plaintiff does not approve any Additional Payments, Defendant shall seek approval for such Additional Payments from this Court.

6.      Any net portion of the Rents remaining available following Defendant's authorized use of the Rents as provided in this Order and the Budget or Extended Budget shall be paid into a non-comingled escrow account for the benefit of Plaintiff and Defendant, pending further determination by this Court of appropriate relief regarding the collected rents upon final adjudication of this action.

DONE   AND   ORDERED   in   Chambers   in   Miami,   Florida   this   ____   day   of _____, 2011.


_____
HONORABLE MARCIA GAIL COOKE
United States District Judge

# EXHIBIT "H"



**My Home**



miamidade.gov

ACTIVE TOOL: SELECT

**Show Me:**
Property Information

**Search By:**
Select Item

📄 Text only

📄 Property Appraiser Tax Estimator

📄 Property Appraiser Tax Comparison

### Summary Details:

| | |
|---|---|
| Folio No.: | 01-3219-026-0010 |
| Property: | 3900 BISCAYNE BLVD |
| Mailing Address: | 3900 BISCAYNE LLC 2915 BISCAYNE BLVD SUITE 200 MIAMI FL 33137-4197 |

### Property Information:

| | |
|---|---|
| Primary Zone: | 6100 RESTRICTED COMMERCIAL |
| CLUC: | 0015 ENTERTAINMENT |
| Beds/Baths: | 0/0 |
| Floors: | 3 |
| Living Units: | 0 |
| Adj Sq Footage: | 52,889 |
| Lot Size: | 70,567 SQ FT |
| Year Built: | 1965 |
| Legal Description: | 19 53 42 1.62 AC M/L WLBW TV STUDIO SITE PB 80-44 TRACT A LOT SIZE 70567 SQUARE FEET COC 25751-4472 06 2007 6 OR 25751-4472 0607 03 |

### Assessment Information:

| Year: | 2010 | 2009 |
|---|---|---|
| Land Value: | $3,528,350 | $5,292,525 |
| Building Value: | $3,262,468 | $3,360,872 |
| Market Value: | $6,790,818 | $8,653,397 |
| Assessed Value: | $6,790,818 | $8,653,397 |

### Taxable Value Information:

| Year: | 2010 | 2009 |
|---|---|---|
| Taxing Authority: | Applied Exemption/ Taxable Value: | Applied Exemption/ Taxable Value: |
| Regional: | $6,790,818/ $0 | $0/ $8,653,397 |
| County: | $6,790,818/ $0 | $0/ $8,653,397 |
| City: | $6,790,818/ $0 | $0/ $8,653,397 |
| School Board: | $6,790,818/ $0 | $0/ $8,653,397 |

### Sale Information:

| | |
|---|---|
| Sale Date: | 6/2007 |
| Sale Amount: | $13,500,000 |
| Sale O/R: | 25751-4472 |
| Sales Qualification Description: | Other disqualified |

View Additional Sales

**Additional Information:**



Aerial Photography - 2009

0 ———— 134 ft

### Legend

| | |
|---|---|
| 〜 | Property Boundary |
| 〜 | Selected Property |
| | Street |
| 〜 | Highway |
| | Miami-Dade County |
| ■ | Water |

My Home | Property Information | Property Taxes
| My Neighborhood | Property Appraiser

Home | Using Our Site | Phone Directory | Privacy | Disclaimer

If you experience technical difficulties with the Property Information application,
or wish to send us your comments, questions or suggestions
please email us at Webmaster.

Web Site
© 2002 Miami-Dade County.
All rights reserved.

Click here to see more information for this property:
Community Development District
Community Redevelopment Area
Empowerment Zone
Enterprise Zone
Zoning Land Use
Urban Development Boundary
Zoning
Non-Ad Valorem Assessments

# EXHIBIT "I"

Law Offices

# LIEBLER, GONZALEZ & PORTUONDO, P.A.

COURTHOUSE TOWER
44 WEST FLAGLER STREET
TWENTY-FIFTH FLOOR
MIAMI, FLORIDA 33130

GUILLERMO M. MANCEBO, ESQ.
E-MAIL:GMM@LGPLAW.COM

TELEPHONE: (305) 379-0400
FACSIMILE: (305) 379-9626

December 20, 2010

<u>**VIA CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED**</u>
<u>**AND REGULER U.S. MAIL**</u>

3900 BISCAYNE, LLC
2915 Biscayne Blvd.
Suite 200
Miami, FL 33137

     Re:    **Branch Banking and Trust Company v. 3900 Biscayne, LLC et al.**
              **Case No. 1:10-cv-23279-MGC currently before the United States District Court**
              **for the Southern District of Florida**
              **DEMAND FOR RENT PURSUANT TO § 697.07, FLORIDA STATUTES**
              **(Our File No. 190-0010)**

To Whom It May Concern:

     As you are aware, the undersigned law firm is legal counsel to Branch Banking and Trust Company ("BB&T"), successor in interest to Colonial Bank, N.A., in connection with the Promissory Note executed by 3900 Biscayne, LLC on July 2, 2007 in favor of Colonial Bank, N.A. as well as the Mortgage and Security Agreement encumbering property located in Miami-Dade County, Florida securing same.

     This correspondence shall serve as formal notice that Branch Banking and Trust Company hereby demands that 3900 Biscayne, LLC immediately turnover all rents , income, and profits accruing from the mortgaged premises more particularly described in the referenced mortgage.

     Pursuant to section 697.07, *et seq.*, Florida Statutes, 3900 Biscayne, LLC's default with respect to its financing obligations with Branch Banking and Trust Company, the referenced Mortgage dated July 2, 2007, recorded on July 3, 2007 in Official Records Book 25751 at Page 4473, in the Public Records, of Miami-Dade County, Florida and the Collateral Assignment of Leases, Rents and Profits dated July 2, 2007, recorded on July 3, 2007 in Official Records Book 25751 at Page 4502, the Bank hereby demands that 3900 Biscayne, LLC immediately turnover to Branch Banking and Trust Company the rents, income, and profits accruing from the mortgaged premises more particularly described in the referenced Mortgage and the Collateral Assignment of Leases, Rents and Profits.

DEMAND IS HEREBY MADE upon 3900 BISCAYNE, LLC for immediate payment of all rents accruing on the mortgaged premises.  In the event you fail and/or refuse to turnover all rents, income, and profits derived from the mortgaged premises within **ten (10) days** from the date of this Demand, we shall be compelled to proceed with all available legal remedies to obtain such rents. In such event, we shall seek to hold you responsible for all legal fees and costs incurred in connection therewith.

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

Sincerely,

GUILLERMO M. MANCEBO

GMM/vcd

cc:     Cheryl E. Zuckerman Esq. and Peter D. Russin, Esq., counsel for 3900 Biscayne, LLC, Via Regular Mail and
        Certified RRR
        Branch Banking and Trust Company

Z:\190-0010\Correspondence\Demand for Rents.wpd