UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

3900 BISCAYNE, LLC,[1]　　　　　　　　　　　Case No. 11-22948-AJC
　　　　　　　　　　　　　　　　　　　　　　　Chapter 11
　　　Debtor.
_____/

**MOTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 552 AND FED.
R. BANKR. P. 4001, 6003 AND 9014, FOR AN ORDER AUTHORIZING THE
USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

3900 Biscayne, LLC (the "*Debtor*"), by and through its undersigned counsel, moves this Court, pursuant to 11 U.S.C. §§ 361, 362, 363, and 552, Fed. R. Bankr.P. 4001(b) and (d), 6003 and 9014, and Local Rules 4001-2, 9013-1(F) and (G), for the entry of an Order Authorizing the Use of Cash Collateral and Granting Adequate Protection (the "*Motion*"). In support of the Motion, the Debtor states as follows:

**PRELIMINARY STATEMENT PURSUANT TO FED.R.BANKR.P. 4001(b)(1)(B)**

**As a preliminary matter, The Debtor affirms that it is not, and has not since the commencement of this case, been using the cash collateral of BB&T, and will not do so unless consent is given by BB&T or by order of this Court.**

Pursuant to Bankruptcy Rule 4001(b)(1)(B), the Debtor provides the following concise statement of the relief requested:

A.　　**Each entity having an interest in the cash collateral**:　Branch Banking and Trust Company.　*See infra* at ¶¶ 8 through 17.

---

[1] The Debtor's current mailing address is 2915 Biscayne Blvd., Ste 200, Miami, FL 33137. The last four digits of the Debtor's tax identification number are 5787.

B.  **Purpose for the use of cash collateral**:  The Debtor seeks to use the Cash Collateral for those purposes and in the amounts set forth in the Budget attached hereto as Exhibit "A."

C.  **The material terms, including duration, of the use of cash collateral**:  The Debtor intends to use the cash collateral to fund its current operational needs, such as payment for building management (approximately $2,000 per month), accounting fees (approximately $1,500 per month), operating/repair/maintenance fees (approximately $5,000 per month).  The Debtor also intends to use the cash collateral to make a one time payment for the Phase II Tenant Build-Out in the amount of $55,000.  The exact terms, use and duration of the use of cash collateral are set forth in the Budget attached hereto as Exhibit "A."

D.  **Any liens, cash payments, or other adequate protection payments**:  The Debtor agrees to grant to BB&T, *nunc pro tunc* to the Petition Date, dollar for dollar to the extent used, sold, leased, extinguished or otherwise impaired, or to the extent heretofore granted but rendered ineffective pursuant to §552 of the Bankruptcy Code, a first priority lien against and security interest in all post-petition collateral (as defined below).  In addition, the Debtor shall pay market rate interest payments at the current Note Rate rate of 2.49% monthly in the amount of approximately $22,400 (which varies slightly per month between approximately $22,400 and $23,150 as per the budget), as further adequate protection in the specific amounts set forth in the Budget.  The exact terms, use and duration of the use of cash collateral are set forth in the Budget attached hereto as Exhibit "A."

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 361, 362, 363(c)(2) and 552 of 11 U.S.C. § 101 *et seq*. (the "**Bankruptcy Code**") and Rules 4001(b) and (d), 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules 4001-2 and 9013-1(F) and (G).

2. Venue of this Motion is proper under 28 U.S.C. § 1408 and 1409.

## BACKGROUND

3. On May 12, 2011, ("**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

4. On May 17, 2011, only three (3) business days after the Debtor filed its bankruptcy petition, Creditor Branch Banking and Trust Company ("**BB&T**") filed its *Motion to Prohibit Use of Cash Collateral in the Form of Rents From Mortgaged Property or in the Alternative Motion for Adequate Protection* (the "**Motion to Prohibit Use of Cash Collateral**") [ECF No. 10 re-docketed to ECF No. 17].

5. The Debtor continues to manage and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

### The Debtor

6. The Debtor is a Florida limited liability company which owns and is leasing real property located at 3900 Biscayne, LLC ("**Property**"). The tenant is the operating Miami Arts Charter School. The Miami Arts Charter Schools is a tuition-free public charter school offering

a rigorous college-preparatory academic curriculum and conservatory-style training in the visual and performing arts. The schools were founded by veteran public school music teachers Alfredo and Christine de la Rosa. Miami Arts Charter Schools:

- Serve up to 1,300 culturally and socioeconomically diverse students from communities across Miami-Dade County spanning from grade kindergarten through 12th grade.

- Place students into their appropriate achievement levels within one of its major arts departments: Dance, Music (Instrumental or Vocal), Creative Writing and Visual Arts. (Additional coursework is offered in theater and photography).

- Draw its distinguished arts and academic faculty from Miami's rich and thriving creative community and through national searches for outstanding teachers. They select instructors who are working professionals that provide high-quality training combined with real-world experience.

- Offer an academic program that meets all high school graduation and university entrance requirements.

- Are a model small learning community located in Miami's Design District and offer direct connections with visiting staff from the University of Miami.

## Secured Lender – BB&T

### *3900 Real Estate Secured Loan*

7.  On or about July 2, 2007, the Debtor executed and delivered a Promissory Note to Colonial Bank, N.A., in the original principal amount of $10,800,000 ("***Note***"). Branch Banking and Trust Company ("***BB&T***") is the alleged successor in interest to Colonial Bank, N.A.

8.  The Note is governed by that Certain Loan Agreement dated July 2, 2007 ("***Loan Agreement***").

9.  The Note is secured by that Certain Mortgage and Security Agreement dated July 2, 2007, executed by the Debtor, and recorded on July 3, 2007, in Official Records Book 25751 at Page 4473, of the Public Records of Miami-Dade County, Florida ("***Mortgage***"). The Mortgage encumbers the real property described as:

> Legal: Tract A, of WLBW-TV STUDIO SITE, according to the Plat thereof as recorded in Plat Book 80, Page 44 of the Public Records of Miami-Dade County, Florida a/k/a 3900 Biscayne Blvd., Miami, FL 33137 (the "*Mortgaged Property*").

10. On July 18, 2007, a UCC-1 Financing Statement was filed with the Florida Secured Transaction Register and assigned Document No. 200706064133 ("*UCC-1*"). The Mortgage and UCC-1 covers the following types and items of property: all property rights; improvements; fixtures; accounts and accounts receivable; goods and FF&E; inventory; general intangibles; lease and rents; insurance policies; and other personal property.

11. Collectively, the Note, Loan Agreement, Mortgage and Security Agreement and UCC-1 Financing Statement are referred to as the *3900 Real Estate Secured Loan Documents*, which are attached to ECF No. 17.

12. As of the Petition Date, the Debtor allegedly owes BB&T the approximate principal amount of $10,800,000 on the 3900 Real Estate Secured Loan, together with accrued interest, late fees, costs, attorney's fees, and other expenses on the Note.

### *3900 CD Collateral Secured Loan*

13. On or about July 2, 2007, the Debtor executed and delivered a Promissory Note to Colonial Bank, N.A., in the original principal amount of $675,000.00 which was subsequently modified by that certain Note Modification Agreement dated November 5, 2008(as modified, the "*B Note*"). As noted above, BB&T is the alleged successor in interest to Colonial Bank, N.A.

14. The B Note is also secured by that certain Pledge Agreement dated July 2, 2007, executed by Nancy Karp (N. Karp) whereby N. Karp pledged certain certificates of deposit as security for the loan.

15. The B Note, Pledge Agreement and related documents are collectively referred to as the "*3900 CD Collateral Secured Loan Documents*." The B Note is attached to ECF No. 17.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

16.As of the Petition Date, the Debtor allegedly owes BB&T the approximate principal amount of $630,000 on the 3900 CD Collateral Secured Loan, together with accrued interest, late fees, costs, attorney's fees, and other expenses on the B Note.

### Other Liens

17.Prepetition, the Debtor had outstanding 2009 real property taxes owed regarding Parcel ID No. 01-3219-026-0010 totaling $240,741.34, which amount was appealed. While under appeal, the Debtor was not required to pay the disputed tax debt. On May 26, 2011, in the postpetition period, the property appraiser for Miami-Dade County ordered a correction in the assessment of the property as a result of a value change. As a result, the tax liability has been reduced to $168,510.98.

### Value of Property

18.The estimated value of the Debtor's real property exceeds the amount of BB&T's secured claim.

### Debtor's Rental Income

19.The Debtor is Landlord by virtue of that certain Lease Agreement dated June 1, 2009, commencing July 24, 2009 with term expiring July 31, 2014, or on such earlier date as the Lease is terminated per the Lease terms and with an automatic extension option for an additional five years upon written notice. The tenant is Miami Arts, Inc. d/b/a d/b/a Miami Arts Charter School. The Debtor has recurring, consistent rental income from this sole tenant.

20.The Debtor believes that there is sufficient equity and rental income to pay debt service to its secured lender at a market rate of interest for a market term period and to pay all creditors in full over a reasonable period of time.

21. A six month budget ("***Budget***") is attached hereto as "***Exhibit A***" reflecting such rental income and anticipated expenses.

### Relief Requested

22. The Debtor's Rental Income ("***Debtor's Income***") constitute the cash collateral ("***Cash Collateral***") of BB&T.

23. Without the use of the Cash Collateral, the Debtor does not have the funds to continue to operate its business including, but not limited to, the Lease provision regarding Phase II build-outs of the Property or pay administrative expenses related to operating. This will deprive the Debtor of its ability to reorganize.

24. The Debtor seeks to use the Cash Collateral for those purposes and in the amounts set forth in the Budget.[2] The Debtor's Income will be sufficient to fund the Debtor's expenses as set forth in the Budget.

25. The Debtor requests that (i) unpaid professional fees and expenses incurred by the Debtor prior to the occurrence of the Termination Date (as will be defined in the Final Order granting this Motion) pursuant to Section 330 of the Bankruptcy Code, in an aggregate amount not to exceed the amount of reasonable fees awarded by the Court (and in the case of the Debtor's counsel, Meland Russin & Budwick, P.A. after application of its retainer) ("***Debtor's Professionals' Carveout***"), and (ii) fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case ("***Trustee Carveout***") (the Debtor's Professionals' Carveout and the Trustee Carveout being collectively referred to as the

---

[2] The Debtor requests that it be allowed variances with any line item provided that such variances shall not exceed 5% and be subject to preapproval by BB&T. Further, in the event that an expense arises which is not within any of the approved line items in the Budget, the Debtor shall request approval from BB&T and BB&T shall have three (3) business days within which to provide consent or object. In the event that BB&T does not provide consent, then the Court shall consider the matter upon Motion.

"*Carveout*") shall be paid out of the Debtor's Income, and such amounts may be included in the Approved Budget.

26. In the event there is a Creditors' Committee appointed in this bankruptcy case, such Creditors' Committee shall negotiate any professional fees' carveout with BB&T directly, as such fees are not included in the Debtor's Professionals' Carveout.

27. Nothing contained in any Order granting this Motion shall be deemed or construed to waive, reduce or otherwise prejudice the rights of (a) BB&T or any other party in interest to object to the allowance of compensation for services rendered by, or reimbursement for expenses incurred by, any professional person retained by the Debtor or the Creditors' Committee (if appointed) in this Bankruptcy Case or (b) any such professional person to apply to the Bankruptcy Court for allowance of such compensation or reimbursement in such amounts as such professional person may request; provided, however, there is no restriction in the ability of the Debtor to make payments to estate professionals to the extent permitted by both an approved budget and an appropriate order of the Bankruptcy Court, and such permitted payments shall not be subject to any claim or interest of BB&T to the extent allowed pursuant to Section 330 of the Bankruptcy Code.

28. The Debtor proposes to grant BB&T liens on post-petition collections by the Debtor. In order to provide BB&T with adequate protection of its alleged interest in the Cash Collateral existing as of the Petition Date, the Debtor agrees to grant to BB&T, *nunc pro tunc* to the Petition Date, dollar for dollar to the extent used, sold, leased, extinguished or otherwise impaired, or to the extent heretofore granted but rendered ineffective pursuant to §552 of the Bankruptcy Code, a first priority lien against and security interest in all presently owned and hereafter acquired property which is not subject to a prior perfected and enforceable pre-petition

lien, but excluding all proceeds of property recovered or transfers avoided by or on behalf of the Debtor, its estate or any subsequent chapter 11 or chapter 7 trustee under Sections 544 through 550, inclusive, of the Bankruptcy Code (collectively, "***Post Petition Collateral***"). The Replacement Lien shall have priority over all presently existing and hereafter arising liens in the Post Petition Collateral, and the Replacement Lien shall be binding on the Debtor, any successor in interest to the Debtor (including, without limitation, any trustee appointed in this case and in any superseding case under Chapter 7 of the Bankruptcy Code) and creditors who have extended or may hereafter extend credit to the Debtor or its estate.

29.    Further, the Debtor shall pay market rate interest payments at the current Note Rate rate of 2.49% monthly in the amount of approximately $22,400 (which varies slightly per month between approximately $22,400 and $23,150 as per the budget), as further adequate protection in the specific amounts set forth in the Budget.

30.    The liens and security interests granted to BB&T herein shall be valid and perfected without the need for the execution or filing of any further document or instrument otherwise required to be executed or filed under non-bankruptcy law.  Notwithstanding that no documents need be executed or filed to create or perfect the liens and security interests granted hereunder, the Debtor shall execute and deliver to BB&T such further documents as they may reasonably request to evidence and give notice of the security interest granted hereunder, including without limitation UCC-1 Financing Statements or UCC-3 Statements of Change.  If BB&T, in its sole discretion, shall choose to file such financing statements, security agreements, or other instruments, or otherwise confirm perfection of such security interest and liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded as of

the Petition Date, and relief from the automatic stay provisions of 11 U.S.C. §362(a) for the purpose of filing said instruments will not be contested by the Debtor.

31. The Debtor submits that use of Cash Collateral as set forth herein is in the best interests of the estate and its creditors, since the use of Cash Collateral shall enable the Debtor to continue operating in the ordinary course of its business and preserve the value of its asset.[3]

### Argument

32. The Debtor's use of Cash Collateral is governed by the provisions of 11 U.S.C. §§ 361 and 363. *See*, *In re River Oaks Limited Partnership*, 166 B.R. 94 (Bankr. E.D. Mi. 1994). The value of a creditor's interest in property must be declining in order for the creditor to be lacking adequate protection for purpose of a debtor's proposed use of cash collateral. *See*, *In re Mullen*, 172 B.R. 473 (Bankr. D. Mass. 1994).

33. The determination as to whether a creditor is adequately protected pursuant to Section 363 should be based on factors such as whether the value of the security exceeds the debt, or whether there is a reorganization plan that provides for full payment to the creditor. *River Oaks*, 166 B.R. at 98. Here, BB&T is adequately protected. *See*, 11 U.S.C. §§ 361(2) and 363(e); *In re Certified Corporation*, 51 B.R. 768 (Bankr. D. Hawaii 1985). In addition, a liquidation would effectively place the Debtor out of business. *See*, *Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200 (1st Cir. 1995). Such a result would be disastrous to both the Debtor and BB&T.

---

[3] At this time, the Debtor has not completed an analysis of the perfection or validity of BB&T's interest, or whether any of the claims or security interest of BB&T is subject to avoidance or subordination. Nothing in this Motion is intended or should be construed as an admission by the Debtor as to the nature, extent, or priority of the claims or security interest of BB&T. Rather to the extent the BB&T has an interest in the Cash Collateral, the Debtor proposes to provide BB&T with the adequate protection described herein.

34. A debtor may demonstrate adequate protection by proving the existence of, *inter alia*: (1) an equity cushion, (2) a third-party guaranty, or (3) substitute collateral. *See*, *In re Phoenix Steel Corp.*, 39 B.R. 218 (Bankr. Del. 1984). BB&T holds personal guarantees from third-parties which are Kobi Karp, Nancy Karp, Deborah Flacks and Michael Flacks.

35. The Debtor or any committee appointed pursuant to 11 U.S.C. § 1102 shall have forty-five (45) days after such appointment to analyze and object to the validity, priority and extent of BB&T's purported liens in any of the collateral purporting to secure BB&T's claimed indebtedness.

**Bullet Point Summary Required Pursuant to Court's Guidelines CG-7 (rev. 12/1/09)**

36. The following is a bullet point summary of the essential terms of the proposed use of cash collateral:

   a) The Debtor seeks authority to use Cash Collateral of BB&T for those purposes and in the amounts set forth in the Budget. The Cash Collateral will come from the Debtor's Income.

   b) This Motion provides for the Debtor's Professionals' Carveout in an aggregate amount not to exceed the amount of reasonable fees awarded by the Court (and in the case of the Debtor's counsel, Meland Russin & Budwick, P.A. after application of its retainer) and the Trustee Carveout for fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case. However, in the event there is a Creditors' Committee appointed in this bankruptcy case, such Creditors' Committee shall negotiate any professional fees' carveout with BB&T directly, as such fees are not included in the Debtor's Professionals' Carveout.

   c) A proposed Order is attached hereto as Exhibit B.

WHEREFORE, the Debtor respectfully requests that this Court enter an order authorizing the use of BB&T's Cash Collateral and for any further relief this Court deems just and proper.

Dated: June 15, 2011.

     s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Counsel for Debtor 3900 Biscayne, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via the Court's Notice of Electronic Filing on June 15, 2011, upon all parties listed on the attached Exhibit "1".

/s/ Peter D. Russin
Peter D. Russin, Esquire

**SERVICE LIST**

**Electronic Mail Notice List**
The following is the list of parties who are currently on the list to receive e-mail notice/service for this case and who therefore will be served via the Court's Notice of Electronic Filing:

Frank P. Cuneo    fpc@lgplaw.com, de@lgplaw.com;yr@lgplaw.com;jem@lgplaw.com
Elizabeth Evans    liz@floridalegal.net, le2mail@aol.com
Laudy Luna    ll@lgplaw.com, dfk@lgplaw.com;cmr@lgplaw.com;sql@lgplaw.com
Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov

# Exhibit 1

**3900 BISCAYNE, LLC BUDGET**

| WELLS FARGO - DIP Operating Acct. | | $ 318,050.19 | $ 360,872.69 | $ 396,225.19 | $ 402,680.69 | $ 413,827.85 | $ 453,222.01 | $ 491,219.17 | $ 530,613.33 |
|---|---|---|---|---|---|---|---|---|---|
| **REVENUE:** | | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 |
| Miami Arts Charter School Rent | | $ 66,250.00 | $ 66,250.00 | $ 66,250.00 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 |
| TOTAL REVENUE | | $ 66,250.00 | $ 66,250.00 | $ 66,250.00 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 | $ 70,416.66 |
| **MONTHLY PAYMENTS:** | **VENDOR NAMES** | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 |
| Building Management (3%) | LCohen, LLC | $ 1,987.50 | $ 1,987.50 | $ 1,987.50 | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 | $ 2,112.50 |
| Accounting fees | Goldstein Schechter Koch | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| Operating/Repairs/Maintenance | (various) | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 |
| Adequate Protection Payment | BB&T | $ 14,940.00 | $ 22,410.00 | $ 23,157.00 | $ 23,157.00 | $ 22,410.00 | $ 23,157.00 | $ 22,410.00 | $ 23,157.00 |
| **ONE-TIME PAYMENTS:** | | | | | | | | | |
| Phase II Tenant Build-Out ($55,000 in total) | Miami Arts Charter School | $ - | $ - | $ 27,500.00 | $ 27,500.00 | $ - | $ - | $ - | $ - |
| **QUARTERLY PAYMENTS:** | | | | | | | | | |
| U.S. Trustee Fees | U.S. Trustee | $ - | $ - | $ 650.00 | $ - | $ - | $ 650.00 | $ - | $ - |
| **TOTAL DISBURSEMENTS** | | $ 23,427.50 | $ 30,897.50 | $ 59,794.50 | $ 59,269.50 | $ 31,022.50 | $ 32,419.50 | $ 31,022.50 | $ 31,769.50 |
| **MONTHLY NET REVENUE** | | $ 42,822.50 | $ 35,352.50 | $ 6,455.50 | $ 11,147.16 | $ 39,394.16 | $ 37,997.16 | $ 39,394.16 | $ 38,647.16 |

**Exhibit A**

{Firm Clients\5397\5397-1\00899661.XLSX.}

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

3900 BISCAYNE, LLC,[1]                             Case No. 11-22948-AJC
                                                   Chapter 11
    Debtor.
_____/

**ORDER (1) GRANTING MOTION FOR ORDER AUTHORIZING USE
OF CASH COLLATERAL; AND (II) GRANTING ADEQUATE PROTECTION**

**THIS MATTER** came before the Court on June ____, 2011 at ___:00 ____.m. on the Motion Pursuant to 11 U.S.C. §§ 361, 362, 363, and 552, Fed. R. Bankr.P. 4001(b) and 9014, and Local Rules 4001-2, 9013-1(F) and (G), for entry of an Order Authorizing the Use of Cash Collateral and Granting Adequate Protection [ECF No. _____] (the "*Motion*"). The Court having considered the Motion, the record in this matter, having heard argument of counsel for the Debtor and the Office of the United States Trustee, and having been advised that secured creditor, Branch Banking and Trust Company ("***BB&T***") [does/does not] consent, it is

---

[1] The Debtor's current mailing address is 2915 Biscayne Blvd., Ste 200, Miami, FL 33137. The last four digits of the Debtor's tax identification number are 5787.

{Firm Clients/5345/5345-4/00893064.DOC.}         1         **Exhibit B**

**ORDERED** as follows:

1. The Motion is **GRANTED**.

2. The Debtor is authorized to use Cash Collateral from the Debtor's Income, as defined in the Motion, to the extent of available cash for those purposes and in those amounts set forth in the Budget, attached hereto as Exhibit A.

3. BB&T shall be granted an administrative expense claim pursuant to Sections 507 and 503 of the Bankruptcy Code to the extent of the diminution, if any, in the value of its interests in the Cash Collateral as of the Petition Date (*"Administrative Expense Claim"*).

4. Any Administrative Expense Claim granted hereunder shall be subordinate only to (I) fees payable pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the payment of accrued and unpaid professional fees and expenses allowed by the Court of the Debtor's counsel, Meland Russin & Budwick, P.A., after first applying any prepetition retainer received, awarded by the Court (the *"Debtor's Professional's Carve-Out"*). The (I) Debtor's Professional's Carve-Out, consisting of any awarded unpaid professional fees and expenses incurred by the Debtor in this bankruptcy case pursuant to Section 330 of the Bankruptcy Code in an aggregate amount not to exceed the amount of reasonable fees awarded by the Court (and after application of Meland Russin & Budwick, P.A.'s retainer), and (ii) fees payable to the Clerk of the Court or the United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case (*"Trustee Carve-Out"*), shall be paid out of the Debtor's Income as defined in the Motion and as included in the Budget. The fees pursuant to 28 U.S.C. § 1930(a)(6) can be paid even if the amount is higher than the line item in the Budget approved by North Bay. Nothing herein shall be construed as a waiver or prohibition of BB&T's right to object to any professional fees sought in this case.

5.  BB&T is also granted a replacement lien on and in all property, owned, acquired or generated post-petition by the Debtor and its continued operations to the same extent and priority and of the same kind and nature as BB&T had prior to the filing of this bankruptcy case ("***Post-Petition Collateral***"). The Post-Petition Collateral excludes all proceeds of property recovered or transfers avoided by or on behalf of the Debtor, its estate or any subsequently appointed trustee, pursuant to Sections 544 through 550, inclusive, of the Bankruptcy Code.

6.  This replacement lien in the Post-Petition Collateral ("***Replacement Lien***") granted to BB&T is deemed to be valid and perfected to the same extent as existed as of the Petition Date without the need for the execution, filing or recording of any further documents or instruments, otherwise required to be executed or filed under non-bankruptcy law.

7.  BB&T is deemed to be adequately protected by the granting of a Replacement Lien and Administrative Expense Claim as set forth above, in addition to the respective guaranties of Kobi Karp, Nancy Karp, Deborah Flacks and Michael Flacks, any equity cushion, and the rental income; however, to the extent that the foregoing is not sufficient to adequately protect BB&T, it is entitled to a priority claim for such shortfall in accordance with Section 507(b).

8.  Further, the Debtor shall the Debtor shall pay market rate interest payments at the rate of 2.49% monthly as further adequate protection as specifically set forth in the Budget.

9.  Notwithstanding any other provision of this Order, the finding that BB&T's interests are adequately protected is without prejudice to the rights of BB&T to seek modification of the adequate protection provided in this Order and without prejudice to the rights of the Debtor or any other party in interest to contest any such requested modification.

10. Any committee appointed pursuant to 11 U.S.C. § 1102 shall have forty-five (45) days after such appointment to analyze and object to the validity, priority and extent of BB&T's purported liens in any of the collateral purporting to secure the BB&T's claimed indebtedness.

11. The Debtor is permitted to use Cash Collateral as set forth in the Budget attached, provided that without further leave of the Court a variance not exceeding 5% for any line item is permitted, provided such variance shall not exceed 5% of the total budget for any monthly budget period. Further, in the event that an expense arises which is not within any of the approved line items in the Budget, the Debtor shall request approval from BB&T and BB&T shall have three (3) business days within which to provide consent or object. In the event that BB&T does not provide consent, then the Court shall consider the matter upon Motion.

12. The authority to use Cash Collateral granted by this Order shall expire upon conversion of the case to Chapter 7 (the "*Termination Date*").

###

**Submitted By:**
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
Counsel for Debtor in Possession
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:    (305) 358-6363
Telefax:      (305) 358-1221

**Copies Furnished To:**
Peter D. Russin, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.