UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

3900 BISCAYNE, LLC,1                              Case No. 11-22948-AJC
                                                 Chapter 11

       Debtor.

_____/

## DEBTOR'S PLAN OF REORGANIZATION

       3900 Biscayne, LLC (the **"Debtor"**), as Debtor-in-Possession under Chapter 11 of Title 11 of the United States Code, files its Plan of Reorganization (the **"Plan"**).

       Please address all inquiries concerning the Debtor, this Plan, the Disclosure Statement in support of the Plan, and voting to Debtor's Attorneys:

<div align="center">

Peter D. Russin, Esquire
Joshua W. Dobin, Esquire
James C. Moon, Esquire
Meland Russin & Budwick, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
(305) 358-6363

</div>

## ARTICLE I.
## DEFINITIONS

       **A.**    **Defined Terms:** The capitalized terms used in the plan shall have the meanings set forth in the numbered Paragraphs of this Article.

       1.    "Administrative Claim" shall mean a Claim for payment of costs or expenses of the Chapter 11 Case as specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including without limitation:

       (i)    the actual, necessary costs and expenses of preserving the Debtor's Estate and operating the businesses of the Debtor, incurred and paid in the ordinary course of business by the Debtor after the Petition Date;

---

[1] The Debtor's current mailing address is 2915 Biscayne Blvd., Ste 200, Miami, FL 33137.   The last four digits of the Debtor's tax identification number are 5787.

(ii)    claims under sections 330(a), 331 or 503 of the Bankruptcy Code for compensation for professional services rendered and reimbursement of expenses in the Chapter 11 Case, except for amounts already awarded and paid to professionals retained in Chapter 11 Case (***"Professional Fee Claims"***);

(iii)    any post-petition taxes;

(iv)    fees and charges assessed against the Debtor's Estate pursuant to Section 1930 of Title 28 the United States Code (***"U.S. Trustee Fees"***).

2.    "Allowed" when used with respect to a Claim (other than an Administrative Claim, Contested Claim or Disallowed Claim) shall mean, except as otherwise ordered by the Court, a Claim or that portion of a Claim:

(i)    which has been scheduled (other than Claims set forth in the Debtor's Schedules as contingent, unliquidated or disputed) or timely filed with the Court as to which no objection to the allowance thereof has been interposed within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or Order of the Court, or

(ii)    as to which any objection has been determined by a Final Order of the Court allowing such Claim or portion thereof.  Unless otherwise specified in the Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

3.    "Allowed Administrative Claim" shall mean any Administrative Claim that is "Allowed" pursuant to the procedure set forth in the Plan.

4.    "Allowed [Class Designation] Claim or Allowed [Class Designation] Interest" shall mean an Allowed Claim or Allowed Interest in the Class specified.

5.    "Assets" shall mean all personal, tangible and intangible property of the Debtor, contracts and contract rights, presently existing, or hereafter acquired, or created at any time, wherever located, and by whomever held, together with the products and proceeds thereof.

6.    "Available Cash" shall mean the net proceeds from the Rental Income from the Debtor's Assets, including, without limitation recoveries from the prosecution of Third Party Litigation Claims.

7.    "BB&T" shall mean Branch Banking & Trust, the Debtor's alleged secured lender.

8.    "Ballot" shall mean the form or forms distributed to each holder of a Claim or an Impaired Claim or Interest on which the holder indicates acceptance or rejection of the Plan or any election for treatment of such Claim or Interest under the Plan.

9.    "Ballot Date" shall mean the date set by the Court by which all Ballots must be received.

10.     "Bankruptcy Code" or "Code" shall mean Title 11 of the United States Code, as in effect from time to time, as applicable to the Chapter 11 case.

11.     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time as applicable to the Chapter 11 Case, including the Local Rules of the Court.

12.     "Business Day" shall mean any day except a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

13.     "Cash Collateral" shall mean the proceeds of the Secured Lender's collateral.

14.     "Cash Distribution" shall mean the cash and any cash equivalents ($US) to be distributed pursuant to the Plan to be derived solely from the proceeds of the Rental Income received by the Reorganized Debtor and possibly from any recoveries from Third Party Litigation Claims the Reorganized Debtor may pursue.

15.     "Chapter 11 Case" shall mean the Debtor's above-captioned Chapter 11 case.

16.     "Claim" shall have the meaning as defined in section 101(5) of the Bankruptcy Code, including, without limitation, any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmeasured, contested, uncontested, secured or unsecured.

17.     "Claims Bar Date" shall mean the deadline for filing any proofs of claim or interest that was established in the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines [ECF No. 7] as September 19, 2011, or as modified pursuant to any Court order.

18.     "Class" shall mean a group of Claims or Interests as classified under the Plan.

19.     "Collateral" shall mean the security interest in the assets of the Debtor at the time of the execution of the Loan Documents or thereafter acquired.

20.     "Confirmation Date" shall mean the date upon which the Court shall enter the Confirmation Order.

21.     "Confirmation Hearing" shall mean the hearing held by the Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such hearing may be continued from time to time.

22.     "Confirmation Order" shall mean an Order of the Court confirming the Plan in form mutually satisfactory to the Interested Parties.

23.     "Contested Claim" shall mean a Claim (or portion thereof) for which: (a) a proof of claim was or is deemed filed under applicable law or Order of the Court; and (b) any such timely and properly filed objection is not: (i) withdrawn or resolved by stipulation or (ii) determined in whole or part by a Final Order.  For purposes of the Cash Distributions under the Plan, a Claim shall be considered a Contested Claim, in whole or in part, as applicable, before the time that an objection is filed, but only until the expiration of the time for filing objections to claims, if: (x) the amount or  classification of the Claim specified in the proof of claim exceeds the amount of or differs in classification from any corresponding Claim scheduled by the Debtor in the Schedules; (y) any corresponding Claim scheduled by the Debtor is scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim is scheduled by the Debtor in the Schedules.

24.     "Court" shall mean the United States Bankruptcy Court for the Southern District of Florida (Miami Division), Judge A. Jay Cristol, United States Bankruptcy Judge, presiding, and any other Court that exercises jurisdiction over this Chapter 11 Case.

25.     "Debtor" shall mean 3900 Biscayne, LLC.

26.     "DIP Accounts" shall mean all of the Debtor-in-Possession accounts maintained by the Debtor.

27.     "Disbursing Agent" shall mean the entity designated in the Confirmation Order authorized to make distributions under the Plan.

28.     "Disclosure Statement" shall mean the accompanying Disclosure Statement required pursuant to section 1125 of the Bankruptcy Code with respect to the Plan.

29.     "Effective Date" shall mean a date, unless extended if necessary, the first business Day, fourteen (14) days after the entry of the Confirmation Order or the date on which the Confirmation Order becomes final and non-appealable, whichever is later.

30.     "Estate" shall mean the estate created in this Chapter 11 Case by Section 541 of the Bankruptcy Code.

31.     "Executory Contract Rejection Claims" shall mean any Claim arising from the rejection of an executory contract in accordance with Section 365 of the Bankruptcy Code.

32.     "Fee Application" shall mean an application under Section 330(a), 331 or 503 of the Bankruptcy Code for allowance of any Professional Fee Claim in accordance with Local Rule 2016.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

33.     "Final Order" shall mean an Order of the Court to which: (a) the time to file an appeal, motion or petition for review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; (b) any appeal taken or petition for certiorari filed has been resolved with the highest Court to which the Order or judgment was appealed or from which review, rehearing or certiorari was sought; or (c) with respect to an appeal taken from the Confirmation Order, no stay has been obtained by the Effective Date.

34.     "Insider" shall have the meaning as defined in section 101(3) of the Bankruptcy Code.

35.     "Interested Parties" shall mean, collectively, the Debtor, creditors and any others who have an interest in the Bankruptcy Case.

36.     "Litigation Proceeds" shall mean cash derived from the Third Party Litigation Claims.

37.     "Loan Documents" shall mean Note A Loan Documents and Note B Loan Documents.

38.     "Miami Arts" shall mean Miami Arts, Inc., d/b/a Miami Arts Charter School, the Debtor's tenant.

39.     "Note A Loan Documents" shall mean:

- Promissory Note to Colonial Bank, N.A., in the original principal amount of $10,800,000;
- Loan Agreement dated July 2, 2007;
- Mortgage and Security Agreement dated July 2, 2007, executed by the Debtor, and recorded on July 3, 2007, in Official Records Book 25751 at Page 4473, of the Public Records of Miami-Dade County, Florida encumbering the real property described as:

> Legal: Tract A, of WLBW-TV STUDIO SITE, according to the Plat thereof as recorded in Plat Book 80, Page 44 of the Public Records of Miami-Dade County, Florida a/k/a 3900 Biscayne Blvd., Miami, FL 33137; and

- UCC-1 Financing Statement filed with the Florida Secured Transaction Register and assigned Document No. 200706064133.

40.    "Note B Loan Documents" shall mean:

- Promissory Note to Colonial Bank, N.A., in the original principal amount of $675,000.00 which was subsequently modified by that certain Note Modification Agreement dated November 5, 2008; and
- Pledge Agreement dated July 2, 2007, executed by Nancy Karp.

41.    "Petition Date" shall mean May 12, 2011, the date the Debtor's Voluntary Petition was filed.

42.    "Plan" shall mean the Debtor's proposed Plan of Reorganization and the accompanying Disclosure Statement filed, either in its present form or as it may be amended or modified from time to time, in accordance with the provisions of the Bankruptcy Code and the terms hereof.

43.    "Priority Claim" shall mean any Claim, if allowed, entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

44.    "Professional Fee Claim" shall mean a Claim under Section 330(a), 331 or 503 of the Bankruptcy Code for compensation for professional services rendered and reimbursement of expenses in the Chapter 11 Case.

45.    "Project" or "Property" shall mean the property located at 3900 Biscayne Boulevard, Miami, Florida 33137, formerly the studio site for WLBW and most recently WPLG Channel 10.

46.    "Pro Rata Share" shall mean with reference to any distribution on account of any Allowed Claim or Allowed Interest in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim or Allowed Interest bears to the aggregate amount of all Allowed and Contested Claims or Interests of the same Class as determined by the Disbursing Agent or the Court.

47.    "Record Date" shall be the Confirmation Date as the date used by the Court for determining the holders of Claims and Interests entitled to receive distributions under the Plan.

48.    "Rental Income" shall mean the rental income generated by the Tenant.

49.    "Reorganized Debtor" shall mean the successor entity to be formed pursuant to the Plan with Assets of the Debtor.

50.    "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as required by Section 521 of the Bankruptcy Code and the Bankruptcy Rules.

51.    "Secured Claim" shall mean a Claim that is considered secured under Section 506(a) of the Bankruptcy Code by property of the Debtor's Estate.

52.    "Tenant" shall mean Miami Arts, Inc., d/b/a Miami Arts Charter School, the Debtor's tenant.

53.    "Third Party Litigation Claims" shall mean all preserved causes of action including, but not limited to, claims against the previous owner of the Property for environmental damages and exposure, all adversary proceedings and/or lawsuits pending in state or federal courts, whether or not such claims have been asserted or causes of action have been commenced as of the Effective Date, including, but not limited to, causes of action for subordination under Section 510 of the Bankruptcy Code; causes of action which are property of the estate under Section 541 of the Bankruptcy Code; causes of action relating to turnover, avoidance actions and voidable transfers under sections 542 through 550 of the Bankruptcy Code; claims of action under State law; causes of action under Federal law; causes of action under other applicable non-bankruptcy law owned or belonging to the Debtor as more specifically set forth herein.

54.    "Unsecured Claim" shall mean any Claim against the Debtor that is not an Administrative Claim, a Priority Claim or Secured Claim, but including, without limitation, the Claims arising from the rejection of executory contracts, excluding BB&T's general unsecured claim.

55.    "Unsecured Insider Claim" shall mean an Unsecured Claim by an Insider.

**B.    Other Terms:** The words "herein", "hereof", "hereto", "hereunder" and other words and terms of similar import and construction refer to the Plan as a whole and not to any particular Article, paragraph or clause contained in the Plan.  A reference to an "Article" refers to an Article of the Plan.  Any term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or by the Bankruptcy Code, or the Disclosure Statement.  The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in construction of the Plan.

**C.    Exhibits and Tables:** All Exhibits and Tables to the Plan are incorporated by reference into and are made a part of the Plan as if set forth in full herein.

## ARTICLE II.
## TREATMENT OF ADMINISTRATIVE CLAIMS

**A.    Treatment of Administrative Claims and Operating Expenses**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor and ordinary course operating expenses will not be classified for purposes of voting or receiving distributions under the Plan.  All such Claims and operating expenses will be treated separately as unclassified Claims and obligations on the terms set forth in this Article IV.

**B.     Treatment of Administrative Claims**

**Time for filing Administrative Claims:**  Failure to timely file and Administrative Claim, at a time and date set by the Court, will result in such claim being forever barred and discharged unless otherwise ordered by the Court.

**Time for Filing Professional Fee Claims:**  Each person who holds or asserts a Professional Fee Claim must file with the Court, at a time and date set by the Court, and serve on all parties required to receive notice a final Fee Application.  The failure to timely file a final Fee Application will result in the Professional Fee Claim being forever barred and discharged unless otherwise ordered by the Court.

**Allowance of Administrative Claims:**  An Administrative Claim properly filed will become an Allowed Administrative Claim if no objection is filed and the same is approved by the Court.  If an objection is timely filed, the Administrative Claim will become an Allowed Administrative Claim only to the extent allowed by an order or judgment of the Court, which order or judgment becomes a Final Order.  An Administrative Claim that is a Professional Fee Claim will become an Allowed Administrative Claim only after and to the extent that (i) a final Fee Application is properly filed, and (ii) a Final Order allowing such Professional Fee Claim is entered by the Court.

**C.     Classification of Claims and Interests**

**1**.     **Summary of Classes and Classification**

The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Operating Expenses) and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan.  The claims against the Debtor shall be classified as specified below.  Consistent with Section 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and is classified in a different Class, to the extent the Claim or the Interest is within the description of that different class.

**<u>CLASSES AND CLASSIFICATION</u>**

Class 1     Secured Claim of Miami Dade County Tax Collector
Class 2     Secured Claim of BB&T
Class 3     Unsecured Claim of BB&T
Class 4     General Unsecured Claims
Class 5     Equity

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**D.      Treatment of Classified Claims and Interests in the Plan**

**1.      Administrative Claims of the Debtors**

**Professional fees:**  The Debtor employed, or will seek to employ, with Court approval, the following professionals who may be filing interim and final fee applications (unless otherwise indicated):

- Peter D. Russin, Esquire and the law firm of Meland Russin & Budwick, P.A. ("**MRB**"), as the Debtor's counsel.
- Sandy Horwitz, CPA and the accounting firm of Goldstein Shechter Koch as the Debtor's accountant.

At this time the Debtor does not know the amount of attorneys' fees and costs that will ultimately be sought by the Debtor's attorneys, MRB or its accountant.  In addition to any allowed interim payments, the attorneys' fees and costs and other professional fees shall be paid in full on the Effective Date of the Plan or as otherwise agreed between the Debtor and each administrative claimant.  The proposed Cash Collateral Order submitted to the Court but not yet entered provides that "[t]he administrative priority for the 507(b) Claim granted hereunder shall be subordinate only to (i) fees payable pursuant to 28 U.S.C. §1930(a)(6); and (ii) the payment of accrued and unpaid professional fees and expenses allowed by the Court of the Debtor's counsel, Meland Russin & Budwick, P.A., after first applying any prepetition retainer received, awarded by the Court."  The Debtor reserves the right to seek to retain additional professionals, if required.

**2.      United States Trustee Fees**

The Debtor shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods.  The Debtor shall further pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor, respectively, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.  After the Confirmation Date, the Debtor shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business.  The Post-Confirmation Operating Report shall be filed quarterly until the Court enters a Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy.

**3.      Approval of Administrative Claims**

All Administrative Claims are subject to allowance by the Bankruptcy Court and its determination of the reasonableness of the amounts.  Any party in interest can object to any claim for administrative fees and expenses.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

### 4.    Payment of Allowed Administrative Claims

The holders of Allowed Administrative Claims shall receive, on account of such claims, cash in the amount of such claims (i) on the later of the Effective date or within ten (10) days any such claims are determined to be Allowed or (ii) at the option of the Debtor, in accordance with the ordinary business terms of payment of such claims.  Professionals employed at the expense of the estate of the Debtor and entities who may be entitled to reimbursement for the allowance of fees and expenses from the estate of the Debtor pursuant to §503(b) of the Bankruptcy Code, shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with the final order entered pursuant to §330 or §503 of the Bankruptcy Code.

### The Debtor's Classes of Creditors

### A.    Allowed Secured Claim of Miami-Dade County Tax Collector (Class 1):

Class 1 consists of the Allowed Secured Claim of The Miami-Dade County Tax Collector (the "MDCTC"), plus statutory interest, for unpaid real property taxes for 2009 (the "MDCTC Claim").  MDCTC filed Claim No. 1 in the amount of $240,741.34, plus 18% statutory interest. The MDCTC Claim has been successfully appealed by the Debtor and has been reduced to $175,532.28, and as set forth in a letter from the MDCTC dated May 26, 2011, is further discounted to $168,510.98 if paid in full by June 26, 2011.  That discounted payoff amount is no longer available after June 26, 2011, after which the taxes owed will increase at the statutory rate of 18% per annum dating back from April 2010 until they are paid. In order to obtain those savings for the benefit of the estate and its creditors, the Debtor filed Debtor's Emergency Motion for Order Authorizing Debtor to Pay Prepetition Property Taxes for 2009 Tax Year [ECF No. 44], which remains pending.  If the approval to pay the discounted amount by June 26, 2011 is granted, the MDCTC claim shall be paid in full and will not constitute a claim in this case.  In the event approval is denied, the MDCTC's Class 1 Claim will remain and will be paid within five (5) years of the 2009 assessment date.  In that event, MDCTC's Class 1 Claim is impaired under the Plan.

### B.    Allowed Secured Claim of BB&T (Class 2):

Class 2 consists of the Allowed Secured Claim of BB&T, to be determined by a final, non-appealable order in this Bankruptcy Proceeding or an Adversary Proceeding. BB&T's Class 2 Claim, arising out of the A Note, and as evidenced by the May 12, 2011 monthly statement provided by BB&T, consists of principal in the amount of $10,800,000, note rate interest at 2.49%, and to the extent applicable, late charges and fees, for a total amount of $11,029,286[1]. Once the amount of BB&T's allowed secured claim has been determined, BB&T shall be paid in

---

[1] This amount is calculated through an anticipated Confirmation date of September 12, 2011, by using the amount listed on the May 12, 2011 statement provided by BB&T, adding post-petition per diem interest, and subtracting the anticipated adequate protection payments.

full, including note rate interest as calculated by the "Two Year-Swap Rate", which shall mean the International Swaps and Derivatives Associates ("ISDA") 2-year mid-market per swap rate, which is a rate for a Fixed Rate Payer in return for receiving three (3) month's LIBOR, plus a margin of 2.06%, as set forth in the A Note, with a 25 year amortization and a 4 year balloon in accordance with and as set forth in the projections. The Note A Loan Documents, including all of the terms and conditions contained therein, to the extent not expressly modified herein, are adopted in full by the Debtor and the Reorganized Debtor, and shall remain in full force and effect. BB&T shall retain a lien securing its Allowed Class 2 Claim until such Allowed Class 2 Claim is paid in full. To the extent that the Debtor's Rental Income and the proceeds from the Third Party Litigation Claims are insufficient to pay the Allowed Class 2 Claim, any deficiency shall be treated as an Allowed Class 3 Claim, pursuant to the terms set forth in the Plan. The Debtor reserves the right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 2 Claim. Class 2 is impaired under the Plan.

### C.    Allowed BB&T General Unsecured Claim (Class 3):

Class 3 consists of the Allowed BB&T General Unsecured Claim, to be determined by a final, non-appealable order in this Bankruptcy Proceeding or an Adversary Proceeding. This Class 3 Claim arises out of the B Note in the original principal amount of $675,000, and a remaining balance, including fees and costs, of $634,880.96[2], and is disputed by the Debtor. BB&T is also seeking to recover on the B Note from non-debtor defendants and from several certificates of deposits allegedly pledged as collateral for the B Note by third parties, Nancy Karp and Tania Buskela, which these third parties dispute. Once the amount of the Class 3 Claim is determined, and to the extent a claim remains, BB&T's Class 3 Claim shall be paid in full, including note rate interest as calculated by the "Two Year-Swap Rate", which shall mean the International Swaps and Derivatives Associates ("ISDA") 2-year mid-market per swap rate, which is a rate for a Fixed Rate Payer in return for receiving three (3) month's LIBOR, plus a margin of 2.06%, as set forth in the B Note, with a 25 year amortization and a 4 year balloon in accordance with and as set forth in the projections. The Note B Loan Documents, including all of the terms and conditions contained therein, to the extent not expressly modified herein, are adopted in full by the Debtor and the Reorganized Debtor and shall remain in full force and effect. The Allowed Class 3 Claim shall only be paid after the Allowed Class 2 Claim has been paid in full. The Debtor reserves the right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 3 Claim. Class 3 is impaired under the Plan.

### D.    Allowed General Unsecured Claims (Class 4):

Class 4 consists of all of the Allowed General Unsecured Claims. All holders of Allowed General Unsecured Claims shall be paid from the Debtor's Rental Income and the proceeds of any Third Party Litigation Claims, in full, within 4 years from the Effective Date, simultaneous

---

[2] This amount is calculated through an anticipated Confirmation date of September 12, 2011, by adding post-petition per diem interest, and subtracting the anticipated adequate protection payments.

with Allowed Class 2 and 3 Claims, at 2.49% interest at a two (2) year amortization, except for KKAID, which has agreed to accept payments beginning April 2014.  The Debtor reserves the right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 4 Claims.  Class 4 Claims are impaired.

### E.    Equity Interests (Class 5):

Class 5 consists of all holders of allowed equity interests in the Debtor.  All Class 5 Equity Interests shall revest in the Reorganized Debtor on the Effective Date.  The holders of allowed equity interests shall retain their equity interests, including for the purpose of governing the Reorganized Debtor.

### ARTICLE V.
### ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Voting Classes.

Unless otherwise ordered by the Court, each holder of an Allowed Claim in Classes 1,2,3 and 4 shall be entitled to vote to accept or reject the Plan and shall be required to return its Ballot on or prior to the Ballot Date.  Any holder of a Contested Claim or Interest whose entire Claim or Interest is objected to by the Debtor or other person qualified to object prior to Ballot Date shall <u>not</u> have the right to vote to accept or reject the Plan until the Contested Claim or Interest is resolved unless the holder of such Contested Claim or Interest requests an order from the Court pursuant to applicable Bankruptcy Rules temporarily allowing such Contested Claim for voting purposes.  Any Ballot received from any such holder of a Contested Claim or Interest shall not be considered in determining whether the Plan has been accepted by a particular impaired Class of Claims or Interests.

### B.    Acceptance by Impaired Classes.

An Impaired Class of Claims shall have accepted the Plan if (1) the holders (other than holders designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims voting in such Class vote to accept the Plan, and (2) more than one-half in number of the holders designated under section 1126(e) of the Bankruptcy Code of at least two-thirds of the amount of Allowed Claims.

### C.    Nonconsensual Confirmation (Cramdown).

The Debtor intends to request that the Court confirm the Plan in accordance with Section 1129(b) (the so-called "Cramdown" provisions) of the Bankruptcy Code if any Class or Claims or Interests votes not to accept or is deemed not to have accepted the Plan.

## ARTICLE VI.
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Source and Application of Funds Upon Confirmation

The Plan is a plan of reorganization.  The Debtor's principal sources of revenue are comprised of the Debtor's Rental Income and the proceeds of any Third Party Litigation Claims. Prior to the Effective Date, the Debtor, and following the Effective Date, the Reorganized Debtor shall (i) continue to collect its Rental Income and operate the Property, and (ii) shall prosecute the Third Party Litigation claims, if any.

### B.    Prosecution of Third Party Litigation Claims

As stated above, the Debtor's Plan will also be implemented through the prosecution of claims against third parties, if any.  On the Effective Date, the Reorganized Debtor shall be authorized, except as provided for in the Plan, to commence and prosecute any and all Third Party Litigation Claims that arose before, on or after the Petition Date.  Proceeds, if any, realized from any Third Party Litigation Claims shall be added to the Rental Income used to fund the Plan.  The Debtor has a claim against Post-Newsweek, the prior owner of the Property, pursuant to the PSC and the settlement agreement between the Debtor and Post-Newsweek, for any unremedited environmental contamination and damage.

In addition, within ninety (90) days prior to the Petition Date, the Debtor made payments to creditors and other parties.  A list of payments to Debtor's creditors within ninety days prior to the Petition Date is included in the Debtor's Statement of Financial Affairs.  Many of the recipients of payments may have defenses to the Estate's causes of action and/or the pursuit of such claims may not be economically feasible due to the amount of the payments at issue.  The Debtor is continuing its investigation of any and all Third Party Litigation Claims, including but not limited to preference claims, avoidance actions, and insider claims under bankruptcy law, which the Debtor may have against third parties, and specifically reserves all such claims.

### C.    Revesting of Assets

Except as otherwise provided in the Plan or Confirmation Order, title to all of the Debtor's Assets will revest in the Reorganized Debtor, free and clear of all claims and interests on the Effective Date.  After the Effective Date the Reorganized Debtor may operate its respective property and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, except as otherwise provided in the Plan or Confirmation Order.  As of the Effective Date, the Debtor's Estate will be free and clear of all claims and interest except as otherwise provided in the Plan or the Confirmation Order.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## D.    Post-Confirmation Operations

Following Confirmation, the Reorganized Debtor shall execute such documents and take such other actions as are necessary to make effective the transactions provided for in the Plan.

## E.    Post-Confirmation Accounts

The Debtor may establish one or more interest-bearing accounts as it determines may be necessary or appropriate to effectuate the provisions of the Plan consistent with the section 345 of the Bankruptcy Code and any orders of the Bankruptcy Court.

## F.    Closing of the Chapter 11 Case

Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules providing for earlier closure of the chapter 11 case, when all Contested Claims against the Debtor have become Allowed Claims or Disallowed Claims, and all remaining Assets of the Debtor have been liquidated and converted into Available Cash (other than those Assets abandoned by the Debtor), and such Available Cash has been distributed in accordance with the Plan, or at such earlier time as the Reorganized Debtor deems appropriate, the Reorganized Debtor shall seek authority from the Bankruptcy Court to close the chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VII.
## PROVISIONS FOR AND DISTRIBUTIONS IN RESPECT OF CONTESTED CLAIMS AND INTERESTS

## A.    Objections to Claims.

All objections to Claims shall be filed by the Debtor and served on the applicable claimant by the date established by the Court.  After the Confirmation Date, only the Reorganized Debtor shall have the authority to file, settle, compromise, withdraw, or litigate to judgment objections to Claims, including, without limitation, any counterclaim, offset, recoupment or similar claim asserted against Debtor's Estate arising under or relating to or in connection with any of the claims or causes of action assigned to Reorganized Debtor.  This provision shall not preclude the Debtor from objecting to any Claim prior to the Confirmation Date for voting purposes.  If a Claim is objected to prior to the Confirmation Date, such claimant shall not have the right to vote to accept or reject the Plan until the objection is resolved, unless such claimant requests an order from the Court pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes only.

B.    **No Distributions Pending Allowances.**

Notwithstanding any other provisions of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

C.    **Withholding and Distribution in Respect of Contested Claims.**

1.    **Contested Claims Reserve.**  The Disbursing Agent will withhold from the property that would otherwise be distributed to holders of Claims within a given Class an amount sufficient to be distributed on account of Claims that are not Allowed Claims within that Class as of the Effective Date, and shall place such withheld property in a reserve (the "Contested Claims Reserve"), which thereafter will be retained and administered by the Reorganized Debtor.

2.    **Distribution in Respect of Contested Claims.**    Payments and distributions to holders of Contested Claims to the extent that such Claims untimely become Allowed Claims, will be made from the Contested Claims Reserve and thereafter from the Reorganized Debtor in accordance with the provisions of this Plan governing the Class of Claims to which the respective Claim holder belongs.

3.    **Distributions After Disallowance.**  If any of the property withheld in the Contested Claims Reserve remains after all objections to Contested Claims of a particular Class have been resolved, then such property will be retained and administered by the Reorganized Debtor to be distributed in accordance with the provisions of the Plan governing the Class of Claims to which the Disallowed Claims belong.

## ARTICLE VIII.
## DISTRIBUTION UNDER THE PLAN

A.    **Disbursing Agents.**

The Disbursing Agent designated in the Confirmation Order shall make all Cash Distributions pursuant to the Plan.

B.    **Investment of Cash.**

Cash Distributions to be held by the Disbursing Agent for distribution shall be invested by the Disbursing Agent in United States Treasury Bills, interest bearing certificates of deposit, interest bearing savings accounts and other investments permitted by Section 345 of the Bankruptcy Code or order of the Court, and the Disbursing Agent shall use its best efforts to maximize the rates of interest in light of liquidity requirements necessary to make Cash Distributions.  All interest earned on such Cash Distributions shall be held by the Disbursing Agent and thereafter transferred to the Reorganized Debtor.

**C.      Manner of Payment Under the Plan.**

Any Cash Distributions made by the Disbursing Agent pursuant to the Plan may be made, at the option of Disbursing Agent, either by check drawn on a domestic bank or by wire transfer from a domestic bank.

**D.      Setoffs and Recoupments.**

By so instructing the designated Disbursing Agent, the Debtor's Estate or Reorganized Debtor, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claim of any nature whatsoever that the Debtor's Estate or Reorganized Debtor may have against the holder of a Claim, but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtor's Estate, or Reorganized Debtor of any such Claim or causes of action the Debtor's Estate or Reorganized Debtor may have against such holder.

**E.      Undeliverable Distributions.**

If the designated Disbursing Agent is unable to make cash Distributions to the holder of an Allowed Claim or Allowed Interest under the Plan for lack of a current address of the holder, if, after the passage of 180 days (from the Effective Date) and after any additional effort to locate the holder that the Court may direct, the payment or distribution and any further payment or distribution to the holder shall be transferred to the Reorganized Debtor and the Claim or Interest shall be deemed satisfied to the same extent as if payment or distribution had been made to the holder of the Claim or Interest.

**F.      Estimation.**

Prior to or subsequent to the Effective Date, in order to effectuate Cash Distributions pursuant to the Plan and to avoid undue delay in the administration of the Chapter 11 Case, the Debtor, or Reorganized Debtor, as the case may be, shall have the right to seek an order of the Court, pursuant to Section 502(c) of the Bankruptcy Code, after notice and a hearing (which notice may be limited to the holder of such Contested Claim or Interest and which hearing may be held on an expedited basis, if necessary), estimating or limiting the amount of the Cash Distribution that must be withheld from distributions on account of Contested Claims or Interests.

**G.      Other General Provisions Concerning Disbursing Agent.**

**1.      Exculpation of Disbursing Agent.**   From and after the Effective Date, the Disbursing Agent designated in the Confirmation Order shall be exculpated by all persons receiving distributions under the Plan from any and all Claims, causes of actions and other assertions of liability (including breach of fiduciary duty) arising out of the Disbursing Agent's discharge of the powers and duties conferred upon it by the Plan, the Confirmation Order or any

order of the Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the gross negligence or wilful misconduct of such Disbursing Agent. No holder of a Claim or an Interest shall pursue any Claim or case of action against the designated Disbursing Agent for making payments or distributions in accordance with the Plan or for implementing the provisions of the Plan.  Nothing in this Paragraph shall be deemed to release or waive the right of a holder of an Allowed Claim or Interest to receive its distribution under the Plan.

**2.      Power of Disbursing Agent.**  The Disbursing Agent shall be empowered to take all steps and execute all instruments and documents necessary to effectuate or implement the Plan, make the Cash Distributions, comply with the Plan and the obligations hereunder and exercise such other powers as may be vested in the designated Disbursing Agent by the Confirmation Order or any other order of the Court, pursuant to the Plan, or as deemed by the designated Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

**3.      Expense Incurred on or After the Effective Date.**  Except as otherwise ordered by the Court or provided herein, the amount of any objectively reasonable fees and expenses incurred by the designated Disbursing Agent on or after the Effective Date (including taxes) and any compensation and expense reimbursement claims (including reasonable fees and expenses of counsel) made by a designated Disbursing Agent, may be paid by the Reorganized Debtor (on account of distributions of Interests) or the Debtor's Estate on account of Cash Distributions to holders of Allowed Claims without further Order of the Court.

## ARTICLE IX.
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**A.      Discharge.**

**1.      Discharge.**      Commencing on the Effective Date, except as otherwise expressly provided, all holders of Claims shall be precluded forever from asserting against the Debtor's Estate, the Reorganized Debtor or its respective assets, any other or further liabilities, liens, obligations, claims or equity interest, arising or existing prior to the Effective Date, that were or could have been the subject of any Claim whether or not Allowed.  As of the Effective Date, the Reorganized Debtor shall be discharged, released from and shall hold all the assets received or retained by and pursuant to the Plan, free and clear of all liabilities, liens, claims and obligations or other claims of any nature against the Debtor or its Estate.

**2.      Injunction– General.**  In accordance with Section 524 of the Bankruptcy Code, the discharge provided by this section and Section 1141 of the Bankruptcy Code, among other things, acts as a permanent injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims or Interests against the Reorganized Debtor as discharged pursuant to the Plan.

3.    **Exculpation**.  Except as otherwise specifically provided in the Plan, the Debtor, its officers, directors, employees, representatives, advisors, attorneys, financial advisors, or agents, or any of such parties' successors and assigns, 3900 Biscayne, LLC, Nancy Karp, or any scheduled equity security holder of 3900 Biscayne, LLC, shall not have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, members, employees, representatives, advisors, attorneys, financial advisors, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the chapter 11 Case, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, bad faith, breach of fiduciary duty or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

4.    **Savings Clause.**  If any release or discharge of a non-Debtor entity hereunder is ruled by the Court to be improper or ineffective, the Plan shall proceed to confirmation and be confirmed without that part found to be improper or ineffective.

5.    **No Waiver of Causes of Action.**  No provision of the Plan or the acceptance of any distributions hereunder shall compromise, settle or release any claims or causes of action belonging to the Debtor in respect of the Assets, including, but not limited to, claims or causes of action defined or identified herein or related to the Third Party Litigation Claims.  Except as provided by the Confirmation Order, separate order of the Court, or separate agreement of the Interested Parties, Insiders and Affiliates of the Debtor, present and former Interest Holders (or control persons of such Interest Holders), directors, officers, agents, financial advisors, brokers and employees of the Debtor shall not be discharged or released from any claims or causes of action against them based on any Claim against or Interest in the Debtor or based on any act or omission, transaction or other activity or security instrument or other agreement of any kind existing prior to the Effective Date.

B.    **Retention and Assignment of Causes of Action by Debtor to the Reorganized Debtor – Prosecution of Third Party Litigation Claims.**

Debtor and the Debtor's Estate hereby assign, transfer, and convey all claims and causes of action of the Debtor, including the Third Party Litigation Claims,  to the Reorganized Debtor, which shall retain and may pursue any such claims and causes of action of the Debtor's Estate so assigned.

The Debtor's Plan will also be implemented through the prosecution of claims against third parties, if any.  On the Effective Date, the Reorganized Debtor shall be authorized, except as provided for in the Plan, to commence and prosecute any and all third party litigation claims that arose before, on or after the Petition Date.  Proceeds, if any, realized from any third party litigation claims shall be added to Available Cash.  The Third Party Litigation claims to be prosecuted may include an action against Post-Newsweek, the prior owner of the Property,

pursuant to the PSC and the settlement agreement between the Debtor and Post-Newsweek, for any unremediated environmental contamination and damage.

The Debtor reserves its right to prosecute claims against Colonial Bank, N.A. and BB&T, as successor, for all causes of action arising out of their involvement with the loan to the Debtor.

### Preference Claims, Avoidance Actions and Insider Claims

Within ninety (90) days prior to the Petition Date, the Debtor made payments to creditors and other parties. A list of payments to Debtor's creditors within ninety days prior to the Petition Date is included in the Debtor's Statement of Financial Affairs. Many of the recipients of payments may have defenses to the Estate's causes of action and/or the pursuit of such claims may not be economically feasible due to the amount of the payments at issue. The Debtor is continuing its investigation of any and all third party litigation claims, including but not limited to preference claims, avoidance actions, and insider claims under bankruptcy law, which the Debtor may have against third parties, and specifically reserves all such claims.

### ARTICLE X.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On the Effective Date, every executory contract and unexpired lease of the Debtor that has not specifically been assumed or rejected before the Confirmation Date with the approval of the Court or that a motion to assume or reject has not been filed at that time, will be rejected. At or prior to conclusion of the Confirmation Hearing (with appropriate notice to the affected parties), the Debtor may identify any other executory contracts or unexpired leases they may assume or reject effective as of the Effective Date. The Reorganized Debtor shall be bound by those executory contracts and unexpired leases assumed pursuant hereto and (pursuant to Section 365(k) of the Bankruptcy Code) the Debtor's Estate shall be relieved of any liability in connection with such executory contracts and unexpired leases upon assumption herein.

### ARTICLE XI.
### EFFECTIVENESS OF THE PLAN

**A.     Conditions Precedent.**

The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full or waived in accordance with the provisions specified below:

**i.     Entry of Confirmation Order.**

The Court shall have entered the Confirmation Order confirming and approving the Plan in all respects by the Confirmation Date and the Confirmation Order shall become a Final Order.

### ii.        Waiver of Deadlines or Other Conditions.

As contemplated by the definition of Confirmation Date and Effective Date herein, the deadlines set forth above may be extended (if necessary) with the mutual express consent of the Interested Parties or as may be necessary to reasonably accommodate the Court's calendar.

### B.        Default Remedies.

If the Reorganized Debtor is unable to perform the terms and conditions of the Plan, then it will be in default.  Remedies of Creditors are limited to claims against the Reorganized Debtor. Creditors may enforce their remedies in the same manner as they would otherwise pursue damages for breach of contract or other actions arising out of the Debtor's default.

## ARTICLE XII.
## ADMINISTRATIVE PROVISIONS

### A.        Retention of Jurisdiction.

The Court shall retain jurisdiction over all matters arising in or related to the Chapter 11 Case and the Plan for the following purposes:

1.        To hear and determine pending motions for the assumption or rejection of the executory contracts or unexpired leases and disputed issues concerning termination of contracts, if any are ending, and the allowance of Claims resulting therefrom;

2.        To determine any and all pending adversary proceedings, contested matters, applications and unresolved motions;

3.        To hear and determine timely and proper objections to Claims and Interests filed both before and after the Confirmation Date by the Reorganized Debtor, including objections to the classification, estimation, establishment of priority or status of any Claim or Interest, and to allow or disallow any Contested Claim or Interest, in whole or in part, as contemplated in the Plan;

4.        To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated, provided, however, this provision shall not form a jurisdictional basis for staying, revoking, modifying or vacating the Confirmation Order;

5.        To consider modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

6.      To hear and determine all claims and causes of action to recover Assets of the Debtor or Reorganized Debtor wherever located, including any causes of action under applicable sections of the Bankruptcy Code;

7.      To hear and determine all controversies arising in connection with the Plan and other matters provided for in the Confirmation Order;

8.      To hear and determine all controversies arising in connection with the Third Party Litigation Claims, including motions to approve settlements among the Reorganized Debtor and third parties.

9.      To hear and determine all administrative matters necessary to complete the distributions contemplated hereunder and enter a final decree closing the Chapter 11 case.

## B.      Payment of Statutory Fees; U.S. Trustee.

The  Debtor or the Reorganized Debtor, as the case may be, shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods.  The Debtor or the Reorganized Debtor, as the case may be, shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor or the Reorganized Debtor, as the case may be, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.  After the Confirmation Date, the Debtor or the Reorganized Debtor, as the case may be, shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business.  The Post-Confirmation Operating Report shall be filed quarterly until the Court enters a Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy.

## C.      Headings.

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any purpose.

## D.      Binding Effect.

The Plan shall be binding on and inure to the benefit of the Debtor, Reorganized Debtor, and all of the holders of Claims and Interests and their respective successors and assigns.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### E.     Modifications of Plan and Related Documents.

Debtor reserves the right, in accordance with Bankruptcy Code Section 1127, to amend or modify the Plan in any manner necessary prior to entry of the Confirmation Order.  After entry of the Confirmation Order, the Debtor may, in accordance with Bankruptcy Code: (1) amend or modify the Plan and documents related thereto in accordance with, and to the extent permitted by, section 1127(b) of Bankruptcy Code and Bankruptcy Rule 3019, or (2) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### F.     Filing or Execution of Additional Documents.

On or before the Effective Date, the Debtor shall file with the Court or execute, as appropriate, such agreements and other documents in addition to the Exhibits as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including without limitation, amendments to the Schedule of Assumed Contracts.

### G.     Withholding and Reporting Requirements.

In connection with the Plan, and all instruments issued in connection therewith in distributions to be made, the Debtor's Estate and Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, foreign taxing authority, and all Cash Distributions hereunder shall be subject to any such withholding and reporting requirements.

### H.     Notices.

All notices, requests and demands and other communications to the Debtor, including any objections to the Disclosure Statement, shall be in writing and shall be delivered in person or by courier, U.S. Mail (postage prepaid) or by facsimile transmission to:

| | |
|---|---|
| 3900 Biscayne, LLC | <u>With copies to:</u> |
| Attn: Nancy Karp, Managing Member | Peter D. Russin, Esq. |
| 2915 Biscayne Blvd., Ste 201 | Joshua W. Dobin, Esq. |
| Miami, FL 3317 | James C. Moon, Esq. |
| | Meland Russin & Budwick, P.A. |
| | 3000 Southeast Financial Center |
| | 200 South Biscayne Boulevard |
| | Miami, Florida 33131 |

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## ARTICLE XIII.
## <u>RECOMMENDATION</u>

The Debtor recommends that its creditors carefully consider and review the Disclosure Statement and the Plan of Reorganization and vote to accept the Plan of Reorganization.

Dated: June 21, 2011.

<div style="margin-left:40%">

3900 Biscayne, LLC
a Florida limited liability company

By:   <u>s/Nancy Karp</u>
Nancy Karp
Its:  Managing Member


Efiled by:   <u>s/ Peter D. Russin</u>
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Debtor in Possession*

</div>

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363